**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Robert P. Lesko (RPL 1553)
33 Washington Street
Newark, New Jersey 07102-3017
(973) 624-0800 ph.
(973) 624-0799 fx.
Attorneys for plaintiff,
American General Life Insurance Company

|  |  |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISRICT OF NEW YORK |
| Plaintiff, | Civil Action No: |
| vs. | **COMPLAINT** |
| DIANA SPIRA 2005 IRREVOCABLE LIFE INSURANCE TRUST, AARON AZRYLEWITZ, as Trustee, and SIMON SPIRA | |
| Defendants. | |

## 08 CIV. 6843

## JUDGE KARAS

Plaintiff, American General Life Insurance Company ("American

General"), having its principal place of business at 2929 Allen Parkway Houston, Texas

77019, by and through its undersigned counsel and by way of Complaint against the

defendants, says:

### INTRODUCTION

1.      America General seeks a declaration from this Court that Flexible

Premium Adjustable Life Policy U10033652L (hereinafter "the 2005 Policy")

issued to defendant Diana Spira 2005 Irrevocable Life Insurance Trust (hereinafter

"the Trust") as owner, and Flexible Premium Adjustable Life Policy No.

UM0030846L (hereinafter the "2006 Policy") issued to defendant Simon Spira

(hereinafter "Spira") as Owner, both insuring the life of the decedent, Diana Spira

729725.1

(hereinafter "Decedent"), are void *ab initio* based upon material misrepresentations contained in the application for each policy.

2.     Each policy provides Base Coverage in the amount of $5,000,000.

3.     In the application for each policy, Decedent, the Trust and Spira represented that Decedent was earning and had earned household income of at least $600,000 per year. Decedent, the Trust and Spira also represented that Decedent's personal net worth was at least $13 million at the time when each application was submitted. American General reasonably relied upon these representations in evaluating each application for insurance and deciding to issue each policy.

4.     In the course of its routine investigation of the claim for payment of benefits following Decedent's death, American General discovered for the first time that Decedent, the Trust, and Spira had misrepresented Decedent's personal income and net worth.

5.     In fact, the only verifiable household income of the Decedent at the time of her application was approximately $19,200 per year comprised of Social Security Retirement Benefits.

6.     The Decedent's only verifiable asset is the home in which she lived located at in Monsey, New York and valued at approximately $332,000.

7.     If American General had been aware of the true facts concerning Decedent's personal income and net worth at the time it issued the policies, American General would have declined to issue the policies. Therefore, each policy is void *ab initio*.

## JURISDICTION, PARTIES, AND VENUE

8.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.

9.    Venue lies within this District under the provisions of 28 U.S.C. §1391(a) because a substantial part of the events and omissions giving rise to the claim occurred within this district and because one or more defendants resides within this district.

10.    American General is a Texas corporation duly authorized to transact the business of insurance in the State of New York, with its principal place of business in the State of Texas. American General issued the policies at issue.

11.    Upon information and belief, the Trust is a trust formed under the laws of a state other than Texas. The Trust is the owner of the 2005 Policy.

12.    Defendant Aaron Azrylewitz (hereinafter "the Trustee") is a resident of the State of New York, and serves as the Trustee of the Trust.

13.    Defendant Spira is the spouse of the Decedent and owner of the 2006 Policy.

## APPLICATION AND MISREPRESENTATIONS

14.    On or about November 7, 2005, Decedent and the Trust executed Part A Life Insurance Application seeking issuance of the 2005 Policy. Ex. A, 2005 Policy and Application.

15.    Question number 1 on the Application asked for Decedent's household income and net worth. In response, Decedent and the Trust represented

3

729725.1

that Decedent had a household income of $600,000 and a net worth of $13,000,000.

16.    By executing the Application, Decedent and the Trustee

acknowledged and agreed that American General would rely upon the information

provided in the application in determining whether to issue the policy, and they

promised that the information contained in the application was true and complete as

follows:

> I have read the above statements or they have been read to
> me. They are true and complete to the best of my
> knowledge and belief. I understand that this application:
> (1) will consist of Part A, Part B, and if applicable, related
> forms; and (2) shall be the basis for any policy issued. I
> understand that any misrepresentation contained in this
> application and relied upon by the Company may be used
> to reduce or deny a claim or void the policy if: (1) it is
> within its contestable period; and (2) such
> misrepresentation materially affects the acceptance of the
> risk.

*Id.*

17.    On or about November 7, 2005, Decedent and the Trustee completed

and executed a Financial Questionnaire required by American General. Exhibit B,

Financial Questionnaire.

18.    Question 1 on the Financial Questionnaire requested a statement of

Decedent's personal pre-tax income from all sources for the current fiscal year and

previous fiscal year. For the current fiscal year, Decedent and the Trustee

represented personal pre-tax income from all sources as $600,000, including

$120,000 of "salary or wages" and unearned income of $480,000 from "interest, real

estate income, dividends."

19.    Question 2 on the Financial Questionnaire asks "What is your

approximate net worth, i.e., assets minus liabilities? (If necessary, give details in

4

"Remarks" below)." Decedent and the Trust listed approximate net worth as $13,000,000 consisting of $11,870,000 in personal assets, $1,600,000 in business assets and $397,000 in liabilities.

20.     By signing the Financial Questionnaire, Decedent and the Trustee represented, promised and agreed that "All of the above answers are full, complete and true to the best of my knowledge and belief, and a continuation of, and form part of, the application for insurance."

21.     In reliance upon these answers and each and every statement and representation made by Decedent and the Trust in the application and the Financial Questionnaire, American General executed, issued and caused to be delivered to the Trust the 2005 Policy with an Issue Date of December 15, 2005.

22.     On or about March 26, 2006, Decedent and Spira executed Part A Life Insurance Application seeking issuance of the 2006 Policy. Ex. C, 2006 Policy and Application.

23.     Question number 1 on the Application asked for Decedent's household income and net worth. In response, Decedent and Spira represented that Decedent had a household income of $600,000 and a net worth of $13,000,000.

24.     By executing the Application, Decedent and Spira acknowledged and agreed that American General would rely upon the information provided in the application in determining whether to issue the policy, and they promised that the information contained in the application was true and complete as follows:

> I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application:
> (1) will consist of Part A, Part B, and if applicable, related

5

729725.1

forms; and (2) shall be the basis for any policy issued. I
understand that any misrepresentation contained in this
application and relied upon by the Company may be used
to reduce or deny a claim or void the policy if: (1) it is
within its contestable period; and (2) such
misrepresentation materially affects the acceptance of the
risk.

*Id.*

25.     In reliance upon these answers and each and every statement and
representation made by Decedent and Spira in the application, as well as the
representations in the Financial Questionnaire, American General executed, issued
and caused to be delivered the 2006 Policy with an Issue Date of March 28, 2006.

26.     American General incurred costs in connection with the issuance and
administration of each Policy.

## DISCOVERY OF DECEDENT'S ACTUAL FINANCIAL POSITION

27.     Decedent died on June 7, 2007, within two years after the Issue Date
of both policies.

28.     On or about June 13, 2007, the Trustee completed a Proof of Death
Claimant's Statement seeking a lump sum payment of benefits under the 2005
Policy.

29.     On or about August 8, 2007, Spira's son Sholem Spira, a designated
beneficiary, completed a Proof of Death Claimant's Statement seeking a lump sum
payment of benefits under the 2006 Policy.

30.     On or about September 4, 2007, Spira's son Gershon Spira, a
designated beneficiary, completed a Proof of Death Claimant's Statement seeking a
lump sum payment of benefits under the 2006 Policy.

729725.1

31.    Shortly after receiving these claims, American General commenced a routine investigation.

32.    In the course of its investigation, American General discovered for the first time that Decedent, the Trust, and Spira had materially misrepresented Decedent's personal pre-tax income from all sources and personal net worth in connection with their applications for the 2005 Policy and 2006 Policy.

33.    American General's investigator met with Spira at his home on August 15, 2007 along with two of Spira's grandchildren, Joseph S. Spira and David Spira.  During the interview, Spira and his grandsons confirmed that Decedent did not have an annual income of $600,000 that could be documented or otherwise verified.  Spira and his grandsons also confirmed that Decedent did not have a personal net worth of $13,000,000 that could be documented or otherwise verified.

34.    American General was not aware of these facts concerning Spira's financial status prior to issuing, executing or delivering either the 2005 Policy or the 2006 Policy.

35.    American General reasonably relied upon the misrepresentations and omissions contained in the applications for the policies, including the Financial Questionnaire.

36.    American General incurred costs in connection with the investigation regarding defendants' misrepresentations.

## THE MISREPRESENTATIONS WERE MATERIAL

37.    The misrepresentations in the applications and Financial Questionnaire concerning Decedent's financial status affected American General's

7

decision to issue and deliver the policies as written and to accept the risks upon which issuance and delivery of each policy was based.

38.     If American General had been aware of Decedent's true financial status, American General would not have issued either the 2005 Policy or the 2006 Policy.

39.     If true and complete information had been provided in response to the questions on the applications and the Financial Questionnaire, American General would not have issued either the 2005 Policy or the 2006 Policy.

40.     Accordingly by letters dated July 17, 2008 addressed to the Trustee and to Spira, American General advised that, based on the material misrepresentation contained in the application for each policy, American General was rescinding the policy and further advised that a full refund of all premiums paid for each policy would be sent under separate cover.

## COUNT I
### (Material Misrepresentation)

41.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

42.     The response to Question 1 on each application was false and failed to disclose Decedent's true household income and net worth.

43.     The response to Question 1 on the Financial Questionnaire was false, and failed to disclose Decedent's true personal pre-tax income from all sources.

44.     The response to Question 2 on the Financial Questionnaire was false, and failed to disclose Decedent's true approximate net worth.

8

45.    The statement of acknowledgement and agreement by virtue of Decedent's and the Trustee's signatures on the application for the 2005 Policy was false.

46.    The statement of acknowledgement and agreement by virtue of Decedent's and Spira's signatures on the application for the 2006 Policy was false.

47.    Decedent's true financial status, including personal income and net worth, which was not disclosed in the applications or Financial Questionnaire, was material to the risk undertaken by American General in issuing each policy as written and was relied upon by American General in issuing each policy.

48.    American General's reliance upon the material misrepresentations and omissions in the applications and Financial Questionnaire was reasonable.

49.    If Decedent and/or the Trustee had fully and completely disclosed Decedent's personal income and net worth, or if the true facts had otherwise been made known by them before or at the time of issuance or delivery of the 2005 Policy, the 2005 Policy would not have been executed, issued or delivered by American General and the premiums for the 2005 Policy would never have been accepted by American General.

50.    If Decedent and/or Spira had fully and completely disclosed Decedent's personal income and net worth, or if the true facts had otherwise been made known by them before or at the time of issuance or delivery of the 2006 Policy, the 2006 Policy would not have been executed, issued or delivered by American General and the premiums for the 2006 Policy would never have been accepted by American General.

9

51.     Because of the foregoing material misrepresentations and failure to disclose, the 2005 Policy and the 2006 Policy are both void *ab initio* and of no force and effect since their inception, and American General never has been and never will become liable to anyone thereunder.

52.     American General has tendered refund of the premiums paid for each policy.

53.     American General has been damaged by virtue of defendants' material misrepresentations.

## COUNT II
### (Fraud)

54.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

55.     The misrepresentations and failure to disclose Decedent's true personal income and net worth in the applications and Financial Questionnaire were made and done knowingly by Decedent and the Trust with intent to deceive American General into issuing and delivering the 2005 Policy.

56.     The misrepresentations and failure to disclose Decedent's true personal income and net worth in the applications and Financial Questionnaire were made and done knowingly by Decedent and Spira with intent to deceive American General into issuing and delivering the 2006 Policy.

57.     The foregoing fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to issue and deliver the 2005 Policy and the 2006 Policy.

10

729725.1

58.    If Decedent's true personal income and net worth had been disclosed to American General prior to or at the time of the issuance or delivery of the 2005 Policy, American General would never have executed, issued, or delivered the 2005 Policy, nor would American General have accepted premiums for the 2005 Policy.

59.    If Decedent's true personal income and net worth had been disclosed to American General prior to or at the time of the issuance or delivery of the 2006 Policy, American General would never have executed, issued, or delivered the 2006 Policy, nor would American General have accepted premiums for the 2006 Policy.

60.    Because of the intentional and fraudulent misrepresentations and concealment, both the 2005 Policy and the 2006 Policy are void *ab initio* and of no force and effect since their inception and American General never has been nor will American General become liable to anyone thereunder.

61.    American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

### COUNT III
### (Declaratory Relief)

62.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

63.    An actual controversy has arisen and now exists between American General and defendants concerning their respective rights and duties under both the 2005 Policy and the 2006 Policy.

64.    American General contends that because of the material and fraudulent misrepresentations and concealments regarding Decedent's true personal

11

income and net worth, the each policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone thereunder.

65.     A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment as follows:

a.     A declaration pursuant to 28 U.S.C. § 2201 that upon defendant's acceptance of American General's tender of premium refund or upon American General's deposit with the Court of the total amount of premiums paid under the 2005 Policy and the 2006 Policy, that each policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that each policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of each policy in their possession, custody and control for cancellation;

b.     An order requiring  defendants, jointly and individually, to reimburse American General its cost of investigation, costs associated with the underwriting, issuance, and administration of each Policy together with its cost of suit and attorneys fees;

c.    Such other and further relief as may be available to American

General which the Court deems to be equitable and just.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Attorneys for plaintiff, American General Life Insurance Company

By: _____

Robert P. Lesko

Dated: July 28, 2008

13

# EXHIBIT A

# AMERICAN GENERAL LIFE
### Insurance Company
#### A Stock Company

Home Office:
Houston, Texas

2727–A Allen Parkway
P. O. Box 1931
Houston, Texas  77251

(713) 522-1111

POLICY NUMBER:

DUPLICATE POLICY

**WE WILL PAY THE DEATH BENEFIT PROCEEDS** to the Beneficiary if the Insured dies prior to the Maturity Date and while this policy is in force. Payment will be made after We receive due proof of the Insured's death, and will be subject to the terms of this policy.

**WE WILL PAY THE CASH SURRENDER VALUE** of this policy to the Owner on the Maturity Date if the Insured is living on that date and if this policy is in force.

The consideration for this contract is the application and payment of the first premium. The first premium must be paid on or before delivery of this policy.

This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY. Adjustable Death Benefit is payable upon the Insured's death prior to the Maturity Date and while this policy is in force. Premium payments are flexible and payable to the Maturity Date. ACCUMULATION VALUES and CASH VALUES are flexible and will be based on the amount and frequency of premiums paid, and the amount of interest credited. Policy contains a current interest bonus. NONPARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS.

### NOTICE OF TWENTY DAY RIGHT TO EXAMINE POLICY

You may return this policy within twenty days after delivery if You are not satisfied with it for any reason. The policy may be returned to Us or to the agent through whom it was purchased. Upon surrender of the policy within the twenty day period, it will be void from the beginning, and We will refund any premium paid.

SIGNED AT THE HOME OFFICE ON THE DATE OF ISSUE.

*Elizabeth M. Tuck*
Secretary

President

### FLEXIBLE PREMIUM ADJUSTABLE LIFE

### READ YOUR POLICY CAREFULLY

04337

# INDEX

Accumulation Value
  On the Date of Issue    7
  On Each Monthly Deduction Day    7
  On Other than a Monthly Deduction Day    7
Annual Report    19
Beneficiary and Proceeds    15
Calculations—How We Calculate
  The Monthly Deduction    8
  The Cost of Insurance—Basic Policy    8
Cash Value    7
Changing Your Insurance Policy
  Change of Ownership or Beneficiary    16
  Changing the Death Benefit Option    6
  Changing the Specified Amount    6
Continuation Guarantee Provisions    11-14
Contract    4
Cost of Insurance Rate Tables    3B,3C,22
Date of Issue    3, 4
Death Benefit and Death Benefit Options    5

Grace Period    9
Interest Rate - Accumulation Values    9
Loan Interest    14
Maturity Date    3
Monthly Administration Fee    3, 8
Monthly Guarantee Premium    10
Net Premium    4
Owner    4
Payment Options    16-18
Policy Loans    14-15
Policy Values Provision    7-11
Premium Payments    4
Reinstatement    19
Specified Amount    3, 5
Suicide Exclusion    18
Surrender, Full or Partial    10
Surrender Charge Provision    8
Surrender Charge Table    26-27 or 26-28
When This Policy Terminates    19

**Company Reference.** "We", "Our", "Us", or "Company" mean American General Life Insurance Company.

**"You", "Your."** The words "You" or "Your" mean the Owner of this policy.

**Home Office.** Our office at 2727-A Allen Parkway, Houston, Texas 77251; Mailing Address P. O. Box 1931; Houston, Texas 77251.

**Written, In Writing.** A written request or notice in acceptable form and content, which is signed and dated, and received at Our Home Office.

**Premium Class.** The Premium Class of this policy is shown on the Policy Schedule as one or a combination of the following terms:

**Preferred Plus.** The term "Preferred Plus" means the cost of insurance is based on the Insured being an exceptional mortality risk and a non-user of tobacco.

**Preferred.** The term "Preferred" means the cost of insurance is based on the Insured being a better than average mortality risk.

**Standard.** The term "Standard" means the cost of insurance is based on the Insured being an average mortality risk.

**Tobacco.** The term "Tobacco" means the cost of insurance is based on the Insured being a user of tobacco.

**Non-Tobacco.** The term "Non-Tobacco" means the cost of insurance is based on the Insured being a non-user of tobacco.

**Juvenile.** The term "Juvenile" means the Insured's age, nearest birthday, was 17 or less on the Date of Issue. Cost of insurance rates stated in Juvenile policies for insurance ages 18 and above are rates for tobacco users. (Rates are not classified on the basis of the Insured being a user or non-user of tobacco at ages 0 through 17.)

Prior to the policy anniversary nearest the Insured's 18th birthday a request for Non-Tobacco rates may be submitted. See page 20, "Rates on Policy Anniversary Nearest Insured's 18th Birthday."

**Special.** The term "Special" means "Substandard" or "Rated". This means an extra amount is being charged due to the health, occupation or avocation of the Insured.

**NOTICE**
This Policy Is A Legal Contract Between
The Policy Owner And The Company.

DUPLICATE POLICY

04337

12/16/054:52
53720B006435

## POLICY SCHEDULE

| | | YEARS |
|---|---|---|
| BASIC POLICY | MONTHLY COST | PAYABLE |
| ADJUSTABLE LIFE | SEE PAGE 22 | 17 |

ADDITIONAL BENEFITS PROVIDED BY RIDERS

NONE

### SCHEDULE OF PREMIUMS

| | |
|---|---|
| PREMIUM CLASS: | STANDARD NON-TOBACCO |
| INITIAL PREMIUM: | $358,000.00 |
| PLANNED PERIODIC PREMIUM: | $358,000.00 PAYABLE ANNUALLY |
| DEDUCTION DAY: | 15TH DAY OF EACH MONTH |

| | |
|---|---|
| MINIMUM DEATH BENEFIT AMOUNT (AFTER A DECREASE IN SPECIFIED AMOUNT) | $100,000 |
| MONTHLY GUARANTEE PREMIUM: | $23,550.00 |
| MONTHLY EXPENSE CHARGE FOR FIRST 5 YEARS: | $8,259.40 |
| INTEREST RATE APPLIED TO AMOUNTS OFFSET BY POLICY LOANS | MINIMUM 3% MAXIMUM 4% |

| | ANNUAL EFFECTIVE | FACTOR |
|---|---|---|
| GUARANTEED INTEREST RATE: | 3.00% | 1.002466 |

| | |
|---|---|
| DEATH BENEFIT COMPLIANCE TEST: | GUIDELINE PREMIUM |

| | GUARANTEED | INITIAL |
|---|---|---|
| PREMIUM EXPENSE CHARGE PERCENTAGE: | 7.50% | 6.50% |
| MONTHLY ADMINISTRATION FEE: | $7.00 | $5.00 |

COVERAGE MAY EXPIRE PRIOR TO THE MATURITY DATE SHOWN WHERE EITHER NO PREMIUMS ARE PAID FOLLOWING PAYMENT OF THE INITIAL PREMIUM, OR SUBSEQUENT PREMIUMS ARE INSUFFICIENT TO CONTINUE COVERAGE TO SUCH DATE.

### POLICY DATA

| | | |
|---|---|---|
| INSURED: DIANA SPIRA | POLICY NUMBER: | UM0045350L |
| INSURANCE AGE: 83 | DATE OF ISSUE: | DECEMBER 15, 2005 |
| BASE COVERAGE: $5,000,000 | DEATH BENEFIT OPTION: | 1 |
| SUPPLEMENTAL COVERAGE: $0 | | |
| INITIAL SPECIFIED AMOUNT: $5,000,000 | MATURITY DATE: | DECEMBER 15, 2022 |

THIS IS A SEX DISTINCT POLICY

THIS IS A COLORADO POLICY DUPLICATE POLICY

PAGE 3

04337

12/16/054:53
53720800643b

### POLICY SCHEDULE CONTINUED - POLICY NUMBER UM0045350L

THE FOLLOWING ITEMS APPLY TO THE CONTINUATION GUARANTEE ONLY:

CG ACCOUNT INTEREST RATES:                    UNLOANED

    CG1

        POLICY YEARS 1-5                 4.87%
        THEREAFTER                       4.77%

    CG2

        POLICY YEARS 1-5                 4.14%
        THEREAFTER                       4.24%

    CG3

        ALL POLICY YEARS                 3.00%

CG GUARANTEED INTEREST RATE FACTOR:             1.002468

CG MONTHLY EXPENSE CHARGE FOR FIRST 5 YEARS:    $8259.40

CG PREMIUM EXPENSE CHARGE PERCENTAGE:           6.50%

CG MONTHLY ADMINISTRATION FEE:                  $5.00

CG ACCOUNT VALUES MAY BE ADJUSTED
   TO THE AGE 100 PREMIUM LEVEL:        (AFTER THE SECOND POLICY ANNIVERSARY)

DUPLICATE POLICY

04337                    **PAGE 3A**

12/16/054:53
537208006437

## POLICY SCHEDULE CONTINUED - POLICY NUMBER UM0045350L

### TABLE A

#### TABLE OF MONTHLY CONTINUATION GUARANTEE COST OF INSURANCE RATES PER $1,000 OF CONTINUATION GUARANTEE NET AMOUNT AT RISK

| POLICY YEAR | RATE 1 | RATE 2 | RATE 3 | POLICY YEAR | RATE 1 | RATE 2 | RATE 3 |
|---|---|---|---|---|---|---|---|
| 1 | 2.9422 | 2.8900 | 2.8179 | 10 | 5.3720 | 5.2628 | 5.1398 |
| 2 | 3.0282 | 2.9795 | 2.9050 | 11 | 6.7851 | 6.6826 | 6.5168 |
| 3 | 3.0573 | 3.0028 | 2.9276 | 12 | 7.8385 | 7.7223 | 7.5627 |
| 4 | 3.0861 | 3.0259 | 2.9502 | 13 | 8.8413 | 8.7098 | 8.5378 |
| 5 | 3.1150 | 3.0492 | 2.9730 | 14 | 9.7389 | 9.6017 | 9.4201 |
| 6 | 3.4323 | 3.3461 | 3.2625 | 15 | 11.4714 | 11.3294 | 11.1189 |
| 7 | 3.7006 | 3.6209 | 3.5304 | 16 | 13.3279 | 13.1900 | 12.9437 |
| 8 | 4.0173 | 3.9305 | 3.8322 | 17 | 16.3348 | 16.1773 | 15.8978 |
| 9 | 4.2408 | 4.1475 | 4.0445 | | | | |

RATE 1 APPLIES TO THE AMOUNT OF CG NET AMOUNT AT RISK UP TO AND INCLUDING $250,000

RATE 2 APPLIES TO THE AMOUNT OF CG NET AMOUNT AT RISK IN EXCESS OF $250,000 UP TO AND INCLUDING $1,000,000

RATE 3 APPLIES TO THE AMOUNT OF CG NET AMOUNT AT RISK IN EXCESS OF $1,000,000

THE RATES SHOWN ABOVE REPRESENT THE MONTHLY CG COST OF INSURANCE FOR EACH $1,000 OF CG NET AMOUNT AT RISK.  IF THIS POLICY HAS BEEN ISSUED IN A SPECIAL (RATED) PREMIUM CLASS, THE CG MONTHLY COST WILL BE CALCULATED AS SHOWN ON THE POLICY SCHEDULE.

DUPLICATE POLICY

04337

**PAGE 3B**

## POLICY SCHEDULE
### TABLE B
### TABLE OF MONTHLY CONTINUATION GUARANTEE COST OF INSURANCE RATES
### PER $1,000 OF CONTINUATION GUARANTEE NET AMOUNT AT RISK

| ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE | ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE |
|---|---|---|---|---|---|
| 18 | $0.1334 | $0.0792 | 60 | $ 1.0606 | $ 0.7124 |
| 19 | .1384 | .0817 | 61 | 1.1705 | .7671 |
| 20 | .1401 | .0842 | 62 | 1.2958 | .8361 |
| 21 | .1392 | .0850 | 63 | 1.4392 | .9230 |
| 22 | .1367 | .0867 | 64 | 1.6015 | 1.0259 |
| 23 | .1342 | .0875 | | | |
| 24 | .1309 | .0900 | 65 | 1.7812 | 1.1375 |
| | | | 66 | 1.9751 | 1.2577 |
| 25 | .1267 | .0908 | 67 | 2.1857 | 1.3797 |
| 26 | .1234 | .0933 | 68 | 2.4124 | 1.5029 |
| 27 | .1217 | .0950 | 69 | 2.6604 | 1.6347 |
| 28 | .1200 | .0975 | | | |
| 29 | .1200 | .1000 | 70 | 2.9413 | 1.7872 |
| | | | 71 | 3.3127 | 1.9699 |
| 30 | .1200 | .1034 | 72 | 3.6309 | 2.1968 |
| 31 | .1225 | .1059 | 73 | 4.0583 | 2.4743 |
| 32 | .1251 | .1092 | 74 | 4.5412 | 2.8020 |
| 33 | .1292 | .1125 | | | |
| 34 | .1342 | .1184 | 75 | 5.0627 | 3.1745 |
| | | | 76 | 5.6218 | 3.5855 |
| 35 | .1409 | .1225 | 77 | 6.2138 | 4.0294 |
| 36 | .1476 | .1301 | 78 | 6.8332 | 4.5067 |
| 37 | .1568 | .1392 | 79 | 7.4961 | 5.0316 |
| 38 | .1668 | .1493 | | | |
| 39 | .1785 | .1610 | 80 | 8.2296 | 5.6271 |
| | | | 81 | 9.0544 | 6.3150 |
| 40 | .1910 | .1735 | 82 | 9.9970 | 7.1178 |
| 41 | .2061 | .1885 | 83 | 11.0733 | 8.0528 |
| 42 | .2211 | .2036 | 84 | 12.2671 | 9.1022 |
| 43 | .2387 | .2186 | | | |
| 44 | .2562 | .2336 | 85 | 13.5559 | 10.2687 |
| | | | 86 | 14.9178 | 11.5352 |
| 45 | .2771 | .2495 | 87 | 16.3441 | 12.9142 |
| 46 | .2997 | .2662 | 88 | 17.8084 | 14.3953 |
| 47 | .3240 | .2846 | 89 | 19.3326 | 16.0073 |
| 48 | .3499 | .3047 | | | |
| 49 | .3792 | .3256 | 90 | 20.9416 | 17.7560 |
| | | | 91 | 22.6679 | 19.8851 |
| 50 | .4102 | .3499 | 92 | 24.5787 | 21.8646 |
| 51 | .4471 | .3759 | 93 | 26.7640 | 24.4226 |
| 52 | .4898 | .4052 | 94 | 29.6373 | 27.6714 |
| 53 | .5377 | .4395 | | | |
| 54 | .5931 | .4747 | 95 | 33.9311 | 32.3221 |
| | | | 96 | 41.2793 | 40.0467 |
| 55 | .6544 | .5125 | 97 | 56.0398 | 55.1592 |
| 56 | .7225 | .5511 | 98 | 83.3333 | 83.3333 |
| 57 | .7949 | .5897 | 99 | 83.3333 | 83.3333 |
| 58 | .8732 | .6267 | | | |
| 59 | .9618 | .6662 | | | |

The rates shown above represent the monthly CG cost of insurance for each $1,000 of CG net amount at risk. If this policy has been issued in a special (rated) premium class, the CG monthly cost will be calculated as shown on the Policy Schedule.

04337

NS

**Contract.** Your policy is a legal contract that You have entered into with Us. You have paid the first premium and have submitted an application, a copy of which is attached. In return, We promise to provide the insurance coverage described in this policy.

The entire contract consists of:

1. The basic policy;

2. The riders that add benefits to the basic policy, if any;

3. Endorsements, if any; and

4. The attached copy of Your application, and any amendments or supplemental applications.

**Date of Issue.** The Date of Issue of this policy is the date on which the first premium is due. The Date of Issue is also the date from which all policy years, anniversaries, and Monthly Deduction dates are determined.

**Owner.** The Owner is as stated in the application unless later changed. During the Insured's lifetime, the Owner may exercise every right the policy confers or We allow (subject to the rights of any assignee of record). You may have multiple Owners of the policy. In that case, the authorizations of all Owners are required for all policy changes. The Owner and the Insured may be the same person but do not have to be. If an Owner dies while the policy is in force and the Insured is living, ownership rights pass on to a successor Owner recorded in Our records, if any; otherwise ownership rights pass to the estate of the Owner.

## PREMIUM PAYMENTS

All premiums after the first are payable in advance. Premium payments are flexible. This means You may choose the amount and frequency of payments.

The actual amount and frequency of premium payments will affect the Cash Values and the amount and duration of insurance. Please refer to the Policy Values Provision for a detailed explanation.

**Planned Periodic Premiums.** The amount and frequency of the Planned Periodic Premiums You selected are shown on the Policy Schedule. You may request a change in the amount and frequency. We may limit the amount of any increase. (See "Maximum Premium").

**Unscheduled Additional Premiums.** You may pay additional premiums at any time before the Maturity Date shown on the Policy Schedule. We may limit the number and amount of additional premiums. (See "Maximum Premium" and "Maximum Net Amount at Risk").

**Maximum Premium.** We reserve the right to refund any premium that would cause this policy to fail to qualify as life insurance under the Death Benefit Compliance Test selected, and under applicable tax laws. The test selected is shown on the Policy Schedule.

**Maximum Net Amount at Risk.** We reserve the right to refund any premium that would cause an immediate increase in the Net Amount at Risk unless the Insured is living and provides evidence of insurability satisfactory to Us. We may automatically effect a partial surrender or reduce the Death Benefit, both of which may have federal tax consequences, if the Net Amount at Risk exceeds Our limitations. (We determine the "Net Amount at Risk" as shown in the provision entitled "How We Calculate the Cost of Insurance for the Basic Policy").

**Where to Pay.** You may make Your payments to Us at Our Home Office or to an authorized agent. All premium checks must be made payable to the Company. A receipt signed by an officer of the Company will be furnished upon request.

**Premium Expense Charge.** The Premium Expense Charge is calculated by multiplying the premium paid by the Premium Expense Charge Percentage. The Premium Expense Charge Percentage is adjustable, but will never be more than the guaranteed Premium Expense Charge Percentage shown on the Policy Schedule.

**Net Premium.** The term Net Premium as used in this policy means "The premium paid, less the Premium Expense Charge" except as follows: No Premium Expense Charge will be deducted if the source of the premium is Cash Surrender Values applied from another policy issued by the Company. (We refer to this as an internal rollover).

04337

# DEATH BENEFIT AND DEATH BENEFIT OPTIONS

**Death Benefit Proceeds.** If the Insured dies prior to the Maturity Date and while this policy is in force, We will pay the Death Benefit Proceeds to the Beneficiary. The Death Benefit Proceeds will be subject to:

1. The Death Benefit Option in effect on the date of death; and

2. Any increases or decreases made to the Specified Amount. The Initial Specified Amount is shown on the Policy Schedule.

Guidelines for changing the Death Benefit Option or the Specified Amount will be found in the section entitled "Changing Your Insurance Policy."

Any premium received after the date of death will be refunded and will not be included in the Accumulation Value for purposes of calculating the Death Benefit Amount.

The Death Benefit Proceeds will be the Death Benefit Amount, after reversing any premium received after the date of death, less any outstanding policy loan and will be subject to the other provisions of the Beneficiary and Proceeds section.

**Death Benefit Compliance Test.** Death Benefit Compliance Tests are used to determine if a policy will qualify as life insurance under applicable tax laws. There are two compliance tests which may be used: The Guideline Premium Test and the Cash Value Accumulation Test. The test which You selected when this policy was issued is shown on the Policy Schedule. You cannot change Your election of the Death Benefit Compliance Test after the Date of Issue.

**Death Benefit Option.** The Death Benefit Option which You have chosen is shown on the Policy Schedule as either Option 1, 2 or 3.

**Option 1.** If You have chosen Option 1, the Death Benefit Amount will be the greater of:

1. The  Specified Amount on the date of death; or

2. The Accumulation Value on the date of death multiplied by the applicable Death Benefit Corridor Rate.

**Option 2.** If You have chosen Option 2, the Death Benefit Amount will be the greater of:

1. The Specified Amount plus the Accumulation Value on the date of death; or

2. The Accumulation Value on the date of death multiplied by the applicable Death Benefit Corridor Rate.

**Option 3.** If You have chosen Option 3, the Death Benefit Amount will be the amount payable under Option 1 plus the sum of all premiums paid for this policy, including premiums for any riders, less any amounts waived by the Company under a waiver of monthly deduction benefit, except as follows:

Premium payments after a partial surrender will not increase the Death Benefit Amount until the sum of premiums paid from the date of the partial surrender exceeds the amount of the partial surrender.

Death Benefit Corridor Rates are shown in the table for the Death Benefit Compliance Test which You selected.

**Specified Amount.** The Specified Amount is the total of two types of coverage: Base Coverage and Supplemental Coverage. Base Coverage is subject to surrender charges and a five year Monthly Expense Charge, but Supplemental Coverage is not. If Supplemental Coverage is made a part of the Specified Amount, policy costs will be lower than if the same Specified Amount is issued without Supplemental Coverage. However, realizing the benefits of the Monthly Guarantee Premium provision will require a higher Monthly Guarantee Premium if Supplemental Coverage is included. The amounts of Base Coverage, Supplemental Coverage (if any) and Specified Amount are shown on the Policy Schedule.

# CHANGING YOUR INSURANCE POLICY

You may request a change in the Specified Amount or Death Benefit Option at any time except that a decrease in the Specified Amount may not become effective prior to the end of the first policy year. Your request must be submitted to Our Home Office in Writing.

**Increasing the Specified Amount.** We will require an application and evidence of insurability satisfactory to Us for any increase in the Specified Amount. The proportion of Base to Supplemental Coverage following an increase may be in any proportion as long as Base Coverage is at least 10% of the total Specified Amount. An increase will be effective on the Monthly Deduction Day on or next following the date the application for increase is approved by Us. The effective date will appear in an endorsement to this policy.

**Decreasing the Specified Amount.** Any decrease will go into effect on the Monthly Deduction Day following the day We receive the request. The Death Benefit Amount remaining in effect after any decrease cannot be less than the greater of:

1.  The Minimum Death Benefit Amount shown on the Policy Schedule; and

2.  Any Death Benefit Amount required to qualify this policy as life insurance under applicable tax laws.

Any such decrease will be applied in the following order:

1.  Against the Specified Amount provided by the most recent increase, with the decrease applying first to the entire Supplemental Coverage portion of such increase, if any, followed by the Base Coverage portion;

2.  Against the next most recent increases successively, with the decrease of each prior increase applying first to the entire Supplemental Coverage portion of such increase, if any, followed by the Base Coverage portion;

3.  Against the Specified Amount provided under the original application, with the decrease applying first to the entire Supplemental Coverage portion of such amount, if any, followed by the Base Coverage portion.

Any reduction in Base Coverage will be subject to any applicable Surrender Charges on a pro-rata basis with the Surrender Charge prior to the reduction in Base Coverage being reduced proportionately. However, if such charge is greater than the Accumulation Value, the Specified Amount decrease will not be allowed.

**Changing the Death Benefit Option.** You may request a change from Option 1 to Option 2, from Option 2 to Option 1, or from Option 3 to Option 1.

1.  If You request a change from Option 1 to Option 2: The new Specified Amount will be the Specified Amount, prior to change, less the Accumulation Value as of the effective date of the change, but not less than zero. Any such decrease in Specified Amount will be subject to the same guidelines and restrictions as outlined in the Decreasing the Specified Amount provision.

2.  If You request a change from Option 2 to Option 1: The new Specified Amount will be the Specified Amount prior to the change plus the Accumulation Value as of the effective date of the change. The entire increase in the Specified Amount will be applied to the last coverage added (either Base or Supplemental) which has not been removed. For the purpose of this calculation, if the Base and Supplemental Coverages were issued on the same date, We will consider the Supplemental Coverage to have been issued later.

3.  If You request a change from Option 3 to Option 1: The Specified Amount will remain unchanged.

We will not require evidence of insurability for a change in the Death Benefit Option. The change will go into effect on the Monthly Deduction Day following the date We receive Your request for change.

**Changing the Terms of Your Policy.** Any change in Your policy must be approved by the President, a Vice President, an Administrative Officer or Secretary of the Company. No agent has the authority to make any changes or waive any of the terms of Your policy.

04337

# POLICY VALUES PROVISION

## Accumulation Value

**On the Date of Issue.** The Accumulation Value on the Date of Issue will be:

1. The Net Premium received; less

2. The Monthly Deduction for the first policy month; (See "How We Calculate a Monthly Deduction.")

The first Deduction Day is the Date of Issue. The Monthly Deduction Day is shown on the Policy Schedule.

**On Each Monthly Deduction Day.** On each Monthly Deduction Day after the Date of Issue, We will determine the Accumulation Value as follows:

1. We will take the Accumulation Value as of the last Monthly Deduction Day; and

2. Add all Net Premiums received since the last Monthly Deduction Day; and

3. Add the interest earned for the month:

   A. Interest will be applied for the entire month on the excess of the Accumulation Value on the last Monthly Deduction Day over any partial surrenders made since the last Monthly Deduction Day;

   B. If a Net Premium has been received since the last Monthly Deduction Day, interest on such amount will be added on a pro-rata basis from the date received to the end of the policy month;

   C. If a partial surrender has been made since the last Monthly Deduction Day, interest on the amount of such partial surrender will be added on a pro-rata basis from the last Monthly Deduction Day to the day of such partial surrender; and

4. Subtract any partial surrender made and any charges for partial surrenders since the last Monthly Deduction Day; and

5. Subtract the Monthly Deduction for the policy month following the Monthly Deduction Day. (See "How We Calculate a Monthly Deduction.")

**On Any Day Other Than a Monthly Deduction Day.** The Accumulation Value on any day other than a Monthly Deduction Day will be:

1. The Accumulation Value as of the last Monthly Deduction Day;

2. Less any partial surrenders paid and any charges for partial surrenders since the last Monthly Deduction Day;

3. Plus all Net Premiums received since the last Monthly Deduction Day.

**Cash Value.** The Cash Value of this policy will be equal to the Accumulation Value less the Surrender Charge, if any.

**Cash Surrender Value.** The Cash Surrender Value of this policy will be equal to the Cash Value less any indebtedness.

**Monthly Deductions May Be Made Only if There Is Sufficient Cash Surrender Value (Unless Policy Is Being Continued Under the Monthly Guarantee Premium or Continuation Guarantee Provisions).** Unless this policy is being continued in force under the Monthly Guarantee Premium or Continuation Guarantee provisions, a Monthly Deduction from the Accumulation Value may be made only if the Cash Surrender Value is equal to or greater than the Monthly Deduction. The Accumulation Value will be reduced by the amount of each Monthly Deduction. If the Cash Surrender Value on a Monthly Deduction Day is not sufficient to meet the Monthly Deduction for the current month, this policy will be subject to the "Grace Period", "Monthly Guarantee Premium" and "Continuation Guarantee" provisions.

04337

Page 7

## POLICY VALUES PROVISION (Cont'd)

**Surrender Charge.** The Surrender Charge applies only to the Base Coverage portion of the Specified Amount. The Surrender Charge for the amount of Base Coverage on the Date of Issue will apply if such Base Coverage is surrendered or reduced during the Surrender Charge Period. Surrender Charges for any increases in Base Coverage will apply if such increases are surrendered or reduced during the Surrender Charge Period of each increase. The Surrender Charge Period will vary according to the age at issue (or age on the date of an increase) as shown in the Table of Surrender Charges per $1,000 of Base Coverage.

You may make a request for surrender at any time during the Insured's lifetime before the Maturity Date.

A full surrender, partial surrender or reduction in Specified Amount due to a requested partial surrender will be calculated as of the day We receive Your request.

**How We Calculate a Monthly Deduction.** Each Monthly Deduction includes:

1. The cost of insurance provided by the basic policy; and

2. The cost of insurance for benefits provided by riders; and

3. The Monthly Administration Fee; and

4. During the first five policy years, a Monthly Expense Charge. (A Monthly Expense Charge also applies to the amount of any increase in Base Coverage during the first five years of such increase.)

**How We Calculate the Cost of Insurance for the Basic Policy.** We calculate the cost of insurance at the beginning of each policy month. The cost of insurance is determined on the Monthly Deduction Day by multiplying the Net Amount at Risk by the cost of insurance rate per $1,000 and dividing the result by 1000.

To determine the Net Amount at Risk, We:

1. Divide the Death Benefit Amount under the basic policy by the Guaranteed Interest Rate factor shown on the Policy Schedule; and

2. Reduce the result by the amount of Accumulation Value:

   a. Before the cost of insurance deduction is taken; and

   b. After the applicable rider charges, the Monthly Expense Charge, if any, and the Monthly Administration Fee are deducted.

**Cost of Insurance for Benefits Provided by Riders.** The cost of insurance for benefits provided by riders will be as stated on the Policy Schedule or in an endorsement.

**Monthly Administration Fee.** An administration fee will be deducted monthly. The amount of the Monthly Administration Fee may be adjusted, but will never be greater than the guaranteed Monthly Administration Fee shown on the Policy Schedule.

**Monthly Expense Charge.** A Monthly Expense Charge will be deducted during the first five policy years, and during the first five years of any increase in Base Coverage. The Monthly Expense Charge for the first five years for the initial amount of Base Coverage is shown on the Policy Schedule. The Monthly Expense Charge for the first five years for any increase in Base Coverage will be provided in an endorsement to this policy. Any decrease in Base Coverage will not change the Monthly Expense Charge then in effect.

**Cost of Insurance Rate.** The cost of insurance rate for the Initial Specified Amount, and for each Specified Amount increase, is based on the Insured's:

1. Gender; (if issued on a Sex Distinct basis);

2. Age nearest birthday on each policy anniversary; and

## POLICY VALUES PROVISION (Cont'd)

3. Premium class shown on the Policy Schedule, associated with the Initial Specified Amount and each increase in the Specified Amount.

A table of guaranteed monthly cost of insurance rates is included in this policy. We can use cost of insurance rates that are lower than the guaranteed rates. Any change in rates will apply to all policies in the same rate class as this policy. The rate class of this policy is determined on its Date of Issue according to:

1. The calendar year of issue and policy year;

2. The plan of insurance;

3. The amount of insurance; and

4. The age, gender and premium class of the Insured if issued on a Sex Distinct basis or the age and premium class if issued on a Gender Neutral basis.

**Changes in Rates, Charges and Fees.** This policy does not participate in our profits or surplus. Any redetermination of the cost of insurance rates, Premium Expense Charge Percentage or Monthly Administration Fee will be based on our future expectations as to mortality, persistency, expenses, reinsurance costs, and state and federal taxes. Any redetermination of interest rates will be based only on expectations of future investment earnings. We will not change these rates or charges in order to recoup any prior losses.

**Interest Rate.** The guaranteed interest rate used in calculating Accumulation Values is shown on the Policy Schedule. We can use interest rates greater than the guaranteed rates to calculate Accumulation Values. We will apply a different rate of interest to that portion of the Accumulation Value which equals the amount of a policy loan. The annual effective rate which may be applied to amounts offset by policy loans is also shown on the Policy Schedule.

At the end of the first month following the fifth policy anniversary, and at the end of each month thereafter, this policy will be eligible for a current interest bonus. The bonus will be credited monthly to the Accumulation Value subject to the following guidelines:

1. The declared annual interest rate at the end of each month must be greater than the guaranteed annual interest rate; and

2. The bonus credited each month will increase the declared annual interest rate applied to the Accumulation Value not offset by a policy loan by .10% (One tenth of one percent).

**Grace Period.** The Grace Period is the 61-day period that follows a Monthly Deduction Day or an annual policy loan interest due date if:

1. There is not enough Cash Surrender Value to pay the amount due; and

2. The requirements of the Monthly Guarantee Premium provision have not been met; and

3. The requirements of the Continuation Guarantee Provisions have not been met.

There is no Grace Period for the initial Monthly Deduction.

If the amount required to keep Your policy in force is not paid by the end of the Grace Period, this policy will terminate without value. However, We will give You at least 31 days notice prior to termination that Your policy is in the Grace Period and advise You of the amount of premium or the amount of loan interest required to keep Your policy in force. Such 31 days prior notice will be sent to You at Your last known address, and to the assignee of record, if any. If death occurs during the Grace Period, the amount due through the policy month in which death occurred will be deducted from the proceeds.



## POLICY VALUES PROVISION (Cont'd)

If a surrender request is received within 31 days after the Grace Period commences, the Cash Surrender Value payable will not be less than the Cash Surrender Value on the Monthly Deduction Day the Grace Period commenced. The Monthly Deduction for the policy month following such Monthly Deduction Day will not be subtracted in the calculation of such Cash Surrender Value.

**Monthly Guarantee Premium.** The Monthly Guarantee Premium for the Initial Specified Amount and any benefit riders in force on the Date of Issue is shown on the Policy Schedule. The Monthly Guarantee Premium Period (Guarantee Period) on the Date of Issue will be 10 years if the Issue Age is 70 or less. If the Issue Age is greater than 70, the Guarantee Period will be 5 years. This policy will not terminate on a Monthly Deduction Day within the Guarantee Period if, on such Monthly Deduction Day the sum of premiums paid equals or exceeds:

1. The sum of the Monthly Guarantee Premiums from the Date of Issue, including the current month; plus

2. Any partial surrenders and any increase in the loan amount since the Date of Issue.

If on a Monthly Deduction Day, this policy does not meet the Monthly Guarantee Premium requirements, guarantees under the Monthly Guarantee Premium provision will not be in effect.

During the Guarantee Period the Monthly Guarantee Premium will be recalculated if:

1. The Specified Amount is increased or decreased;

2. A benefit rider is increased, decreased, added or removed; or

3. A change in Death Benefit Option occurs.

These changes will not affect the Guarantee Period then in effect, if any.

If a policy is reinstated with no change to the Specified Amount, Death Benefit Option, Premium Class or benefit riders, if any, the Monthly Guarantee Premium upon reinstatement will be the same as it was when the policy lapsed. Reinstatement will not extend or otherwise change the Monthly Guarantee Premium Period that was in effect when the policy lapsed.

The policy value at the end of the Guarantee Period may be insufficient to keep the policy in force unless an additional payment is made at that time.

**Full Surrender.** You may return Your policy to Us and request its Cash Surrender Value at any time during the Insured's lifetime before the Maturity Date. The Cash Surrender Value will be calculated as of the day We receive Your request. If surrender takes place within 31 days after a policy anniversary, the Cash Value will not be less than on that anniversary.

**Partial Surrender.** At any time after the first policy year, You may request withdrawal of a portion of the Cash Surrender Value of the policy. Your request must be made in Writing prior to the Maturity Date during the Insured's lifetime.

A partial surrender will result in a reduction of the Cash Value, Accumulation Value and the Death Benefit Amount. The Cash and Accumulation Values will be reduced by the amount of partial surrender. The reduced Death Benefit Amount will be determined in accordance with the Death Benefit Option provision. If Your Death Benefit Option is Option 1 or Option 3, the Specified Amount will be reduced by the amount of the partial surrender. The reduction in Specified Amount will be subject to the same guidelines and restrictions as outlined in the Decreasing the Specified Amount provision. (The reduced amount will not be less than zero.) The Death Benefit Amount remaining after this reduction must be no less than the Minimum Death Benefit Amount shown on the Policy Schedule.

## POLICY VALUES PROVISION (Cont'd)

There will be a charge not to exceed $50.00 for each partial surrender in addition to the amounts shown in the Table of Surrender Charges. Any partial surrender that causes a reduction in Base Coverage will be subject to any applicable surrender charges on a pro-rata basis, and the remaining surrender charge will be reduced proportionately.

**Payment of Cash Value Benefit.** We can delay payment of Cash Surrender Values for up to 6 months, or the period allowed by law, whichever is less. However, We cannot delay payment of a partial surrender if the amount is to be used to pay a premium to Us.

**Continuation of Insurance Coverage if Amount or Frequency of Premium Payments Is Reduced or if Premium Payments Are Discontinued.** If You reduce the amount or frequency of premium payments, or if You discontinue payment of premiums and do not surrender this policy. We will continue making Monthly Deductions (as long as there is sufficient Cash Surrender Value to make such deductions) until the Maturity Date. This policy will remain in force as long as the Monthly Guarantee Premium or Continuation Guarantee requirements are met. This policy will remain in force until the earlier of the following dates:

1.   The Maturity Date (if there is sufficient Cash Surrender Value to make Monthly Deductions to that date);

2.   Full surrender of the policy;

3.   The end of the Grace Period; or

4.   Death of the Insured.

## CONTINUATION GUARANTEE PROVISIONS

After the second policy anniversary the Continuation Guarantee (CG) provides a benefit designed to continue Your insurance coverage within defined limits even if Your Cash Surrender Value is not large enough to cover the Monthly Deductions. The CG is an alternate policy value that is not used in determining the actual policy values. The CG does not provide additional policy value or Death Benefit Proceeds. The CG is simply a reference value used after the second policy anniversary to determine whether or not the CG is in effect.

The CG policy value is calculated in the same manner as the actual policy value, but using different charges and interest rates. Except as stated in the Policy Changes provision, the tables of CG cost of insurance rates, CG interest rates, and all other CG charges used in this alternate policy value calculation are guaranteed not to change.

After the second policy anniversary and while the CG is in effect, this policy will not enter the Grace Period if there is not enough Cash Surrender Value to cover current Monthly Deductions. Even if the policy's Cash Surrender Value is zero, the CG will remain in effect as long as the value of the Continuation Guarantee Account ("CG Account") is greater than or equal to zero. The "CG Account" is the sum of the "CG1", "CG2" and "CG3" Accounts.

**Continuation Guarantee Specified Amount.** The CG Specified Amount is only used to determine the CG Account values. The CG will have an initial Specified Amount equal to the sum of the Base and Supplemental Coverages. Such initial Specified Amount is the same as the initial Specified Amount for the policy. However, Death Benefit Option changes may cause the CG Specified Amount to differ from the Specified Amount of the policy.

**Continuation Guarantee Premium Expense Charge Percentage.** The CG Premium Expense Charge Percentage is shown on the Policy Schedule. It is used to determine the Premium Expense Charge for the CG Account.

**Continuation Guarantee Account Values.** Net Premiums will be allocated to the CG Account in accordance with the following rules:

## CONTINUATION GUARANTEE PROVISIONS (Cont'd)

1.  During the first policy year:

    a.  The initial Net Premium will be allocated to CG 1;

    b.  Additional Net Premiums will be allocated to CG 1 if the value of the CG Account is greater than zero;

    c.  Additional Net Premiums will be allocated to CG3 if the value of the CG Account is equal to or less than zero;

2.  After the first policy year:

    a.  If the value of the CG Account is zero on the last policy anniversary, all Net Premiums received until the following anniversary will be allocated to CG3;

    b.  Otherwise, if the value of the CG Account is less than or equal to zero on the date the Net Premium is received, the Net Premium will be allocated to CG3;

    c.  Otherwise, the Net Premium will be allocated to CG2.

The value of each account is determined on each Monthly Deduction Day by accumulating with interest:

1.  The value for the prior month;

2.  Plus Net Premiums credited to that account;

3.  Less any partial surrenders charged to that account;

4.  Less Monthly Deductions charged to that account.

**Continuation Guarantee Accounts - Monthly Deductions.** Each Monthly Deduction includes:

1.  The cost of insurance provided by the CG; and

2.  The cost of insurance for benefits provided by riders; and

3.  The CG Monthly Administration Fee; and

4.  During the first five policy years a CG Monthly Expense Charge. (A CG Monthly Expense Charge also applies to the amount of any increase in Base Coverage during the first five years of such increase.)

Monthly Deductions will be taken from the accounts in the following order:

1.  From CG3 until it is reduced to zero;

2.  From CG2 until it is reduced to zero;

3.  From CG1 until it is reduced to zero; and

4.  Deductions will then be applied to CG3 which will result in a value that is less than zero.

**How We Calculate the Cost of Insurance for the Continuation Guarantee.** We calculate the CG cost of insurance at the beginning of each policy month. The CG cost of insurance is determined on the Monthly Deduction Day by multiplying the Continuation Guarantee Net Amount at Risk by the CG cost of insurance rate per $1,000 and dividing the result by 1,000.

There are two tables of CG cost of insurance rates that will apply to the CG Account. Table A will apply on each Monthly Deduction Day that the value of CG3 is zero. Table B will apply on each Monthly Deduction Day that CG3 is not zero.

**Continuation Guarantee Death Benefit Amount.** The CG Death Benefit Amount described below is only used to determine CG Account values.

If You have chosen Option 1, the CG Death Benefit Amount will be the greater of:

1.  The CG Specified Amount on the date of death; or

2.  The CG Account value plus policy loans on the date of death multiplied by the applicable Death Benefit Corridor Rate.

## CONTINUATION GUARANTEE PROVISIONS (Cont'd)

If You have chosen Option 2, the CG Death Benefit Amount will be the greater of:

1. The CG Specified Amount plus the greater of: (1) zero; and (2) the sum of the CG Account value and policy loans on the date of death; or

2. The CG Account value plus policy loans on the date of death multiplied by the applicable Death Benefit Corridor Rate.

If You have chosen Option 3, the CG Death Benefit Amount will be the amount payable under Option 1 plus the sum of all premiums paid for this policy, including premiums for any riders, less any amounts waived by the Company under a waiver of monthly deduction benefit, except as follows:

Premium payments after a partial surrender will not increase the CG Death Benefit Amount until the sum of premiums paid from the date of the partial surrender exceeds the amount of the partial surrender.

**Continuation Guarantee Net Amount at Risk.** To determine the CG Net Amount at Risk, We:

1. Divide the CG Death Benefit Amount by the CG Guaranteed Interest Rate Factor shown on the Policy Schedule; and

2. Reduce the result by the greater of: (1) zero; and (2) the sum of the CG Account value and policy loans:

   a. Before the cost of insurance deduction is taken; and

   b. After the applicable rider charges, the CG Monthly Expense Charge, if any, and the CG Monthly Administration Fee are deducted.

**Continuation Guarantee Interest Rates.** CG interest rates for the unloaned portion of each CG Account are shown on the Policy Schedule. Interest will begin to accumulate as of the date the Net Premium is credited.

**Partial Surrenders.** The gross amount of any partial surrender will be deducted from the CG

Accounts in the same order as Monthly Deductions. (That is: From CG3 until it is reduced to zero; then from CG2 until it is reduced to zero; then from CG1 until it is reduced to zero; and finally, deductions causing a balance that is less than zero will be applied to CG3).

**Policy Changes.** The CG charges and CG interest rates shown on the Policy Schedule pages for the CG may change in the event of an increase in Specified Amount, a Death Benefit Option change or a change in Premium Class. We will send notice to Your last known address of any such changes in these Policy Schedule pages. A decrease in Base Coverage will be subject to any applicable Surrender Charges on a pro-rata basis. A decrease in Base Coverage will not change the CG Monthly Expense Charge then in effect.

**Option to Adjust CG Account Values to the Age 100 Premium Level.** This option allows You to adjust the values in the CG Account to the level that would have been realized if the Age 100 Premium had been paid when due. This will require adjustment of each CG Account value. You may exercise this option at the age(s) or during the period shown on the Policy Schedule.

The CG Account may be adjusted to the Age 100 Premium Level if We receive Written notice and payment of the necessary premium at the Adjustment Age. The following definitions apply:

**Adjustment Age:** The age at which You exercise the Option to Adjust CG Account Values to the Age 100 Premium Level.

**Age 100 Premium:** The level premium payable at issue and on each policy anniversary that is required to provide the CG to age 100.

**Adjustment Value:** The value of the CG Account at the Adjustment Age assuming the Age 100 Premium is paid when due.

**Adjustment Premium:** The sum of the Age 100 Premiums, less the sum of premiums paid (less partial surrenders) at the Adjustment Age.

## CONTINUATION GUARANTEE PROVISIONS (Cont'd)

Adjusting CG Account values to the Adjustment Value is subject to the following:

1. Any loan must be repaid prior to exercising this option.

2. A premium must be paid at the Adjustment Age that is equal to or greater than the Adjustment Premium.

3. With the Adjustment Premium, You must notify Us In Writing that You are adjusting CG Account values to the Adjustment Value.

4. This option may be exercised only once.

5. This option is not available if Death Benefit Option 3 is presently in effect (or ever has been in effect).

**Termination of the Option to Adjust CG Account Values to the Age 100 Premium Level.** Any of the following actions will terminate the Option to Adjust CG Account Values to the Age 100 Premium Level:

1. If there are any changes in Premium Class;

2. If any increases or decreases are made in the Specified Amount;

3. If any partial surrenders are made;

4. If there are any Death Benefit Option changes;

5. If there are any rider additions or deletions; or

6. If the value of the CG Account is ever less than or equal to zero after the second policy anniversary.

After the second policy anniversary, We will notify You In Writing if the value of the CG Account is less than or equal to zero on a Monthly Deduction Day. You will have 30 days to pay an amount equal to the negative balance, if any, plus two CG Monthly Deductions plus applicable Premium Expense Charges for the CG Account. If We do not receive the payment within 30 days, this option terminates. This 30 day notice will be sent to You at Your last known address.

**Continuation Guarantee Accounts - Policy Loans.** When a policy loan is made, the amount of the loan will be deducted from the CG Accounts in the following order:

1. From CG3 until it is reduced to zero; then

2. From CG2 until it is reduced to zero; then

3. From CG1 until it is reduced to zero; and then

4. Deductions will then be applied to CG3 which will result in a value that is less than zero.

Interest credited to amounts offset by policy loans, and loan repayments will be applied to CG1, CG2, and CG3 in the same order as premium payments.

## POLICY LOANS

You may borrow from Us at any time while this policy is in force, an amount which is equal to or less than the policy's loan value. The loan value will be the Cash Value less:

1. Any prior outstanding loan; and

2. Interest on the amount to be borrowed to the next policy anniversary.

**Loan Interest.** Except for Preferred Loans, the Annual Policy Loan Interest Rate is 3.85%. On each policy anniversary, loan interest for the next year is due in advance. Interest not paid when due will be added to the loan.

## POLICY LOANS (Cont'd)

**How You May Repay a Policy Loan.** You may repay all or part of a policy loan at any time, except that:

1. Repayment may be made only while this policy is in force and prior to the death of the Insured; and,

2. A partial repayment must be at least $10.00.

Except as provided in the Grace Period provision, this policy will lapse at any time Your policy loan exceeds the Cash Value. However, at least 31 days prior notice must be mailed by Us to Your last known address and to the assignee of record, if any.

**We Can Delay Payment.** We can delay lending You money for up to 6 months, or the period allowed by law, whichever is less. However, We cannot delay lending You money if the amount is to be used to pay a premium to Us.

**Obtaining a Loan.** You may obtain a policy loan by Written request and assignment of the policy as sole security for the loan.

**Preferred Loans.** A "Preferred Loan" is a policy loan that is made at a net cost to the Owner that is less than the net cost of other policy loans. By

"net cost" We mean the amount of interest charged for the loan less interest credited to the amount of the Accumulation Value offset by a loan. Starting on the tenth policy anniversary, this policy will be eligible for "Preferred Loans" subject to the following guidelines:

1. The maximum amount of the loan value eligible for Preferred Loans during a policy year is restricted to policy earnings, defined as:

    (a) The Cash Surrender Value at the beginning of the policy year; less

    (b) The sum of premiums paid in excess of partial surrenders since the Date of Issue.

2. When a Preferred Loan is made, loan interest to the next policy anniversary will accrue daily at an annual effective rate of not less than 2.91% nor more than 3.15%. (This is equivalent to an annual effective rate of not less than 3.0% nor more than 3.25% respectively, paid in arrears.)

## BENEFICIARY AND PROCEEDS

**Beneficiary.** The Beneficiary as named in the application, or later changed by You, will receive the proceeds upon the death of the Insured. Unless You have stated otherwise, proceeds will be paid as follows:

1. If any Beneficiary dies before the Insured, that Beneficiary's interest will pass to any other Beneficiaries according to their respective interests.

2. If no Beneficiary survives the Insured, proceeds will be paid to You, as Owner, if You are then living; otherwise proceeds will be paid to Your estate.

**Common Disaster.** If We cannot determine whether a Beneficiary or the Insured died first in a common disaster, We will assume that the Beneficiary died first. Proceeds will be paid on this basis unless an endorsement to this policy provides otherwise.



## BENEFICIARY AND PROCEEDS (Cont'd)

**Proceeds.** Proceeds means the amount payable on:

1.  The Maturity Date;

2.  Exercise of the full surrender benefit; or

3.  The Insured's death.

The proceeds on the Maturity Date will be the Cash Surrender Value. The proceeds on the Insured's death will be the Death Benefit Amount less any outstanding policy loan.

All proceeds and partial surrender benefits are subject to the provisions of the Payment Options section and the other provisions of this policy.

## CHANGE OF OWNERSHIP OR BENEFICIARY

You may change the Owner or the Beneficiary at any time during the lifetime of the Insured unless the previous designation provides otherwise. To do so, send a Written request to Our Home Office. The change will go into effect when We have recorded the change. However, after the change is recorded, it will be deemed effective as of the date of Your Written request for change. The change will be subject to any payment made or action taken by Us before the request is recorded.

## PAYMENT OPTIONS

Instead of being paid in one sum, all or part of the proceeds may be applied under any of the Payment Options described below. In addition to these options, other methods of payment may be chosen with Our consent.

**Payment Contract.** When proceeds become payable under a Payment Option, a Payment Contract will be issued to each payee. The Payment Contract will state the rights and benefits of the payee. It will also name those who are to receive any balance unpaid at the death of the payee.

**Election of Options.** The Owner may elect or change any Payment Option while the Insured is living, subject to the provisions of this policy. This election or change must be In Writing. Within 60 days after the Insured's death, a payee entitled to proceeds in one sum may elect to receive proceeds under any option (subject to the limitations stated in the "Availability of Options" provision).

**Option 1. Payments for a Specified Period:** Equal monthly payments will be made for a specified period. The Option 1 Table in this policy shows the monthly income for each $1,000 of proceeds applied.

**Option 2. Payments of a Specified Amount:** Equal monthly payments of a specified amount will be made. Each payment must be at least $60 a year for each $1,000 of proceeds applied. Payments will continue until the amount applied, with interest, has been paid in full.

**Option 3. Monthly Payments for Life with Period Certain:** Equal monthly payments will be made for a specified period, and will continue after that period for as long as the payee lives. The specified period may be 10, 15 or 20 years. The Option 3 Table in this policy shows the monthly income for each $1,000 of proceeds applied. If issued on a Sex Distinct basis, tables are based on the Annuity 2000 Male or Female Tables adjusted by projection scale G (adjusted by 50% of projection scale G for females and 100% of projection scale G for males) for 20 years, with interest at the rate of 2% per year. If issued on a Gender Neutral basis, tables are based on the Annuity 2000 Male and Female Tables adjusted by projection scale G (adjusted by 50% of projection scale G for females and 100% of projection scale G for males) for 20 years, with Gender Neutral rates based on 60% female and 40% male, and interest at the rate of 2% per year.

D4337

## PAYMENT OPTIONS (Cont'd)

At the time payments are to begin under this option, the payee may choose one of the following:

1. Monthly payments based on the Option 3 Table; or

2. Monthly payments equal to a monthly annuity based on Our single premium immediate annuity rates then in use.

**Option 4. Proceeds Left at Interest:** Proceeds may be left on deposit with Us for any period up to 30 years. Interest earned on the proceeds may be:

1. Left on deposit to accumulate at the rate of 2% compounded annually; or

2. Paid in installments at the rate for each $1,000 of proceeds of $20 annually, $9.95 semiannually, $4.96 quarterly or $1.65 monthly.

Upon the death of the payee, or at the end of the specified period, any balance left on deposit will be paid in a lump sum or under Options 1, 2 or 3.

**Interest Rates.** The guaranteed rate of interest for proceeds held under Payment Options 1, 2, 3 and 4 is 2% compounded annually. We may credit interest at a higher rate. The amount of any increase will be determined by Us.

**Payments.** The first payment under Options 1, 2 and 3 will be made when the claim for settlement has been approved. Payments after the first will be made according to the manner of payment chosen. Interest under Option 4 will be credited from the date of death and paid or added to the proceeds as provided in the Payment Contract.

**Availability of Options.** If the proposed payee is not a natural person, payment options may be chosen only with Our consent.

If this policy is assigned, We will have the right to pay the assignee in one sum the amount to which the assignee is entitled. Any balance will be applied according to the option chosen.

The amount to be applied under any one option must be at least $2,000. The payment elected under any one option must be at least $20. If the total policy proceeds are less than $2,000 payment will be made in one lump sum.

**Evidence That Payee is Alive.** Before making any payment under a Payment Option, We may ask for proof that the payee is alive. If proof is requested, no payment will be made or considered due until We receive proof.

**Death of a Payee.** If a payee dies, any unpaid balance will be paid as stated in the Payment Contract. If there is no surviving payee named in the Payment Contract, We will pay the estate of the payee:

1. Under Options 1 and 3: The value of the remaining payments for the specified period as of the date We receive Written notification of death, discounted at the rate of interest used in determining the amount of the monthly payment.

2. Under Options 2 and 4, the balance of any proceeds remaining unpaid with accrued interest, if any.

**Withdrawal of Proceeds Under Options 1 or 2.** If provided in the Payment Contract, a payee will have the right to withdraw the entire unpaid balance under Options 1 or 2. Under Option 1, the amount will be the value of the remaining payments for the specified period discounted at the rate of interest used in determining monthly income. Under Option 2, the amount will be the entire unpaid balance.

**Withdrawal of Proceeds Under Option 4.** A payee will have the right to withdraw proceeds left under Option 4 subject to the following rules:

1. The amount to be withdrawn must be $500 or more;

04337                         Page 17

## PAYMENT OPTIONS (Cont'd)

2. A partial withdrawal must leave a balance on deposit of $1,000 or more.

**Withdrawals May Be Deferred.** We may defer payment of any withdrawal for up to 6 months from the date We receive a withdrawal request.

**Assignment.** Payment Contracts may not be assigned.

**Change in Payment.** The right to make any change in payment is available only if the Payment Contract provides for a change in payment.

**Claims of Creditors.** To the extent permitted by law, proceeds will not be subject to any claims of a Beneficiary's creditors.

## GENERAL PROVISIONS

**Assigning Your Policy.** During the lifetime of the Insured, You may assign this policy as security for an obligation. We will not be bound by an assignment unless it is received In Writing at Our Home Office. Two copies of the assignment must be submitted. We will retain one copy and return the other. We will not be responsible for the validity of any assignment.

**Incontestability.** We rely on the statements made in the application for the policy and applications for any reinstatements or increases in Specified Amount. These statements, in the absence of fraud, are considered representations and not warranties. No statement may be used in defense of a claim under the policy unless it is in such applications.

Except as stated below, We cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the Date of Issue.

Exceptions: We cannot contest any claim related to an increase in Specified Amount after such increase has been in effect during the Insured's lifetime for 2 years.

If this policy is reinstated, We cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the date of reinstatement.

We can contest a reinstatement or an increase in Specified Amount only on the basis of the information furnished in the application for such reinstatement or increase.

This 2-year limitation does not apply to benefits provided by any Disability or Accidental Death Benefit rider, or to the nonpayment of premium.

**Suicide Exclusion.** If the Insured takes his or her own life, while sane or insane, within 2 years from the Date of Issue, We will limit the Death Benefit Proceeds to the premiums paid less any policy loans and less any partial cash surrenders paid.

If there are any increases in the Specified Amount (See the section entitled "Changing Your Insurance Policy") a new 2-year period shall apply to each increase beginning on the date of each increase. The Death Benefit Proceeds will be the costs of insurance associated with each increase.

When the laws of the state in which this policy is delivered require less than this 2-year period, the period will be as stated in such laws.

**Age or Gender Incorrectly Stated (Age Incorrectly Stated if Issued on a Gender Neutral Basis).** If the: (1) age or gender of the Insured (if this policy was issued on a Sex Distinct basis); or (2) age of the Insured (if this policy was issued on a Gender Neutral basis) has been misstated to Us, We will adjust the excess of the Death Benefit Amount over the Accumulation Value on the date of death to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate. By age, We mean age nearest birthday as of the Date of Issue.

04337

Page 18

DUPLICATE POLICY

## GENERAL PROVISIONS (Cont'd)

**Statutory Basis of Policy Values.** The Cash Values of the policy are not less than the minimum values required by the law of the state where this policy is delivered. The calculation of the Cash Values includes interest at the guaranteed annual interest rate shown on the Policy Schedule and a charge for the cost of insurance, as shown in the Table of Guaranteed Monthly Cost of Insurance Rates.

The calculation of minimum Cash Values, nonforfeiture benefits and Guaranteed Cost of Insurance rates are based on the Mortality Table shown on the Policy Schedule for the appropriate gender (if this policy was issued on a Sex Distinct basis) and age nearest birthday.

A detailed statement of the method of computing values has been filed with the state insurance department where required.

**No Dividends.** This policy will not pay dividends. It will not participate in any of Our surplus or earnings.

**Annual Report.** We will send You at least once a year, without charge, an annual report which shows the following:

1. Premiums paid;

2. Expense charges deducted;

3. Interest credited to Your Accumulation Value;

4. The cost of insurance deducted;

5. Partial surrender benefits paid to You;

6. The amount of any outstanding policy loan;

7. The current Cash Surrender and Accumulation Values.

**Illustrative Report.** At any time while this policy is in force, the Owner may request from Us an illustration of contract values for the future. The values will be based on both guaranteed and then current assumptions. A reasonable fee, not to exceed $50.00, may be charged for additional reports requested in a policy year.

**When This Policy Terminates.** This policy will terminate if:

1. You request that this policy be terminated;

2. The Insured dies;

3. The policy matures;

4. The Grace Period ends; and

    a. There is not sufficient Cash Surrender Value to cover a Monthly Deduction; and

    b. The necessary Monthly Guarantee Premiums to keep the policy in force have not been paid; and

    c. The CG Account value is less than zero.

**Reinstatement.** "Reinstating" means placing Your policy in force after it has terminated at the end of the grace period. We will reinstate this policy if We receive:

1. Your Written request within five years after the end of the Grace Period and before the Maturity Date; and

2. Evidence of insurability satisfactory to Us; and

04337                                Page 19



## GENERAL PROVISIONS (Cont'd)

3. Payment of enough premium to keep the policy in force for two months or, if less, an amount equal to all past due Monthly Guarantee Premiums; and

4. Payment or reinstatement of any indebtedness.

The reinstated policy will be in force from the Monthly Deduction Day on or following the date We approve the reinstatement application.

The original surrender charge schedule will apply to a reinstated policy. The Accumulation Value at the time of reinstatement will be:

1. The Surrender Charge deducted at the time of lapse (such charge not being greater than the Accumulation Value at the time of lapse before the Surrender Charge was applied); plus

2. The Net Premium paid at reinstatement; plus

3. Any loan repaid or reinstated; less

4. The Monthly Deduction for one month.

If a person other than the Insured is covered by an attached rider, coverage will be reinstated according to that rider.

**Reinstatement of the Continuation Guarantee Account.** The policy will only be eligible for reinstatement with the CG Account if:

1. The policy and the CG Account were in force until the date of lapse; and

2. The policy was not surrendered for its Cash Surrender Value; and

3. We receive application for reinstatement within 90 days following termination of the policy.

**Rights Reserved By Us.** Upon notice to You, this policy may be modified by Us, but only if such modification is necessary to make any changes as required by the Internal Revenue Code or by any other applicable law, regulation or interpretation in order to continue treatment of this policy as life insurance.

When required by law, We will obtain Your approval of changes and We will gain approval from any appropriate regulatory authority.

**Rates on Policy Anniversary Nearest Insured's 18th Birthday (For Insured's age 17 or Less on Date of Issue).** If the Insured's age, nearest birthday, is 17 or less on the Date of Issue of this policy, Tobacco rates will be used starting on the policy anniversary nearest the Insured's 18th birthday, except as follows. Prior to the anniversary nearest the Insured's 18th birthday, a Written statement, signed by the Insured, may be submitted to the Company requesting that Non-Tobacco rates be made effective. The statement must include the date the Insured last used tobacco, or state that the Insured has never used tobacco, whichever applies. If the request is approved, Non-Tobacco rates will be made effective on the policy anniversary nearest the Insured's 18th birthday. Otherwise, Tobacco rates will apply. We will send a notice to the Owner at least 30 days prior to the policy anniversary nearest the Insured's 18th birthday that a request for Non-Tobacco rates may be submitted.

**Option to Extend Coverage.** You may elect to extend the Maturity Date stated on the Schedule Page (Maturity Date), as follows:

> If the Insured is living on the Maturity Date, coverage will be continued until the date of death of the Insured.

To elect this option, You must submit a Written request to the Company on a form acceptable to Us, at least 30 days prior to the original Maturity Date.

04337

Page 20

Starting on the original Maturity Date:

1. The Death Benefit Amount for the base policy will be equal to the base policy Death Benefit Amount in effect on the day prior to the Maturity Date, and if based all, or in part, on the Accumulation Value, will be adjusted by future changes in the Accumulation Value. The Death Benefit Amount will never be less than the Accumulation Value;

2. Unless otherwise stated in a rider attached to this policy, coverage under any riders attached to this policy will not be extended;

3. No Monthly Deductions will be made;

4. New premium payments will not be accepted;

5. Interest on policy loans will continue to accrue in the same manner as stated in the Policy Loans provisions and You may repay all or part of a loan at any time as stated in the Policy Loans provisions; and

6. The Accumulation Value will continue to be determined as stated in this policy, subject to item 3 above.

After this option is selected, it may not be revoked.

This policy may be subject to tax consequences when continued beyond the Maturity Date. It may not qualify as "life insurance" under the Internal Revenue Code after age 100. You should consult Your tax advisor.

04337

**Page 21**

# TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
## PER $1,000 OF NET AMOUNT AT RISK

| ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE | ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE |
|---|---|---|---|---|---|
| 18 | $0.13 | $0.08 | 60 | $ 1.06 | $ 0.71 |
| 19 | .14 | .08 | 61 | 1.17 | .76 |
| 20 | .14 | .08 | 62 | 1.29 | .83 |
| 21 | .13 | .08 | 63 | 1.43 | .92 |
| 22 | .13 | .08 | 64 | 1.60 | 1.02 |
| 23 | .13 | .08 | | | |
| 24 | .13 | .09 | 65 | 1.78 | 1.13 |
| | | | 66 | 1.97 | 1.25 |
| 25 | .12 | .09 | 67 | 2.18 | 1.37 |
| 26 | .12 | .09 | 68 | 2.41 | 1.50 |
| 27 | .12 | .09 | 69 | 2.66 | 1.63 |
| 28 | .12 | .09 | | | |
| 29 | .12 | .10 | 70 | 2.94 | 1.78 |
| | | | 71 | 3.31 | 1.96 |
| 30 | .12 | .10 | 72 | 3.63 | 2.19 |
| 31 | .12 | .10 | 73 | 4.05 | 2.47 |
| 32 | .12 | .10 | 74 | 4.54 | 2.80 |
| 33 | .12 | .11 | | | |
| 34 | .13 | .11 | 75 | 5.08 | 3.17 |
| | | | 76 | 5.62 | 3.58 |
| 35 | .14 | .12 | 77 | 6.21 | 4.02 |
| 36 | .14 | .13 | 78 | 6.83 | 4.50 |
| 37 | .15 | .13 | 79 | 7.49 | 5.03 |
| 38 | .16 | .14 | | | |
| 39 | .17 | .16 | 80 | 8.22 | 5.62 |
| | | | 81 | 9.05 | 6.31 |
| 40 | .19 | .17 | 82 | 9.99 | 7.11 |
| 41 | .20 | .18 | 83 | 11.07 | 8.05 |
| 42 | .22 | .20 | 84 | 12.26 | 9.10 |
| 43 | .23 | .21 | | | |
| 44 | .25 | .23 | 85 | 13.55 | 10.26 |
| | | | 86 | 14.91 | 11.53 |
| 45 | .27 | .24 | 87 | 16.34 | 12.91 |
| 46 | .29 | .26 | 88 | 17.80 | 14.39 |
| 47 | .32 | .28 | 89 | 19.33 | 16.00 |
| 48 | .34 | .30 | | | |
| 49 | .37 | .32 | 90 | 20.94 | 17.75 |
| | | | 91 | 22.66 | 19.68 |
| 50 | .41 | .34 | 92 | 24.57 | 21.86 |
| 51 | .44 | .37 | 93 | 26.76 | 24.42 |
| 52 | .48 | .40 | 94 | 29.63 | 27.67 |
| 53 | .53 | .43 | | | |
| 54 | .59 | .47 | 95 | 33.93 | 32.32 |
| | | | 96 | 41.27 | 40.04 |
| 55 | .65 | .51 | 97 | 56.03 | 55.15 |
| 56 | .72 | .55 | 98 | 83.33 | 83.33 |
| 57 | .79 | .58 | 99 | 83.33 | 83.33 |
| 58 | .87 | .62 | | | |
| 59 | .96 | .66 | | | |

The rates shown above represent the guaranteed (maximum) monthly cost of insurance for each $1,000 of net amount at risk. If this policy has been issued in a special (rated) premium class, the guaranteed monthly cost will be calculated as shown on the Policy Schedule.

04337

# TABLE OF SURRENDER CHARGES PER $1,000 OF BASE COVERAGE

The following charges apply to each $1,000 of initial Base Coverage surrendered during the Surrender Charge Period. The charges also apply to each $1,000 of increase in Base Coverage surrendered during the Surrender Charge Period of each increase. The word "surrender" as used in this provision means Full Surrender, or a reduction in Base Coverage at the request of the Owner, or due to a partial surrender. The charge for the surrender of all or any portion of the initial Base Coverage will be equal to the rate shown below for the age at issue and the year of surrender, multiplied by the number of thousands of initial Base Coverage being surrendered. The charges for surrender of all or any portion of any increase in Base Coverage will be equal to the rates shown below for the age at issue of such increase and year of surrender, multiplied by the number of thousands of such increase being surrendered. In addition, there will be a charge for each partial surrender as described in the Partial Surrender provision.

**Policy Years**

| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 12.00 | 11.00 | 9.00 | 7.00 | 7.00 | 7.00 | 6.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 19 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 12.00 | 11.00 | 8.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 20 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 12.00 | 11.00 | 10.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 21 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 12.00 | 11.00 | 10.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 22 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 11.00 | 10.00 | 8.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 23 | 16.00 | 16.00 | 15.00 | 15.00 | 14.00 | 13.00 | 12.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 24 | 16.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 25 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 26 | 15.00 | 16.00 | 16.00 | 15.00 | 14.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 27 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 28 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 14.00 | 12.00 | 10.00 | 9.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 29 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 16.00 | 14.00 | 12.00 | 11.00 | 9.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 30 | 16.00 | 16.00 | 16.00 | 16.00 | 18.00 | 16.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 31 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 16.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 32 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 18.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 8.00 | 8.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 33 | 17.00 | 17.00 | 17.00 | 17.00 | 17.00 | 18.00 | 15.00 | 13.00 | 11.00 | 10.00 | 9.00 | 8.00 | 8.00 | 6.00 | 6.00 | 4.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 34 | 18.00 | 18.00 | 18.00 | 18.00 | 17.00 | 18.00 | 15.00 | 13.00 | 11.00 | 10.00 | 10.00 | 8.00 | 8.00 | 6.00 | 6.00 | 4.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 35 | 18.00 | 18.00 | 18.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 10.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 36 | 19.00 | 19.00 | 19.00 | 19.00 | 18.00 | 18.00 | 16.00 | 14.00 | 12.00 | 11.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 37 | 19.00 | 19.00 | 19.00 | 19.00 | 18.00 | 17.00 | 16.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 6.00 | 5.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 38 | 20.00 | 19.00 | 19.00 | 19.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 12.00 | 10.00 | 9.00 | 8.00 | 7.00 | 5.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 39 | 20.00 | 20.00 | 20.00 | 20.00 | 19.00 | 18.00 | 17.00 | 16.00 | 14.00 | 13.00 | 11.00 | 10.00 | 8.00 | 7.00 | 5.00 | 5.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 40 | 21.00 | 21.00 | 21.00 | 21.00 | 20.00 | 19.00 | 18.00 | 16.00 | 15.00 | 14.00 | 12.00 | 11.00 | 9.00 | 8.00 | 7.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 41 | 22.00 | 22.00 | 22.00 | 22.00 | 21.00 | 20.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 10.00 | 8.00 | 7.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 42 | 23.00 | 23.00 | 23.00 | 23.00 | 22.00 | 21.00 | 19.00 | 18.00 | 17.00 | 15.00 | 14.00 | 12.00 | 11.00 | 8.00 | 7.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 43 | 23.00 | 23.00 | 23.00 | 23.00 | 23.00 | 22.00 | 20.00 | 19.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 9.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 44 | 24.00 | 24.00 | 24.00 | 24.00 | 24.00 | 23.00 | 21.00 | 20.00 | 18.00 | 16.00 | 16.00 | 14.00 | 12.00 | 9.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 45 | 25.00 | 25.00 | 25.00 | 24.00 | 23.00 | 22.00 | 20.00 | 18.00 | 17.00 | 15.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 46 | 26.00 | 26.00 | 26.00 | 24.00 | 24.00 | 23.00 | 21.00 | 19.00 | 18.00 | 16.00 | 15.00 | 13.00 | 13.00 | 11.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 47 | 27.00 | 27.00 | 26.00 | 26.00 | 25.00 | 23.00 | 22.00 | 20.00 | 19.00 | 17.00 | 16.00 | 14.00 | 13.00 | 11.00 | 9.00 | 7.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 48 | 28.00 | 28.00 | 27.00 | 27.00 | 25.00 | 24.00 | 23.00 | 21.00 | 20.00 | 18.00 | 17.00 | 15.00 | 14.00 | 12.00 | 9.00 | 7.00 | 5.00 | 2.00 | 1.00 | 0.00 |
| 49 | 28.00 | 28.00 | 28.00 | 28.00 | 26.00 | 25.00 | 24.00 | 22.00 | 21.00 | 19.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 7.00 | 5.00 | 2.00 | 1.00 | 0.00 |

04337

M-NS

# TABLE OF SURRENDER CHARGES PER $1,000 OF BASE COVERAGE

**Policy Years**

| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 50 | 29.00 | 29.00 | 29.00 | 28.00 | 27.00 | 26.00 | 24.00 | 23.00 | 21.00 | 20.00 | 18.00 | 17.00 | 15.00 | 13.00 | 10.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 51 | 30.00 | 30.00 | 30.00 | 29.00 | 28.00 | 27.00 | 25.00 | 24.00 | 22.00 | 21.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 52 | 31.00 | 31.00 | 30.00 | 31.00 | 30.00 | 28.00 | 26.00 | 25.00 | 23.00 | 21.00 | 20.00 | 18.00 | 16.00 | 14.00 | 11.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 53 | 32.00 | 32.00 | 32.00 | 32.00 | 30.00 | 29.00 | 27.00 | 25.00 | 24.00 | 22.00 | 20.00 | 19.00 | 17.00 | 14.00 | 11.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 54 | 33.00 | 33.00 | 33.00 | 32.00 | 32.00 | 30.00 | 28.00 | 27.00 | 25.00 | 23.00 | 22.00 | 19.00 | 17.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 55 | 34.00 | 34.00 | 34.00 | 34.00 | 33.00 | 31.00 | 30.00 | 28.00 | 26.00 | 24.00 | 23.00 | 20.00 | 18.00 | 15.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 56 | 35.00 | 35.00 | 35.00 | 35.00 | 34.00 | 33.00 | 31.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 18.00 | 16.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 57 | 36.00 | 36.00 | 36.00 | 36.00 | 34.00 | 33.00 | 31.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 19.00 | 16.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 58 | 37.00 | 37.00 | 37.00 | 36.00 | 34.00 | 32.00 | 31.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 19.00 | 16.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 59 | 38.00 | 38.00 | 37.00 | 35.00 | 34.00 | 32.00 | 30.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 18.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 60 | 39.00 | 38.00 | 37.00 | 35.00 | 33.00 | 32.00 | 30.00 | 28.00 | 26.00 | 26.00 | 23.00 | 21.00 | 19.00 | 16.00 | 13.00 | 9.00 | 6.00 | 3.00 | 0.00 | 0.00 |
| 61 | 39.00 | 38.00 | 37.00 | 35.00 | 33.00 | 32.00 | 30.00 | 28.00 | 25.00 | 24.00 | 22.00 | 20.00 | 18.00 | 16.00 | 12.00 | 9.00 | 6.00 | 3.00 | 0.00 | 0.00 |
| 62 | 39.00 | 37.00 | 37.00 | 34.00 | 32.00 | 30.00 | 29.00 | 27.00 | 26.00 | 23.00 | 22.00 | 19.00 | 18.00 | 16.00 | 12.00 | 8.00 | 5.00 | 3.00 | 0.00 | 0.00 |
| 63 | 38.00 | 36.00 | 36.00 | 33.00 | 31.00 | 29.00 | 28.00 | 26.00 | 24.00 | 23.00 | 22.00 | 19.00 | 17.00 | 14.00 | 12.00 | 9.00 | 6.00 | 2.00 | 0.00 | 0.00 |
| 64 | 38.00 | 36.00 | 35.00 | 33.00 | 31.00 | 30.00 | 28.00 | 26.00 | 24.00 | 23.00 | 22.00 | 18.00 | 16.00 | 13.00 | 12.00 | 9.00 | 6.00 | 1.00 | 0.00 | 0.00 |
| 65 | 37.00 | 36.00 | 34.00 | 33.00 | 31.00 | 30.00 | 28.00 | 26.00 | 25.00 | 23.00 | 21.00 | 20.00 | 18.00 | 16.00 | 13.00 | 9.00 | 6.00 | 3.00 | 0.00 | 0.00 |
| 66 | 37.00 | 36.00 | 34.00 | 32.00 | 30.00 | 29.00 | 27.00 | 25.00 | 24.00 | 23.00 | 21.00 | 19.00 | 17.00 | 14.00 | 11.00 | 9.00 | 6.00 | 2.00 | 0.00 | 0.00 |
| 67 | 36.00 | 35.00 | 33.00 | 32.00 | 30.00 | 28.00 | 26.00 | 24.00 | 22.00 | 22.00 | 20.00 | 18.00 | 16.00 | 13.00 | 11.00 | 8.00 | 5.00 | 2.00 | 0.00 | 0.00 |
| 68 | 36.00 | 35.00 | 33.00 | 31.00 | 29.00 | 28.00 | 26.00 | 23.00 | 21.00 | 20.00 | 20.00 | 17.00 | 14.00 | 12.00 | 10.00 | 7.00 | 4.00 | 1.00 | 0.00 | 0.00 |
| 69 | 35.00 | 33.00 | 32.00 | 30.00 | 29.00 | 27.00 | 24.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 7.00 | 6.00 | 5.00 | 1.00 | 0.00 | 0.00 |
| 70 | 34.00 | 33.00 | 31.00 | 30.00 | 28.00 | 27.00 | 25.00 | 23.00 | 23.00 | 21.00 | 19.00 | 17.00 | 16.00 | 13.00 | 10.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 71 | 34.00 | 32.00 | 32.00 | 30.00 | 28.00 | 26.00 | 25.00 | 22.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 13.00 | 11.00 | 6.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 72 | 33.00 | 32.00 | 31.00 | 27.00 | 26.00 | 24.00 | 23.00 | 21.00 | 21.00 | 19.00 | 17.00 | 14.00 | 13.00 | 11.00 | 9.00 | 6.00 | 3.00 | 0.00 | 0.00 | 0.00 |
| 73 | 33.00 | 31.00 | 30.00 | 26.00 | 24.00 | 23.00 | 21.00 | 19.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 9.00 | 7.00 | 5.00 | 3.00 | 0.00 | 0.00 | 0.00 |
| 74 | 32.00 | 31.00 | 29.00 | 26.00 | 24.00 | 23.00 | 20.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 4.00 | 3.00 | 0.00 | 0.00 | 0.00 |
| 75 | 32.00 | 30.00 | 24.00 | 23.00 | 22.00 | 22.00 | 21.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 9.00 | 7.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 76 | 31.00 | 29.00 | 23.00 | 24.00 | 22.00 | 21.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 9.00 | 8.00 | 5.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 77 | 30.00 | 28.00 | 21.00 | 24.00 | 22.00 | 21.00 | 19.00 | 17.00 | 15.00 | 14.00 | 11.00 | 9.00 | 8.00 | 6.00 | 4.00 | 3.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 78 | 29.00 | 27.00 | 20.00 | 24.00 | 22.00 | 20.00 | 19.00 | 17.00 | 15.00 | 14.00 | 10.00 | 8.00 | 7.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 79 | 28.00 | 26.00 | 18.00 | 24.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 13.00 | 9.00 | 7.00 | 6.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 80 | 27.00 | 25.00 | 18.00 | 21.00 | 20.00 | 19.00 | 18.00 | 15.00 | 14.00 | 12.00 | 8.00 | 6.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 81 | 26.00 | 24.00 | 18.00 | 22.00 | 20.00 | 19.00 | 17.00 | 14.00 | 14.00 | 11.00 | 8.00 | 6.00 | 5.00 | 3.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 82 | 25.00 | 23.00 | 18.00 | 19.00 | 18.00 | 18.00 | 16.00 | 13.00 | 14.00 | 11.00 | 8.00 | 6.00 | 5.00 | 3.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 83 | 23.00 | 22.00 | 18.00 | 19.00 | 18.00 | 17.00 | 15.00 | 13.00 | 14.00 | 11.00 | 8.00 | 6.00 | 5.00 | 3.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 84 | 21.00 | 19.00 | 17.00 | 17.00 | 16.00 | 16.00 | 15.00 | 13.00 | 13.00 | 11.00 | 8.00 | 7.00 | 5.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 85 | 20.00 | 19.00 | 18.00 | 16.00 | 15.00 | 15.00 | 13.00 | 13.00 | 14.00 | 11.00 | 8.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 86 | 20.00 | 19.00 | 18.00 | 16.00 | 15.00 | 14.00 | 13.00 | 12.00 | 11.00 | 11.00 | 7.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 87 | 20.00 | 19.00 | 18.00 | 16.00 | 14.00 | 13.00 | 12.00 | 11.00 | 9.00 | 9.00 | 6.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 88 | 20.00 | 19.00 | 18.00 | 16.00 | 16.00 | 14.00 | 12.00 | 11.00 | 10.00 | 7.00 | 6.00 | 5.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 89 | 20.00 | 18.00 | 17.00 | 15.00 | 15.00 | 13.00 | 11.00 | 9.00 | 7.00 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 90 | 19.00 | 18.00 | 17.00 | 15.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

M-NS

04337

NOV 09 2005 17:54 FR NY LIFE IPS        718 486 4750 TO 915152245948,,,1 P.05

11/16/053:57
537090000836

 **AMERICAN GENERAL**

**Part A  Life Insurance Application**

**UM0045350L**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.
In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No
other company shown is responsible for such obligations or payments.

| Personal Information |
| --- |

**1. Primary Proposed Insured**

Name  DIANA SPIRA          Social Security # 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  Sex ☐ M ☒ F

Birthplace *(state, country)* Hungary      Date of Birth 7/13/1922      Age 83

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☒ no  If yes, date of last use _____

If yes, *type* and *quantity* of tobacco or nicotine products used _____

Driver's License No. NONE          State ___  U.S. Citizen ☒ yes ☐ no  If no, Date of Entry ___  Visa Type ___

Address 23 LENORE AVE.   City, State Monsey N.Y.   ZIP 10952

Home Phone (845-356-0328  Work Phone ( )      E-mail Address _____

Employer  Retired          Occupation _____  Length of Employment _____

Employer Address _____          City, State _____          ZIP _____

Duties  House Wife , GRAND mother

Personal Income $ _____  Household Income $ 600,000  Net Worth $ 13,000,000

**2. Other Proposed Insured**

Name _____          Social Security # _____  Sex ☐ M ☐ F

Birthplace *(state, country)* _____      Date of Birth _____      Age _____

Relationship to Primary Proposed Insured _____

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____

If yes, *type* and *quantity* of tobacco or nicotine products used _____

Driver's License No. _____          State ___  U.S. Citizen ☐ yes ☐ no  If no, Date of Entry ___  Visa Type ___

Address _____          City, State _____          ZIP _____

Home Phone ( )      Work Phone ( )      E-mail Address _____

Employer _____          Occupation _____  Length of Employment _____

Employer Address _____          City, State _____          ZIP _____

Duties _____

Personal Income $ _____  Household Income $ _____  Net Worth $ _____

**3. Child Rider** *(Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section.*
*Remember to complete Part B, sections 3–7, for all proposed insured children.)*

| Child Name | Sex | Birthplace *(state, country)* | Date of Birth |
| --- | --- | --- | --- |
|  | ☐ M ☐ F |  |  |
|  | ☐ M ☐ F |  |  |
|  | ☐ M ☐ F |  |  |

Page 1 of 7

AGLC100565-2003

NOV 09 2005 17:54 FR NY LIFE IPS        718 486 4750 TO 915152245948,,,1 P.06

11/16/ 053:57
-537090 000837

| Ownership |
| --- |

4. Owner   ☐ Primary Proposed Insured   ☐ Other Proposed Insured   ☒ Trust   ☐ Other than a Proposed Insured or Trust
   A. Complete if the proposed insured is not the owner (if contingent owner is required, use Remarks section.)

Name _____ Social Security or Tax ID # _____ Date of Birth _____

Address _____ City, State _____ ZIP _____

Home Phone ( ) _____ Relationship to Primary Proposed Insured _____

   B. Complete if owner is a trust (if trustee is premium payor, also complete section 14 D.) INSURANCE TRUSE
   Exact Name of Trust Diana SPIRA 2005 IRREVOCABLE LIFE  Trust Tax ID # 20-6714480
   Current Trustee(s) AaRON AZRYLEWITZ    Date of Trust NOV 1 2005

| Product Information |
| --- |

5. Product Name (if variable, complete appropriate supplement.) Contin UL
   Amount Applied For: Base Coverage $ 5,000,000    Supplemental Coverage (if applicable) $ _____
   Death Benefit Compliance Test Used (if applicable): ☐ Guideline Premium   ☐ Cash Value Accumulation
   Automatic Premium Loan (if applicable): ☐ Yes  ☐ No
   Premium Class Quoted _____
   Reason for Insurance  EState

6. Dividend Options (For participating policy only.)
   ☐ Cash   ☐ Premium Reduction   ☒ Paid-up Additions   ☐ Deposit Earning Interest   ☐ Other (Explain) _____

7. Death Benefit Options (For UL & VUL only.)  ☒ Option 1 - Level   ☐ Option 2 - Increasing   ☐ Option 3 - Level Plus Return of Premium

8. Riders   ☐ Waiver of Premium   ☐ Waiver of Monthly Deduction   ☐ Waiver of Monthly Guarantee Premium
   ☐ Maturity Extension Rider – Accumulation Value   ☐ Maturity Extension Rider – Death Benefit   ☐ Terminal Illness Rider
   ☐ Accidental Death Benefit $ _____   ☐ Other Insured $ _____   ☐ Child $ _____
   ☐ Spouse $ _____ Plan _____   ☐ Other Rider(s) _____

| Beneficiary |
| --- |

9. Primary   Name  TRUST    Relationship _____ % Share _____
              Name _____    Relationship _____ % Share _____

10. Contingent Name _____    Relationship _____ % Share _____
              Name _____    Relationship _____ % Share _____

11. Trust Information   Exact Name of Trust Diana SPIRA 2005 ILIT   Trust Tax ID # _____
              Current Trustee(s) AaRON AZRYLEWITZ    Date of Trust NoV 1 2005

12. Rider Beneficiaries  Spouse Rider _____   Child Rider _____

| Business Coverage |
| --- |

13. Business Details  (Complete only if applying for business coverage.)
   Does any proposed insured have an ownership interest in the business?  ☐ yes  ☐ no
   If yes, what is the percentage of ownership for the: Primary Proposed Insured _____ Other Proposed Insured _____
   If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered?  ☐ yes  ☐ no
   Describe any special circumstances. _____

| Premium |
| --- |

14. Premium Payment   ☒ Modal $ 356,000   ☐ Single $ _____   ☐ Additional Initial $ _____
   A. Frequency of modal premium:  ☒ Annual   ☐ Semi-annual   ☐ Quarterly   ☐ Monthly (Bank draft)
   B. Method:  ☒ Direct Billing   ☐ Bank Draft (Complete Bank Draft Authorization.)   ☐ List Bill: Number _____
              ☐ Other (Please explain.) _____
   C. Amount submitted with application $ _____
   D. Premium Payor (Complete if other than proposed insured.)
      Name Diana SPIRA ILIT  Social Security or Tax ID # 20-6714480  Home Phone ( ) _____
      Address c/o BEREN 1635 Tennyson St City, State DenVER Co.    ZIP 80204

AGLC100565-2003                                                        Page 2 of 7

NOV 09 2005 17:54 FR NY LIFE IPS        718 486 4750 TO 915152245948,,,1 P.07

11/16/053:57
3370900000838

| **Existing Coverage** |
|---|

**15. Other Life Insurance or Annuities** *(Indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*

Does any proposed insured have any existing or pending annuity or life insurance contracts?  ☒yes ☐no
*(If yes, indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*

Type: I = individual, b = business, g = group, p = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| Diana Spira | | New York Life | I | 1991 | 100,000 | ☐ yes | ☐ yes |
| Diana Spira | | New York Life | I | 1995 | 250,000 | ☐ yes | ☐ yes |
| Diana Spira | | New York Life | I | 1999 | 500,000 | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |

\* Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

| **Limited Temporary Life Insurance Eligibility** |
|---|

**16. Health and Age Questions** *(If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*

A. Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?   ☐ yes ☒ no

B. Is any proposed insured age 71 or above?   ☒ yes ☐ no

| **Nonmedical Questions** |
|---|

**17. Background Information** *(Complete questions A through F for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details specified after each question.)*

A. Do any proposed insureds intend to travel or reside outside of the United States or Canada within the next two years?   ☐ yes ☒ no
*(If yes, list proposed insured's name, country, date, length of stay and purpose.)* _____

B. In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?   ☐ yes ☒ no
*(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*

C. Have any proposed insureds:

1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?
*(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)*   ☒ yes ☐ no
Diana Spira, New York Life, Companionlife Insurance
Applyd looking for Best offer

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?
*(If yes, list proposed insured's name, date and reason.)*   ☐ yes ☒ no

D. Have any proposed insureds ever filed for bankruptcy?  *(If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)*   ☐ yes ☒ no

E. In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations? *(If yes, list proposed insured's name, date, state, license no. and specific violation.)*   ☐ yes ☒ no

F. Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charge pending against them? *(If yes, list proposed insured name, date, state and felony.)*   ☐ yes ☒ no

| **Remarks** |
|---|

**18. Details and Explanations** _____

AGLC100365-2003

NOV 09 2005 17:54 FR NY LIFE IPS                         718 486 4750 TO 915152245948,,,I P.08

11/16/ 053:57
55709U000839

| Authorization and Signatures |
|---|

American General Life Insurance Company, Houston, TX     The United States Life Insurance Company in the City of New York, New York, NY

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

**Authorization to Obtain and Disclose Information and Declaration**

I give my consent to all of the entities listed below to give to the Company, its legal representative, American General Life Companies (AGLC) (an affiliated service company), and affiliated insurers all information they have pertaining to: medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; or any other information for me, my spouse or my minor children. Other information could include items such as: personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records; or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report.  ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA). I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application. I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement – If eligible, I have received and accepted the LTLIA. Such insurance is available only if: (1) the full first modal premium is submitted with this application; and (2) only "no" answers have been given by any proposed insured to the Health and Age Questions.

Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

**Proposed Insured(s)/Owner Signature(s)**

Signed at (city, state) _____ Denver (on (date) 11/7/05

X _Diane Gina_                              X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)     Other Proposed Insured (if under age 15, signature of parent or guardian)

X _____
Owner (if other than proposed insured)

**Agent(s) Signature(s)**

I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

_David Gottdenger_                              _G5791R0207_
Writing Agent Name (please print)                 Writing Agent #

X _D. Gottree_                              X _____
Writing Agent Signature                          Countersigned (Licensed resident agent if state required)

| If the Company needs to contact the proposed insured(s), when would be the best time to call? | | | |
|---|---|---|---|
| Time | Day of the Week | Date | Phone # (     ) |

AGLC100989-2003                                              Page 4 of 7

**AIG    AMERICAN GENERAL**

**Part B  Life Insurance Application**
**New Jersey Version**

- ☐ American General Life Insurance Company, Houston, TX
- ☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

**1.  Primary Proposed Insured**

Name _Diana Serra_     Date of Birth _07/15/22_  Social Security # _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_

**2.  Other Proposed Insured**

Name _____  Date of Birth _____  Social Security # _____

**3.  Children** *(Provide name and date of birth for all children.)*

_____

_____

| Medical History |
|---|

**4.  Physician Information**

Name and address of each proposed insured's personal physician(s).  *(Write None if proposed insured(s) do not have one.)*

Primary Proposed Insured _Dr. Israel # 59 Suffern N.Y._

Other Proposed Insured _____

Child(ren) _____

Name of insured, date, reason, findings and treatment at last visit.

_2005 - Routine checkup_
_rent_

**5.  Height and Weight**

Primary Proposed Insured _5_ ft. _3_ in. _127_ lbs. Other Proposed Insured ___ ft. ___ in. ___ lbs.

Child Name _____  ___ ft. ___ in. ___ lbs. If less than 1 yr. old, weight at birth ___

Child Name _____  ___ ft. ___ in. ___ lbs. If less than 1 yr. old, weight at birth ___

Child Name _____  ___ ft. ___ in. ___ lbs. If less than 1 yr. old, weight at birth ___

Has any proposed insured had any weight change in excess of 10 lbs. in the past year? ☐ yes ☐ no If yes, complete:

Name _____  Loss ___ lbs.  Gain ___ lbs.  Reason _____

**6.  Family History**

| | Age if Living | Age at Death | Heart Disease? | | Cancer History? | |
|---|---|---|---|---|---|---|
| **Primary Proposed Insured** | | | | | | |
| Father | ___ | ___ | ☑ No ☐ Yes, age of onset ___ | | ☑ No ☐ Yes, age of onset ___ Type ___ | |
| Mother | ___ | ___ | ☑ No ☐ Yes, age of onset ___ | | ☑ No ☐ Yes, age of onset ___ Type ___ | |
| **Other Proposed Insured** | | | | | | |
| Father | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | | ☐ No ☐ Yes, age of onset ___ Type ___ | |
| Mother | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | | ☐ No ☐ Yes, age of onset ___ Type ___ | |

FULL RATE POLICY

AGLC 100398-NJ

Page 1 of 4

**7. Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

A. Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?  ☐ yes ☑ no

2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?  ☐ yes ☑ no

3) cancer, tumors, masses, cysts or other such abnormalities?  ☐ yes ☑ no

4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?  ☐ yes ☑ no

5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?  ☑ yes ☐ no

6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?  ☐ yes ☑ no

7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?  ☐ yes ☑ no

8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?  ☐ yes ☑ no

9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?  ☐ yes ☑ no

(If any question above is answered yes, explain.)

| Name of Proposed Insured | Details |
| --- | --- |

A.J. open cholecystectomy in 1990 for suspected cancer of the gall bladder. Pathology was found to be benign

B. Is any proposed insured currently taking any medication, treatment or therapy or under medical observation?  ☑ yes ☐ no
(If yes, explain.)

| Name of Proposed Insured | Details |
| --- | --- |

Zantac 150 mg

C. Has any proposed insured in the past three years had but not sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis?  ☐ yes ☑ no

2) any pain or discomfort in the chest or shortness of breath?  ☐ yes ☑ no

3) disorders of the stomach, intestines or rectum, or blood in the urine?  ☐ yes ☑ no

(If any question above is answered yes, explain.)

| Name of Proposed Insured | Details |
| --- | --- |

**Personal Health History (cont.)**

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D. Has any proposed insured ever:**

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?  ☐ yes ☑ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician?  ☐ yes ☑ no

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)?** *(If yes, explain.)*  ☐ yes ☐ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**F. In the past 10 years, has any proposed insured:**

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?  ☐ yes ☑ no

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs?  ☐ yes ☑ no

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed?  ☐ yes ☐ no

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition?  ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above?** *(If yes explain.)*  ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

AGLC 100585 NJ

Page 3 of 4

| Statements and Signatures |
| --- |

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Proposed Insured(s) Signature(s)**

Signed at (city, state) _Brooklyn  NY_    On (date) _12/1/05_

X _Diana Ajin_
Primary Proposed Insured (if under age 15, signature of parent or guardian)

X _____
Other Proposed Insured (if under age 15, signature of parent or guardian)

**Signature(s) of Interviewer(s)**

To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

Writing Agent Name (please print) _____    Writing Agent # _____

X _____    X _____
Writing Agent Signature    Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

Other Company Representative Name (please print) _____    Company _____

X _____
Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**

Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the _____ day of _Dec_, 20 _05_ at _____ ☐ am ☐ pm

Examiner's Address    **PORTAMEDIC**
METRO - NEW YORK 338-16

Examiner's Phone #    (   ) 917-577-1960

Examiner's Name    _Like Shaffer_

Examiner's Signature X    _Like Shaffer ms_

Paramed: Use company stamp below.



AMERICAN GENERAL

*Insurance Service Center for:*

**American General Life
Insurance Company**

June 5, 2007

DIANA SPIRA 2005 IRREV LIFE INS TRUST
PO BOX 609
MONSEY NY 10952-0609

Contract Number: UM0045350L
Insured: DIANA SPIRA
Owner: DIANA SPIRA 2005 IRREV LIFE INS TRUST

Dear DIANA SPIRA 2005 IRREV LIFE INS TRUST :

We received your request to update our records regarding the address on the above contract.
Our records have been updated as follows:

Insured:          DIANA SPIRA
                  PO BOX 609
                  MONSEY NY 10952-0609


Owner:            DIANA SPIRA 2005 IRREV LIFE INS TRUST
                  PO BOX 609
                  MONSEY NY 10952-0609


We appreciate the confidence you have shown in us and we thank you for your business.  Should you need more
information, please contact our Customer Service Center or your servicing representative:

DAVID GOTTDENGER
BROKERS CLEARING HOUSE LTD
4546 CORPORATE DR S
WEST DES MOINES IA 50266-5911


Sincerely,

Customer Service Center

Corr#: 06530586
0X0424 / 03GP48
CC: DAVID GOTTDENGER

**American General Life Insurance Company**
*Member of American International Group, Inc*
P.O. Box 4373 ▪ Houston, TX  77210-4373 ▪ 1-800-231-3655 ▪ Fax 713-831-3028 ▪ www.aigag.com

040

# AMERICAN GENERAL LIFE
### Insurance Company
#### A Stock Company

This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY. Adjustable Death Benefit is payable upon the Insured's death prior to the Maturity Date and while this policy is in force. Premium payments are flexible and payable to the Maturity Date. ACCUMULATION VALUES and CASH VALUES are flexible and will be based on the amount and frequency of premiums paid, and the amount of interest credited. Policy contains a current interest bonus. NONPARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS.

For Information, Service or to make a Complaint

Contact your Servicing Agent, or our Policyowner Service Department

**2727-A Allen Parkway**
**P.O. Box 1931**
**Houston, Texas 77251**
**1-800-231-3655**

04337

# EXHIBIT B

NOV 09 2005 17:55 FR NY LIFE IPS          718 486 4750 TO 915152245948,,,1 P.10

11/16/053:57
52700000088

**Financial Questionnaire**

# AIG. AMERICAN GENERAL

☐ **American General Life Insurance Company, Houston TX**
☐ **The United States Life Insurance Company in the City of New York, New York, NY**
☐ **AIG Life Insurance Company, Wilmington, DE**
*Member companies of American International Group, Inc.*

In this questionnaire, the "Company" refers to the insurance company whose name is checked above.

The insurance company shown above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

## Proposed Insured

*Please complete questions 1 through 4 for personal insurance or questions 1 through 11 if the insurance is for business purposes, then date and sign the questionnaire.*

Proposed insured **Diana Spira**          Date of birth **7/13/1922**  Social Security # **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**

1.  Your income (before income Tax):

| | Current fiscal year (Date  /  /  thru  /  / ) | Previous fiscal year |
|---|---|---|
| Salary or wages | $120,000 | |
| Bonuses and/or commissions | | |
| Net business or professional income (i.e., Gross income less business expenses, but not before personal income) | | |
| Other earned income (give details in "Remarks" below) | | |
| Unearned income (interest and dividends, net real estate income, etc.) give details in "Remarks" below | Interest, Real Estate income Divider | $480,000 |
| **TOTAL** | | |

2.  What is your approximate net worth, i.e., assets minus liabilities? (if necessary, give details in "Remarks" below)

| | Current fiscal year (Date  /  /  thru  /  / ) | Previous fiscal year |
|---|---|---|
| Personal Assets | 11,870,000 | |
| Business Assets | 1,600,000 | |
| Liabilities | 397,000 | |
| Net worth | 13,000,000 | |

3.  Estimated tax liabilities at death (include potential estate taxes, inheritance taxes and capital gains taxes, both federal and state)

**ESTATE TAXES + MORTGAGES**

4.  How was the need for this new amount of coverage determined?

**Estate Planning**

Remarks (questions 1-4)

AGLC0018-99 Rev0305                    Page · of 2

NOV 09 2005 17:55 FR NY LIFE IPS        718 486 4758 TO 915152245948,,,1 P.11

11/16/053:57
537090000881

5: Purpose of business insurance
☐ Key Executive        ☐ Deferred Compensation     ☐ Buy-Sell Agreement/Stock Repurchase     ☐ Other

Other purpose — explain: .

6.  Is there a written buy/sell agreement in effect? (if yes, attach copy) ☐ Yes     ☑ No

    Is there a buy/sell agreement contemplated?        ☐ Yes     ☐ No

7.  Creditor: Name of lender        _____

    Is insurance requested by lender?        ☐ Yes     ☐ No

    Coverage amount required by creditor:

    Purpose of loan

    *(Use "Remarks" below for further details.)*

8.  Are other corporate officers or partners being insured?     ☐ Yes     ☐ No

    If yes, give details, if no, explain:

9.  What percentage of the business do you own? _____ %

10. Estimated fair market value of business: _____

    *(In "Remarks" state how this value was determined)*

11. Financial details of business:        Current fiscal year                Previous fiscal year
                                    (Date    /  /  thru  /  /  )

    A.  Total assets        _____     _____

    B.  Total liabilities    _____     _____

    C.  Gross sales or revenue _____     _____

    D.  Net income (before taxes) _____     _____

    Please submit a copy of the most recent balance sheet and income statement (year or quarter).

    Remarks (questions 5 - 11)

**Agreement:** All of the above answers are full, complete and true to the best of my knowledge and belief, and are a continuation of, and form a part of, the application for insurance.

X Owner ✓ _____        Date 11/7/05

Signed at (City, State)  Denver  Co.

X Witness _____        Date 11/7/05

X Proposed insured ✱ _____        Date 11/7/05

*(If under age 15, signature of parent or guardian)*

AGLC0018-09 Rev0905                Page 2 of 2

# EXHIBIT C

# AMERICAN GENERAL LIFE

### Insurance Company
### A Stock Company

Home Office:
Houston, Texas

2727–A Allen Parkway
P. O. Box 1931
Houston, Texas 77251

(713) 522-1111

POLICY NUMBER:

UM0030848L

INSURED: DIANA SPIRA

**WE WILL PAY THE DEATH BENEFIT PROCEEDS** to the Beneficiary if the Insured dies prior to the Maturity Date and while this policy is in force. Payment will be made after We receive due proof of the Insured's death, and will be subject to the terms of this policy.

**WE WILL PAY THE CASH SURRENDER VALUE** of this policy to the Owner on the Maturity Date if the Insured is living on that date and if this policy is in force.

The consideration for this contract is the application and payment of the first premium. The first premium must be paid on or before delivery of this policy.

This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY. Adjustable Death Benefit is payable upon the Insured's death prior to the Maturity Date and while this policy is in force. Premium payments are flexible. ACCUMULATION VALUES and CASH VALUES are flexible and will be based on the amount and frequency of premiums paid, and the amount of interest credited. Policy contains a current interest bonus. NONPARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS.

### NOTICE OF TWENTY DAY RIGHT TO EXAMINE POLICY

You may return this policy within twenty days after delivery if You are not satisfied with it for any reason. The policy may be returned to Us or to the agent through whom it was purchased. Upon surrender of the policy within the twenty day period, it will be void from the beginning, and We will refund any premium paid.

SIGNED AT THE HOME OFFICE ON THE DATE OF ISSUE.

*Elizabeth M. Tuck*
Secretary

*[signature]*
President

### FLEXIBLE PREMIUM ADJUSTABLE LIFE

### READ YOUR POLICY CAREFULLY

04337

# INDEX

| | |
|---|---|
| Accumulation Value | |
| On the Date of Issue | 7 |
| On Each Monthly Deduction Day | 7 |
| On Other than a Monthly Deduction Day | 7 |
| Annual Report | 19 |
| Beneficiary and Proceeds | 15 |
| Calculations–How We Calculate | |
| The Monthly Deduction | 8 |
| The Cost of Insurance–Basic Policy | 8 |
| Cash Value | 7 |
| Changing Your Insurance Policy | |
| Change of Ownership or Beneficiary | 16 |
| Changing the Death Benefit Option | 6 |
| Changing the Specified Amount | 6 |
| Continuation Guarantee Provisions | 11-14 |
| Contract | 4 |
| Cost of Insurance Rate Tables | 3B,3C,22 |
| Date of Issue | 3, 4 |
| Death Benefit and Death Benefit Options | 5 |

| | |
|---|---|
| Grace Period | 9 |
| Interest Rate - Accumulation Values | 9 |
| Loan Interest | 14 |
| Maturity Date | 3 |
| Monthly Administration Fee | 3, 8 |
| Monthly Guarantee Premium | 10 |
| Net Premium | 4 |
| Owner | 4 |
| Payment Options | 16-18 |
| Policy Loans | 7 |
| Policy Values Provision | 14-15 |
| Premium Payments | 7-11 |
| Reinstatement | 4 |
| Specified Amount | 19 |
| Suicide Exclusion | 3, 5 |
| Surrender, Full or Partial | 18 |
| Surrender Charge Provision | 10 |
| Surrender Charge Table | 8 |
| When This Policy Terminates | 26-27 or 26-28 |
| | 19 |

**Company Reference.** "We", "Our", "Us", or "Company" mean American General Life Insurance Company.

**"You", "Your."** The words "You" or "Your" mean the Owner of this policy.

**Home Office.** Our office at 2727-A Allen Parkway, Houston, Texas 77251; Mailing Address P. O. Box 1931, Houston, Texas 77251.

**Written, In Writing.** A written request or notice in acceptable form and content, which is signed and dated, and received at Our Home Office.

**Premium Class.** The Premium Class of this policy is shown on the Policy Schedule as one or a combination of the following terms:

**Preferred Plus.** The term "Preferred Plus" means the cost of insurance is based on the Insured being an exceptional mortality risk and a non-user of tobacco.

**Preferred.** The term "Preferred" means the cost of insurance is based on the Insured, being a better than average mortality risk.

**Standard.** The term "Standard" means the cost of insurance is based on the Insured being an average mortality risk.

**Tobacco.** The term "Tobacco" means the cost of insurance is based on the Insured being a user of tobacco.

**Non-Tobacco.** The term "Non-Tobacco" means the cost of insurance is based on the Insured being a non-user of tobacco.

**Juvenile.** The term "Juvenile" means the Insured's age, nearest birthday, was 17 or less on the Date of Issue. Cost of insurance rates stated in Juvenile policies for insurance ages 18 and above are rates for tobacco users. (Rates are not classified on the basis of the Insured being a user or non-user of tobacco at ages 0 through 17.)

Prior to the policy anniversary nearest the Insured's 18th birthday a request for Non-Tobacco rates may be submitted. See page 20, "Rates on Policy Anniversary Nearest Insured's 18th Birthday."

**Special.** The term "Special" means "Substandard" or "Rated". This means an extra amount is being charged due to the health, occupation or avocation of the Insured.

**NOTICE**
This Policy Is A Legal Contract Between
The Policy Owner And The Company.

04337

3/29/06 14:47P
579797004425

## POLICY SCHEDULE

| BASIC POLICY | MONTHLY COST | YEARS PAYABLE |
|---|---|---|
| ADJUSTABLE LIFE | SEE PAGE 22: | 16 |

ADDITIONAL BENEFITS PROVIDED BY RIDERS

   NONE

### SCHEDULE OF PREMIUMS

| | |
|---|---|
| PREMIUM CLASS: | STANDARD NON-TOBACCO |
| INITIAL PREMIUM: | $380,100.00 |
| PLANNED PERIODIC PREMIUM: | $380,100.00 PAYABLE ANNUALLY |
| DEDUCTION DAY: | 28TH DAY OF EACH MONTH |
| MINIMUM DEATH BENEFIT AMOUNT (AFTER A DECREASE IN SPECIFIED AMOUNT) | $100,000 |
| MONTHLY GUARANTEE PREMIUM: | $25,400.00 |
| MONTHLY EXPENSE CHARGE FOR FIRST 5 YEARS: | $8,827.30 |
| INTEREST RATE APPLIED TO AMOUNTS OFFSET BY POLICY LOANS | MINIMUM 3% MAXIMUM 4% |

| | ANNUAL EFFECTIVE | FACTOR |
|---|---|---|
| GUARANTEED INTEREST RATE: | 3.00% | 1.002466 |

| | | |
|---|---|---|
| DEATH BENEFIT COMPLIANCE TEST: | GUIDELINE PREMIUM | |
| | GUARANTEED | INITIAL |
| PREMIUM EXPENSE CHARGE PERCENTAGE: | 7.50% | 6.50% |
| MONTHLY ADMINISTRATION FEE: | $7.00 | $5.00 |

COVERAGE MAY EXPIRE PRIOR TO THE MATURITY DATE SHOWN WHERE EITHER NO
PREMIUMS ARE PAID FOLLOWING PAYMENT OF THE INITIAL PREMIUM, OR SUBSEQUENT
PREMIUMS ARE INSUFFICIENT TO CONTINUE COVERAGE TO SUCH DATE.

BACK SCAN

### POLICY DATA

| | |
|---|---|
| INSURED: DIANA SPIRA | POLICY NUMBER: UM0030846L |
| INSURANCE AGE: 84 | DATE OF ISSUE: MARCH 28, 2006 |
| BASE COVERAGE: $5,000,000 | DEATH BENEFIT OPTION: 1 |
| SUPPLEMENTAL COVERAGE: $0 | |
| INITIAL SPECIFIED AMOUNT: $5,000,000 | MATURITY DATE: MARCH 28, 2022 |

THIS IS A SEX DISTINCT POLICY

THIS IS A NEW JERSEY POLICY

PAGE 3

04337



## POLICY SCHEDULE CONTINUED – POLICY NUMBER UM0030846L

THE FOLLOWING ITEMS APPLY TO THE CONTINUATION GUARANTEE ONLY:

CG ACCOUNT INTEREST RATES:                          UNLOANED

    CG1
            POLICY YEARS 1-5                          4.62%
            THEREAFTER                                4.72%
    CG2
            POLICY YEARS 1-5                          3.87%
            THEREAFTER                                4.07%
    CG3
            ALL POLICY YEARS                          3.00%

CG GUARANTEED INTEREST RATE FACTOR:                       1.002466
CG MONTHLY EXPENSE CHARGE FOR FIRST 5 YEARS:              $8627.30
CG PREMIUM EXPENSE CHARGE PERCENTAGE:                     6.50%
CG MONTHLY ADMINISTRATION FEE:                           $5.00

CG ACCOUNT VALUES MAY BE ADJUSTED
    TO THE AGE 100 PREMIUM LEVEL:         (AFTER THE SECOND POLICY ANNIVERSARY)

3/29/06 4:47P
579797 00442T

## POLICY SCHEDULE CONTINUED - POLICY NUMBER UM0030846L

### TABLE A

#### TABLE OF MONTHLY CONTINUATION GUARANTEE COST OF INSURANCE RATES
#### PER $1,000 OF CONTINUATION GUARANTEE NET AMOUNT AT RISK

| POLICY YEAR | RATE 1 | RATE 2 | RATE 3 | POLICY YEAR | RATE 1 | RATE 2 | RATE 3 |
|---|---|---|---|---|---|---|---|
| 1 | 3.3195 | 3.2594 | 3.1779 | 9 | 4.9742 | 4.8689 | 4.7556 |
| 2 | 3.3656 | 3.3101 | 3.2273 | 10 | 6.3980 | 6.2743 | 6.1382 |
| 3 | 3.3835 | 3.3216 | 3.2385 | 11 | 7.9265 | 7.7878 | 7.6266 |
| 4 | 3.4011 | 3.3331 | 3.2498 | 12 | 9.0257 | 8.8938 | 8.7172 |
| 5 | 3.4188 | 3.3448 | 3.2612 | 13 | 10.1225 | 9.9720 | 9.7822 |
| 6 | 3.7730 | 3.6760 | 3.5842 | 14 | 11.0300 | 10.8744 | 10.6732 |
| 7 | 4.0705 | 3.9806 | 3.8811 | 15 | 12.9847 | 12.8226 | 12.6856 |
| 8 | 4.4643 | 4.3583 | 4.2482 | 16 | 16.1476 | 15.9893 | 15.7146 |

RATE 1 APPLIES TO THE AMOUNT OF CG NET AMOUNT AT RISK UP TO AND INCLUDING $250,000

RATE 2 APPLIES TO THE AMOUNT OF CG NET AMOUNT AT RISK IN EXCESS OF $250,000 UP TO AND INCLUDING $1,000,000

RATE 3 APPLIES TO THE AMOUNT OF CG NET AMOUNT AT RISK IN EXCESS OF $1,000,000

THE RATES SHOWN ABOVE REPRESENT THE MONTHLY CG COST OF INSURANCE FOR EACH $1,000 OF CG NET AMOUNT AT RISK. IF THIS POLICY HAS BEEN ISSUED IN A SPECIAL (RATED) PREMIUM CLASS, THE CG MONTHLY COST WILL BE CALCULATED AS SHOWN ON THE POLICY SCHEDULE.

04337                              PAGE 3B

## POLICY SCHEDULE
### TABLE B
### TABLE OF MONTHLY CONTINUATION GUARANTEE COST OF INSURANCE RATES
#### PER $1,000 OF CONTINUATION GUARANTEE NET AMOUNT AT RISK

| ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE | ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE |
|---|---|---|---|---|---|
| 18 | $0.1334 | $0.0792 | 60 | $ 1.0606 | $ 0.7124 |
| 19 | .1384 | .0817 | 61 | 1.1705 | .7871 |
| | | | 62 | 1.2958 | .8361 |
| 20 | .1401 | .0842 | 63 | 1.4392 | .9230 |
| 21 | .1392 | .0850 | 64 | 1.6015 | 1.0259 |
| 22 | .1367 | .0867 | | | |
| 23 | .1342 | .0875 | 65 | 1.7812 | 1.1375 |
| 24 | .1309 | .0900 | 66 | 1.9751 | 1.2577 |
| | | | 67 | 2.1857 | 1.3797 |
| 25 | .1267 | .0908 | 68 | 2.4124 | 1.5029 |
| 26 | .1234 | .0933 | 69 | 2.6604 | 1.6347 |
| 27 | .1217 | .0950 | | | |
| 28 | .1200 | .0975 | 70 | 2.9413 | 1.7872 |
| 29 | .1200 | .1000 | 71 | 3.3127 | 1.9699 |
| | | | 72 | 3.6309 | 2.1968 |
| 30 | .1200 | .1034 | 73 | 4.0583 | 2.4743 |
| 31 | .1225 | .1059 | 74 | 4.5412 | 2.8020 |
| 32 | .1251 | .1092 | | | |
| 33 | .1292 | .1125 | 75 | 5.0627 | 3.1745 |
| 34 | .1342 | .1184 | 76 | 5.6218 | 3.5855 |
| | | | 77 | 6.2138 | 4.0294 |
| 35 | .1409 | .1225 | 78 | 6.8332 | 4.5067 |
| 36 | .1476 | .1301 | 79 | 7.4961 | 5.0316 |
| 37 | .1568 | .1392 | | | |
| 38 | .1668 | .1493 | 80 | 8.2296 | 5.6271 |
| 39 | .1786 | .1610 | 81 | 9.0544 | 6.3150 |
| | | | 82 | 9.9970 | 7.1178 |
| 40 | .1910 | .1735 | 83 | 11.0733 | 8.0528 |
| 41 | .2061 | .1885 | 84 | 12.2671 | 9.1022 |
| 42 | .2211 | .2036 | | | |
| 43 | .2387 | .2186 | 85 | 13.5559 | 10.2687 |
| 44 | .2562 | .2336 | 86 | 14.9178 | 11.5352 |
| | | | 87 | 16.3441 | 12.9142 |
| 45 | .2771 | .2495 | 88 | 17.8084 | 14.3953 |
| 46 | .2997 | .2662 | 89 | 19.3328 | 16.0073 |
| 47 | .3240 | .2846 | | | |
| 48 | .3499 | .3047 | 90 | 20.9416 | 17.7560 |
| 49 | .3792 | .3256 | 91 | 22.6679 | 19.6851 |
| | | | 92 | 24.5767 | 21.8646 |
| 50 | .4102 | .3499 | 93 | 26.7640 | 24.4226 |
| 51 | .4471 | .3759 | 94 | 29.6373 | 27.6714 |
| 52 | .4898 | .4052 | | | |
| 53 | .5377 | .4395 | 95 | 33.9311 | 32.3221 |
| 54 | .5931 | .4747 | 96 | 41.2793 | 40.0467 |
| | | | 97 | 56.0398 | 55.1592 |
| 55 | .6544 | .5125 | 98 | 83.3333 | 83.3333 |
| 56 | .7225 | .5511 | 99 | 83.3333 | 83.3333 |
| 57 | .7949 | .5897 | | | |
| 58 | .8732 | .6267 | | | |
| 59 | .9618 | .6662 | | | |

The rates shown above represent the monthly CG cost of insurance for each $1,000 of CG net amount at risk. If this policy has been issued in a special (rated) premium class, the CG monthly cost will be calculated as shown on the Policy Schedule.

04337

Page 3C

NS

**Contract.** Your policy is a legal contract that You have entered into with Us. You have paid the first premium and have submitted an application, a copy of which is attached. In return, We promise to provide the insurance coverage described in this policy.

The entire contract consists of:

1. The basic policy;

2. The riders that add benefits to the basic policy, if any;

3. Endorsements, if any; and

4. The attached copy of Your application, and any amendments or supplemental applications.

**Date of Issue.** The Date of Issue of this policy is the date on which the first premium is due. The Date of Issue is also the date from which all policy years, anniversaries, and Monthly Deduction dates are determined.

**Owner.** The Owner is as stated in the application unless later changed. During the Insured's lifetime, the Owner may exercise every right the policy confers or We allow (subject to the rights of any assignee of record). You may have multiple Owners of the policy. In that case, the authorizations of all Owners are required for all policy changes. The Owner and the Insured may be the same person but do not have to be. If an Owner dies while the policy is in force and the Insured is living, ownership rights pass on to a successor Owner recorded in Our records, if any; otherwise ownership rights pass to the estate of the Owner.

## PREMIUM PAYMENTS

All premiums after the first are payable in advance. Premium payments are flexible. This means You may choose the amount and frequency of payments.

The actual amount and frequency of premium payments will affect the Cash Values and the amount and duration of insurance. Please refer to the Policy Values Provision for a detailed explanation.

**Planned Periodic Premiums.** The amount and frequency of the Planned Periodic Premiums You selected are shown on the Policy Schedule. You may request a change in the amount and frequency. We may limit the amount of any increase. (See "Maximum Premium").

**Unscheduled Additional Premiums.** You may pay additional premiums at any time before the Maturity Date shown on the Policy Schedule. We may limit the number and amount of additional premiums. (See "Maximum Premium" and "Maximum Net Amount at Risk").

**Maximum Premium.** We reserve the right to refund any premium that would cause this policy to fail to qualify as life insurance under the Death Benefit Compliance Test selected, and under applicable tax laws. The test selected is shown on the Policy Schedule.

**Maximum Net Amount at Risk.** We reserve the right to refund any premium that would cause

an immediate increase in the Net Amount at Risk unless the Insured is living and provides evidence of insurability satisfactory to Us. We may automatically effect a partial surrender or reduce the Death Benefit, both of which may have federal tax consequences, if the Net Amount at Risk exceeds Our limitations. (We determine the "Net Amount at Risk" as shown in the provision entitled "How We Calculate the Cost of Insurance for the Basic Policy").

**Where to Pay.** You may make Your payments to Us at Our Home Office or to an authorized agent. All premium checks must be made payable to the Company. A receipt signed by an officer of the Company will be furnished upon request.

**Premium Expense Charge.** The Premium Expense Charge is calculated by multiplying the premium paid by the Premium Expense Charge Percentage. The Premium Expense Charge Percentage is adjustable, but will never be more than the guaranteed Premium Expense Charge Percentage shown on the Policy Schedule.

**Net Premium.** The term Net Premium as used in this policy means "The premium paid, less the Premium Expense Charge" except as follows: No Premium Expense Charge will be deducted if the source of the premium is Cash Surrender Values applied from another policy issued by the Company. (We refer to this as an internal rollover).

04337

# DEATH BENEFIT AND DEATH BENEFIT OPTIONS

**Death Benefit Proceeds.** If the Insured dies prior to the Maturity Date and while this policy is in force, We will pay the Death Benefit Proceeds to the Beneficiary. The Death Benefit Proceeds will be subject to:

1. The Death Benefit Option in effect on the date of death; and

2. Any increases or decreases made to the Specified Amount. The Initial Specified Amount is shown on the Policy Schedule.

Guidelines for changing the Death Benefit Option or the Specified Amount will be found in the section entitled "Changing Your Insurance Policy."

Any premium received after the date of death will be refunded and will not be included in the Accumulation Value for purposes of calculating the Death Benefit Amount.

The Death Benefit Proceeds will be the Death Benefit Amount, after reversing any premium received after the date of death, less any outstanding policy loan and will be subject to the other provisions of the Beneficiary and Proceeds section.

**Death Benefit Compliance Test.** Death Benefit Compliance Tests are used to determine if a policy will qualify as life insurance under applicable tax laws. There are two compliance tests which may be used: The Guideline Premium Test and the Cash Value Accumulation Test. The test which You selected when this policy was issued is shown on the Policy Schedule. You cannot change Your election of the Death Benefit Compliance Test after the Date of Issue.

**Death Benefit Option.** The Death Benefit Option which You have chosen is shown on the Policy Schedule as either Option 1, 2 or 3.

**Option 1.** If You have chosen Option 1, the Death Benefit Amount will be the greater of:

1. The Specified Amount on the date of death; or

2. The Accumulation Value on the date of death multiplied by the applicable Death Benefit Corridor Rate.

**Option 2.** If You have chosen Option 2, the Death Benefit Amount will be the greater of:

1. The Specified Amount plus the Accumulation Value on the date of death; or

2. The Accumulation Value on the date of death multiplied by the applicable Death Benefit Corridor Rate.

**Option 3.** If You have chosen Option 3, the Death Benefit Amount will be the amount payable under Option 1 plus the sum of all premiums paid for this policy, including premiums for any riders, less any amounts waived by the Company under a waiver of monthly deduction benefit, except as follows:

Premium payments after a partial surrender will not increase the Death Benefit Amount until the sum of premiums paid from the date of the partial surrender exceeds the amount of the partial surrender.

Death Benefit Corridor Rates are shown in the table for the Death Benefit Compliance Test which You selected.

**Specified Amount.** The Specified Amount is the total of two types of coverage: Base Coverage and Supplemental Coverage. Base Coverage is subject to surrender charges and a five year Monthly Expense Charge, but Supplemental Coverage is not. If Supplemental Coverage is made a part of the Specified Amount, policy costs will be lower than if the same Specified Amount is issued without Supplemental Coverage. However, realizing the benefits of the Monthly Guarantee Premium provision will require a higher Monthly Guarantee Premium if Supplemental Coverage is included. The amounts of Base Coverage, Supplemental Coverage (if any) and Specified Amount are shown on the Policy Schedule.

04337

# CHANGING YOUR INSURANCE POLICY

You may request a change in the Specified Amount or Death Benefit Option at any time except that a decrease in the Specified Amount may not become effective prior to the end of the first policy year. Your request must be submitted to Our Home Office In Writing.

**Increasing the Specified Amount.** We will require an application and evidence of insurability satisfactory to Us for any increase in the Specified Amount. The proportion of Base to Supplemental Coverage following an increase may be in any proportion as long as Base Coverage is at least 10% of the total Specified Amount. An increase will be effective on the Monthly Deduction Day on or next following the date the application for increase is approved by Us. The effective date will appear in an endorsement to this policy.

**Decreasing the Specified Amount.** Any decrease will go into effect on the Monthly Deduction Day following the day We receive the request. The Death Benefit Amount remaining in effect after any decrease cannot be less than the greater of:

1. The Minimum Death Benefit Amount shown on the Policy Schedule; and

2. Any Death Benefit Amount required to qualify this policy as life insurance under applicable tax laws.

Any such decrease will be applied in the following order:

1. Against the Specified Amount provided by the most recent increase, with the decrease applying first to the entire Supplemental Coverage portion of such increase, if any, followed by the Base Coverage portion;

2. Against the next most recent increases successively, with the decrease of each prior increase applying first to the entire Supplemental Coverage portion of such increase, if any, followed by the Base Coverage portion;

3. Against the Specified Amount provided under the original application, with the decrease applying first to the entire Supplemental Coverage portion of such amount, if any, followed by the Base Coverage portion.

Any reduction in Base Coverage will be subject to any applicable Surrender Charges on a pro-rata basis with the Surrender Charge prior to the reduction in Base Coverage being reduced proportionately. However, if such charge is greater than the Accumulation Value, the Specified Amount decrease will not be allowed.

**Changing the Death Benefit Option.** You may request a change from Option 1 to Option 2, from Option 2 to Option 1, or from Option 3 to Option 1.

1. If You request a change from Option 1 to Option 2: The new Specified Amount will be the Specified Amount prior to the change, less the Accumulation Value as of the effective date of the change, but not less than zero. Any such decrease in Specified Amount will be subject to the same guidelines and restrictions as outlined in the Decreasing the Specified Amount provision.

2. If You request a change from Option 2 to Option 1: The new Specified Amount will be the Specified Amount prior to the change plus the Accumulation Value as of the effective date of the change. The entire increase in the Specified Amount will be applied to the last coverage added (either Base or Supplemental) which has not been removed. For the purpose of this calculation, if the Base and Supplemental Coverages were issued on the same date, We will consider the Supplemental Coverage to have been issued later.

3. If You request a change from Option 3 to Option 1: The Specified Amount will remain unchanged.

We will not require evidence of insurability for a change in the Death Benefit Option. The change will go into effect on the Monthly Deduction Day following the date We receive Your request for change.

**Changing the Terms of Your Policy.** Any change in Your policy must be approved by the President, a Vice President, an Administrative Officer or Secretary of the Company. No agent has the authority to make any changes or waive any of the terms of Your policy.

04337

# POLICY VALUES PROVISION

**Accumulation Value**

**On the Date of Issue.** The Accumulation Value on the Date of Issue will be:

1.  The Net Premium received; less

2.  The Monthly Deduction for the first policy month; (See "How We Calculate a Monthly Deduction.")

The first Deduction Day is the Date of Issue. The Monthly Deduction Day is shown on the Policy Schedule.

**On Each Monthly Deduction Day.** On each Monthly Deduction Day after the Date of Issue, We will determine the Accumulation Value as follows:

1.  We will take the Accumulation Value as of the last Monthly Deduction Day; and

2.  Add all Net Premiums received since the last Monthly Deduction Day; and

3.  Add the interest earned for the month:

    A.  Interest will be applied for the entire month on the excess of the Accumulation Value on the last Monthly Deduction Day over any partial surrenders made since the last Monthly Deduction Day;

    B.  If a Net Premium has been received since the last Monthly Deduction Day, interest on such amount will be added on a pro-rata basis from the date received to the end of the policy month;

    C.  If a partial surrender has been made since the last Monthly Deduction Day, interest on the amount of such partial surrender will be added on a pro-rata basis from the last Monthly Deduction Day to the day of such partial surrender; and

4.  Subtract any partial surrender made and any charges for partial surrenders since the last Monthly Deduction Day; and

5.  Subtract the Monthly Deduction for the policy month following the Monthly Deduction Day. (See "How We Calculate a Monthly Deduction.")

**On Any Day Other Than a Monthly Deduction Day.** The Accumulation Value on any day other than a Monthly Deduction Day will be:

1.  The Accumulation Value as of the last Monthly Deduction Day;

2.  Less any partial surrenders paid and any charges for partial surrenders since the last Monthly Deduction Day;

3.  Plus all Net Premiums received since the last Monthly Deduction Day.

**Cash Value.** The Cash Value of this policy will be equal to the Accumulation Value less the Surrender Charge, if any.

**Cash Surrender Value.** The Cash Surrender Value of this policy will be equal to the Cash Value less any indebtedness.

**Monthly Deductions May Be Made Only if There Is Sufficient Cash Surrender Value (Unless Policy Is Being Continued Under the Monthly Guarantee Premium or Continuation Guarantee Provisions).** Unless this policy is being continued in force under the Monthly Guarantee Premium or Continuation Guarantee provisions, a Monthly Deduction from the Accumulation Value may be made only if the Cash Surrender Value is equal to or greater than the Monthly Deduction. The Accumulation Value will be reduced by the amount of each Monthly Deduction. If the Cash Surrender Value on a Monthly Deduction Day is not sufficient to meet the Monthly Deduction for the current month, this policy will be subject to the "Grace Period", "Monthly Guarantee Premium" and "Continuation Guarantee" provisions.

04337

Page 7

## POLICY VALUES PROVISION (Cont'd)

**Surrender Charge.** The Surrender Charge applies only to the Base Coverage portion of the Specified Amount. The Surrender Charge for the amount of Base Coverage on the Date of Issue will apply if such Base Coverage is surrendered or reduced during the Surrender Charge Period. Surrender Charges for any increases in Base Coverage will apply if such increases are surrendered or reduced during the Surrender Charge Period of each increase. The Surrender Charge Period will vary according to the age at issue (or age on the date of an increase) as shown in the Table of Surrender Charges per $1,000 of Base Coverage.

You may make a request for surrender at any time during the Insured's lifetime before the Maturity Date.

A full surrender, partial surrender or reduction in Specified Amount due to a requested partial surrender will be calculated as of the day We receive Your request.

**How We Calculate a Monthly Deduction.** Each Monthly Deduction includes:

1. The cost of insurance provided by the basic policy; and

2. The cost of insurance for benefits provided by riders; and

3. The Monthly Administration Fee; and

4. During the first five policy years, a Monthly Expense Charge. (A Monthly Expense Charge also applies to the amount of any increase in Base Coverage during the first five years of such increase.)

**How We Calculate the Cost of Insurance for the Basic Policy.** We calculate the cost of insurance at the beginning of each policy month. The cost of insurance is determined on the Monthly Deduction Day by multiplying the Net Amount at Risk by the cost of insurance rate per $1,000 and dividing the result by 1000.

To determine the Net Amount at Risk, We:

1. Divide the Death Benefit Amount under the basic policy by the Guaranteed Interest Rate factor shown on the Policy Schedule; and

2. Reduce the result by the amount of Accumulation Value:

   a. Before the cost of insurance deduction is taken; and

   b. After the applicable rider charges, the Monthly Expense Charge, if any, and the Monthly Administration Fee are deducted.

**Cost of Insurance for Benefits Provided by Riders.** The cost of insurance for benefits provided by riders will be as stated on the Policy Schedule or in an endorsement.

**Monthly Administration Fee.** An administration fee will be deducted monthly. The amount of the Monthly Administration Fee may be adjusted, but will never be greater than the guaranteed Monthly Administration Fee shown on the Policy Schedule.

**Monthly Expense Charge.** A Monthly Expense Charge will be deducted during the first five policy years, and during the first five years of any increase in Base Coverage. The Monthly Expense Charge for the first five years for the initial amount of Base Coverage is shown on the Policy Schedule. The Monthly Expense Charge for the first five years for any increase in Base Coverage will be provided in an endorsement to this policy. Any decrease in Base Coverage will not change the Monthly Expense Charge then in effect.

**Cost of Insurance Rate.** The cost of insurance rate for the Initial Specified Amount, and for each Specified Amount increase, is based on the Insured's:

1. Gender; (if issued on a Sex Distinct basis);

2. Age nearest birthday on each policy anniversary; and

04337

## POLICY VALUES PROVISION (Cont'd)

3.    Premium class shown on the Policy Schedule, associated with the Initial Specified Amount and each increase in the Specified Amount.

A table of guaranteed monthly cost of insurance rates is included in this policy. We can use cost of insurance rates that are lower than the guaranteed rates. Any change in rates will apply to all policies in the same rate class as this policy. The rate class of this policy is determined on its Date of Issue according to:

1.    The calendar year of issue and policy year;

2.    The plan of insurance;

3.    The amount of insurance; and

4.    The age, gender and premium class of the Insured if issued on a Sex Distinct basis or the age and premium class if issued on a Gender Neutral basis.

**Changes in Rates, Charges and Fees.** This policy does not participate in our profits or surplus. Any redetermination of the cost of insurance rates, Premium Expense Charge Percentage or Monthly Administration Fee will be based on our future expectations as to mortality, persistency, expenses, reinsurance costs, and state and federal taxes. Any redetermination of interest rates will be based only on expectations of future investment earnings. We will not change these rates or charges in order to recoup any prior losses.

**Interest Rate.** The guaranteed interest rate used in calculating Accumulation Values is shown on the Policy Schedule. We can use interest rates greater than the guaranteed rates to calculate Accumulation Values. We will apply a different rate of interest to that portion of the Accumulation Value which equals the amount of a policy loan. The annual effective rate which may be applied to amounts offset by policy loans is also shown on the Policy Schedule.

At the end of the first month following the fifth policy anniversary, and at the end of each month thereafter, this policy will be eligible for a current interest bonus. The bonus will be credited monthly to the Accumulation Value subject to the following guidelines:

1.    The declared annual interest rate at the end of each month must be greater than the guaranteed annual interest rate; and

2.    The bonus credited each month will increase the declared annual interest rate applied to the Accumulation Value not offset by a policy loan by .10% (One tenth of one percent).

**Grace Period.** The Grace Period is the 61-day period that follows a Monthly Deduction Day or an annual policy loan interest due date if:

1.    There is not enough Cash Surrender Value to pay the amount due; and

2.    The requirements of the Monthly Guarantee Premium provision have not been met; and

3.    The requirements of the Continuation Guarantee Provisions have not been met.

There is no Grace Period for the initial Monthly Deduction.

If the amount required to keep Your policy in force is not paid by the end of the Grace Period, this policy will terminate without value. However, We will give You at least 31 days notice prior to termination that Your policy is in the Grace Period and advise You of the amount of premium or the amount of loan interest required to keep Your policy in force. Such 31 days prior notice will be sent to You at Your last known address, and to the assignee of record, if any. If death occurs during the Grace Period, the amount due through the policy month in which death occurred will be deducted from the proceeds.

## POLICY VALUES PROVISION (Cont'd)

If a surrender request is received within 31 days after the Grace Period commences, the Cash Surrender Value payable will not be less than the Cash Surrender Value on the Monthly Deduction Day the Grace Period commenced. The Monthly Deduction for the policy month following such Monthly Deduction Day will not be subtracted in the calculation of such Cash Surrender Value.

**Monthly Guarantee Premium.** The Monthly Guarantee Premium for the Initial Specified Amount and any benefit riders in force on the Date of Issue is shown on the Policy Schedule. The Monthly Guarantee Premium Period (Guarantee Period) on the Date of Issue will be 10 years if the Issue Age is 70 or less. If the Issue Age is greater than 70, the Guarantee Period will be 5 years. This policy will not terminate on a Monthly Deduction Day within the Guarantee Period if, on such Monthly Deduction Day the sum of premiums paid equals or exceeds:

1.   The sum of the Monthly Guarantee Premiums from the Date of Issue, including the current month; plus

2.   Any partial surrenders and any increase in the loan amount since the Date of Issue.

If on a Monthly Deduction Day, this policy does not meet the Monthly Guarantee Premium requirements, guarantees under the Monthly Guarantee Premium provision will not be in effect.

During the Guarantee Period the Monthly Guarantee Premium will be recalculated if:

1.   The Specified Amount is increased or decreased;

2.   A benefit rider is increased, decreased, added or removed; or

3.   A change in Death Benefit Option occurs.

These changes will not affect the Guarantee Period then in effect, if any.

If a policy is reinstated with no change to the Specified Amount, Death Benefit Option, Premium Class or benefit riders, if any, the Monthly Guarantee Premium upon reinstatement will be the same as it was when the policy lapsed. Reinstatement will not extend or otherwise change the Monthly Guarantee Premium Period that was in effect when the policy lapsed.

The policy value at the end of the Guarantee Period may be insufficient to keep the policy in force unless an additional payment is made at that time.

**Full Surrender.** You may return Your policy to Us and request its Cash Surrender Value at any time during the Insured's lifetime before the Maturity Date. The Cash Surrender Value will be calculated as of the day We receive Your request. If surrender takes place within 31 days after a policy anniversary, the Cash Value will not be less than on that anniversary.

**Partial Surrender.** At any time after the first policy year, You may request withdrawal of a portion of the Cash Surrender Value of the policy. Your request must be made in Writing prior to the Maturity Date during the Insured's lifetime.

A partial surrender will result in a reduction of the Cash Value, Accumulation Value and the Death Benefit Amount. The Cash and Accumulation Values will be reduced by the amount of partial surrender. The reduced Death Benefit Amount will be determined in accordance with the Death Benefit Option provision. If Your Death Benefit Option is Option 1 or Option 3, the Specified Amount will be reduced by the amount of the partial surrender. The reduction in Specified Amount will be subject to the same guidelines and restrictions as outlined in the Decreasing the Specified Amount provision. (The reduced amount will not be less than zero.) The Death Benefit Amount remaining after this reduction must be no less than the Minimum Death Benefit Amount shown on the Policy Schedule.

## POLICY VALUES PROVISION (Cont'd)

There will be a charge not to exceed $50.00 for each partial surrender in addition to the amounts shown in the Table of Surrender Charges. Any partial surrender that causes a reduction in Base Coverage will be subject to any applicable surrender charges on a pro-rata basis, and the remaining surrender charge will be reduced proportionately.

**Payment of Cash Value Benefit.** We can delay payment of Cash Surrender Values for up to 6 months, or the period allowed by law, whichever is less. However, We cannot delay payment of a partial surrender if the amount is to be used to pay a premium to Us.

**Continuation of Insurance Coverage if Amount or Frequency of Premium Payments Is Reduced or if Premium Payments Are Discontinued.** If You reduce the amount or frequency of premium payments, or if You discontinue payment of premiums and do not surrender this policy. We will continue making Monthly Deductions (as long as there is sufficient Cash Surrender Value to make such deductions) until the Maturity Date. This policy will remain in force as long as the Monthly Guarantee Premium or Continuation Guarantee requirements are met. This policy will remain in force until the earlier of the following dates:

1.   The Maturity Date (if there is sufficient Cash Surrender Value to make Monthly Deductions to that date);

2.   Full surrender of the policy;

3.   The end of the Grace Period; or

4.   Death of the Insured.

## CONTINUATION GUARANTEE PROVISIONS

After the second policy anniversary the Continuation Guarantee (CG) provides a benefit designed to continue Your insurance coverage within defined limits even if Your Cash Surrender Value is not large enough to cover the Monthly Deductions. The CG is an alternate policy value that is not used in determining the actual policy values. The CG does not provide additional policy value or Death Benefit Proceeds. The CG is simply a reference value used after the second policy anniversary to determine whether or not the CG is in effect.

The CG policy value is calculated in the same manner as the actual policy value, but using different charges and interest rates. Except as stated in the Policy Changes provision, the tables of CG cost of insurance rates, CG interest rates, and all other CG charges used in this alternate policy value calculation are guaranteed not to change.

After the second policy anniversary and while the CG is in effect, this policy will not enter the Grace Period if there is not enough Cash Surrender Value to cover current Monthly Deductions. Even if the policy's Cash Surrender Value is zero, the CG will remain in effect as long as the value of the Continuation Guarantee Account ("CG Account") is greater than or equal to zero. The "CG Account" is the sum of the "CG1", "CG2" and "CG3" Accounts.

**Continuation Guarantee Specified Amount.** The CG Specified Amount is only used to determine the CG Account values. The CG will have an initial Specified Amount equal to the sum of the Base and Supplemental Coverages. Such initial Specified Amount is the same as the initial Specified Amount for the policy. However, Death Benefit Option changes may cause the CG Specified Amount to differ from the Specified Amount of the policy.

**Continuation Guarantee Premium Expense Charge Percentage.** The CG Premium Expense Charge Percentage is shown on the Policy Schedule. It is used to determine the Premium Expense Charge for the CG Account.

**Continuation Guarantee Account Values.** Net Premiums will be allocated to the CG Account in accordance with the following rules:

04337

## CONTINUATION GUARANTEE PROVISIONS (Cont'd)

1.  During the first policy year:

    a.  The initial Net Premium will be allocated to CG1;

    b.  Additional Net Premiums will be allocated to CG1 if the value of the CG Account is greater than zero;

    c.  Additional Net Premiums will be allocated to CG3 if the value of the CG Account is equal to or less than zero;

2.  After the first policy year:

    a.  If the value of the CG Account is zero on the last policy anniversary, all Net Premiums received until the following anniversary will be allocated to CG3;

    b.  Otherwise, if the value of the CG Account is less than or equal to zero on the date the Net Premium is received, the Net Premium will be allocated to CG3;

    c.  Otherwise, the Net Premium will be allocated to CG2.

The value of each account is determined on each Monthly Deduction Day by accumulating with interest:

1.  The value for the prior month;

2.  Plus Net Premiums credited to that account;

3.  Less any partial surrenders charged to that account;

4.  Less Monthly Deductions charged to that account.

**Continuation Guarantee Accounts - Monthly Deductions.** Each Monthly Deduction includes:

1.  The cost of insurance provided by the CG; and

2.  The cost of insurance for benefits provided by riders; and

3.  The CG Monthly Administration Fee; and

4.  During the first five policy years a CG Monthly Expense Charge. (A CG Monthly Expense Charge also applies to the amount of any increase in Base Coverage during the first five years of such increase.)

Monthly Deductions will be taken from the accounts in the following order:

1.  From CG3 until it is reduced to zero;

2.  From CG2 until it is reduced to zero;

3.  From CG1 until it is reduced to zero; and

4.  Deductions will then be applied to CG3 which will result in a value that is less than zero.

**How We Calculate the Cost of Insurance for the Continuation Guarantee.** We calculate the CG cost of insurance at the beginning of each policy month. The CG cost of insurance is determined on the Monthly Deduction Day by multiplying the Continuation Guarantee Net Amount at Risk by the CG cost of insurance rate per $1,000 and dividing the result by 1,000.

There are two tables of CG cost of insurance rates that will apply to the CG Account. Table A will apply on each Monthly Deduction Day that the value of CG3 is zero. Table B will apply on each Monthly Deduction Day that CG3 is not zero.

**Continuation Guarantee Death Benefit Amount.** The CG Death Benefit Amount described below is only used to determine CG Account values.

If You have chosen Option 1, the CG Death Benefit Amount will be the greater of:

1.  The CG Specified Amount on the date of death; or

2.  The CG Account value plus policy loans on the date of death multiplied by the applicable Death Benefit Corridor Rate.

04337

Page 12

## CONTINUATION GUARANTEE PROVISIONS (Cont'd)

If You have chosen Option 2, the CG Death Benefit Amount will be the greater of:

1.  The CG Specified Amount plus the greater of: (1) zero; and (2) the sum of the CG Account value and policy loans on the date of death; or

2.  The CG Account value plus policy loans on the date of death multiplied by the applicable Death Benefit Corridor Rate.

If You have chosen Option 3, the CG Death Benefit Amount will be the amount payable under Option 1 plus the sum of all premiums paid for this policy, including premiums for any riders, less any amounts waived by the Company under a waiver of monthly deduction benefit, except as follows:

Premium payments after a partial surrender will not increase the CG Death Benefit Amount until the sum of premiums paid from the date of the partial surrender exceeds the amount of the partial surrender.

**Continuation Guarantee Net Amount at Risk.** To determine the CG Net Amount at Risk, We:

1.  Divide the CG Death Benefit Amount by the CG Guaranteed Interest Rate Factor shown on the Policy Schedule; and

2.  Reduce the result by the greater of: (1) zero; and (2) the sum of the CG Account value and policy loans:

    a.  Before the cost of insurance deduction is taken; and

    b.  After the applicable rider charges, the CG Monthly Expense Charge, if any, and the CG Monthly Administration Fee are deducted.

**Continuation Guarantee Interest Rates.** CG interest rates for the unloaned portion of each CG Account are shown on the Policy Schedule. Interest will begin to accumulate as of the date the Net Premium is credited.

**Partial Surrenders.** The gross amount of any partial surrender will be deducted from the CG

Accounts in the same order as Monthly Deductions. (That is: From CG3 until it is reduced to zero; then from CG2 until it is reduced to zero; then from CG1 until it is reduced to zero; and finally, deductions causing a balance that is less than zero will be applied to CG3).

**Policy Changes.** The CG charges and CG interest rates shown on the Policy Schedule pages for the CG may change in the event of an increase in Specified Amount, a Death Benefit Option change or a change in Premium Class. We will send notice to Your last known address of any such changes in these Policy Schedule pages. A decrease in Base Coverage will be subject to any applicable Surrender Charges on a pro-rata basis. A decrease in Base Coverage will not change the CG Monthly Expense Charge then in effect.

**Option to Adjust CG Account Values to the Age 100 Premium Level.** This option allows You to adjust the values in the CG Account to the level that would have been realized if the Age 100 Premium had been paid when due. This will require adjustment of each CG Account value. You may exercise this option at the age(s) or during the period shown on the Policy Schedule.

The CG Account may be adjusted to the Age 100 Premium Level if We receive Written notice and payment of the necessary premium at the Adjustment Age. The following definitions apply:

Adjustment Age: The age at which You exercise the Option to Adjust CG Account Values to the Age 100 Premium Level.

Age 100 Premium: The level premium payable at issue and on each policy anniversary that is required to provide the CG to age 100.

Adjustment Value: The value of the CG Account at the Adjustment Age assuming the Age 100 Premium is paid when due.

Adjustment Premium: The sum of the Age 100 Premiums, less the sum of premiums paid (less partial surrenders) at the Adjustment Age.

## CONTINUATION GUARANTEE PROVISIONS (Cont'd)

Adjusting CG Account values to the Adjustment Value is subject to the following:

1. Any loan must be repaid prior to exercising this option.

2. A premium must be paid at the Adjustment Age that is equal to or greater than the Adjustment Premium.

3. With the Adjustment Premium, You must notify Us In Writing that You are adjusting CG Account values to the Adjustment Value.

4. This option may be exercised only once.

5. This option is not available if Death Benefit Option 3 is presently in effect, (or ever has been in effect).

**Termination of the Option to Adjust CG Account Values to the Age 100 Premium Level.** Any of the following actions will terminate the Option to Adjust CG Account Values to the Age 100 Premium Level:

1. If there are any changes in Premium Class;

2. If any increases or decreases are made in the Specified Amount;

3. If any partial surrenders are made;

4. If there are any Death Benefit Option changes;

5. If there are any rider additions or deletions; or

6. If the value of the CG Account is ever less than or equal to zero after the second policy anniversary.

After the second policy anniversary, We will notify You In Writing if the value of the CG Account is less than or equal to zero on a Monthly Deduction Day. You will have 30 days to pay an amount equal to the negative balance, if any, plus two CG Monthly Deductions plus applicable Premium Expense Charges for the CG Account. If We do not receive the payment within 30 days, this option terminates. This 30 day notice will be sent to You at Your last known address.

**Continuation Guarantee Accounts – Policy Loans.** When a policy loan is made, the amount of the loan will be deducted from the CG Accounts in the following order:

1. From CG3 until it is reduced to zero; then

2. From CG2 until it is reduced to zero; then

3. From CG1 until it is reduced to zero; and then

4. Deductions will then be applied to CG3 which will result in a value that is less than zero.

Interest credited to amounts offset by policy loans, and loan repayments will be applied to CG1, CG2, and CG3 in the same order as premium payments.

## POLICY LOANS

You may borrow from Us at any time while this policy is in force, an amount which is equal to or less than the policy's loan value. The loan value will be the Cash Value less:

1. Any prior outstanding loan; and

2. Interest on the amount to be borrowed to the next policy anniversary.

**Loan Interest.** Except for Preferred Loans, the Annual Policy Loan Interest Rate is 3.85%. On each policy anniversary, loan interest for the next year is due in advance. Interest not paid when due will be added to the loan.

04337

Page 14

## POLICY LOANS (Cont'd)

**How You May Repay a Policy Loan.** You may repay all or part of a policy loan at any time, except that:

1. Repayment may be made only while this policy is in force and prior to the death of the Insured; and,

2. A partial repayment must be at least $10.00.

Except as provided in the Grace Period provision, this policy will lapse at any time Your policy loan exceeds the Cash Value. However, at least 31 days prior notice must be mailed by Us to Your last known address and to the assignee of record, if any.

**We Can Delay Payment.** We can delay lending You money for up to 6 months, or the period allowed by law, whichever is less. However, We cannot delay lending You money if the amount is to be used to pay a premium to Us.

**Obtaining a Loan.** You may obtain a policy loan by Written request and assignment of the policy as sole security for the loan.

**Preferred Loans.** A "Preferred Loan" is a policy loan that is made at a net cost to the Owner that is less than the net cost of other policy loans. By "net cost" We mean the amount of interest charged for the loan less interest credited to the amount of the Accumulation Value offset by a loan. Starting on the tenth policy anniversary, this policy will be eligible for "Preferred Loans" subject to the following guidelines:

1. The maximum amount of the loan value eligible for Preferred Loans during a policy year is restricted to policy earnings, defined as:

   (a) The Cash Surrender Value at the beginning of the policy year; less

   (b) The sum of premiums paid in excess of partial surrenders since the Date of Issue.

2. When a Preferred Loan is made, loan interest to the next policy anniversary will accrue daily at an annual effective rate of not less than 2.91% nor more than 3.15%. (This is equivalent to an annual effective rate of not less than 3.0% nor more than 3.25% respectively, paid in arrears.)

## BENEFICIARY AND PROCEEDS

**Beneficiary.** The Beneficiary as named in the application, or later changed by You, will receive the proceeds upon the death of the Insured. Unless You have stated otherwise, proceeds will be paid as follows:

1. If any Beneficiary dies before the Insured, that Beneficiary's interest will pass to any other Beneficiaries according to their respective interests.

2. If no Beneficiary survives the Insured, proceeds will be paid to You, as Owner, if You are then living; otherwise proceeds will be paid to Your estate.

**Common Disaster.** If We cannot determine whether a Beneficiary or the Insured died first in a common disaster, We will assume that the Beneficiary died first. Proceeds will be paid on this basis unless an endorsement to this policy provides otherwise.

04337                          Page 15

## BENEFICIARY AND PROCEEDS (Cont'd)

Proceeds. Proceeds means the amount payable on:

1. The Maturity Date;

2. Exercise of the full surrender benefit; or

3. The Insured's death.

The proceeds on the Maturity Date will be the Cash Surrender Value. The proceeds on the Insured's death will be the Death Benefit Amount less any outstanding policy loan.

All proceeds and partial surrender benefits are subject to the provisions of the Payment Options section and the other provisions of this policy.

## CHANGE OF OWNERSHIP OR BENEFICIARY

You may change the Owner or the Beneficiary at any time during the lifetime of the Insured unless the previous designation provides otherwise. To do so, send a Written request to Our Home Office. The change will go into effect when We have recorded the change. However, after the change is recorded, it will be deemed effective as of the date of Your Written request for change. The change will be subject to any payment made or action taken by Us before the request is recorded.

## PAYMENT OPTIONS

Instead of being paid in one sum, all or part of the proceeds may be applied under any of the Payment Options described below. In addition to these options, other methods of payment may be chosen with Our consent.

Payment Contract. When proceeds become payable under a Payment Option, a Payment Contract will be issued to each payee. The Payment Contract will state the rights and benefits of the payee. It will also name those who are to receive any balance unpaid at the death of the payee.

Election of Options. The Owner may elect or change any Payment Option while the Insured is living, subject to the provisions of this policy. This election or change must be In Writing. Within 60 days after the Insured's death, a payee entitled to proceeds in one sum may elect to receive proceeds under any option (subject to the limitations stated in the "Availability of Options" provision).

Option 1. Payments for a Specified Period: Equal monthly payments will be made for a specified period. The Option 1 Table in this policy shows the monthly income for each $1,000 of proceeds applied.

Option 2. Payments of a Specified Amount: Equal monthly payments of a specified amount will be made. Each payment must be at least $60 a year for each $1,000 of proceeds applied. Payments will continue until the amount applied, with interest, has been paid in full.

Option 3. Monthly Payments for Life with Period Certain: Equal monthly payments will be made for a specified period, and will continue after that period for as long as the payee lives. The specified period may be 10, 15 or 20 years. The Option 3 Table in this policy shows the monthly income for each $1,000 of proceeds applied. If issued on a Sex Distinct basis, tables are based on the Annuity 2000 Male or Female Tables adjusted by projection scale G (adjusted by 50% of projection scale G for females and 100% of projection scale G for males) for 20 years, with interest at the rate of 2% per year. If issued on a Gender Neutral basis, tables are based on the Annuity 2000 Male and Female Tables adjusted by projection scale G (adjusted by 50% of projection scale G for females and 100% of projection scale G for males) for 20 years, with Gender Neutral rates based on 60% female and 40% male, and interest at the rate of 2% per year.

04337

Page 16

## PAYMENT OPTIONS (Cont'd)

At the time payments are to begin under this option, the payee may choose one of the following:

1.  Monthly payments based on the Option 3 Table; or

2.  Monthly payments equal to a monthly annuity based on Our single premium immediate annuity rates then in use.

**Option 4. Proceeds Left at Interest:** Proceeds may be left on deposit with Us for any period up to 30 years. Interest earned on the proceeds may be:

1.  Left on deposit to accumulate at the rate of 2% compounded annually; or

2.  Paid in installments at the rate for each $1,000 of proceeds of $20 annually, $9.95 semiannually, $4.96 quarterly or $1.65 monthly.

Upon the death of the payee, or at the end of the specified period, any balance left on deposit will be paid in a lump sum or under Options 1, 2 or 3.

**Interest Rates.** The guaranteed rate of interest for proceeds held under Payment Options 1, 2, 3 and 4 is 2% compounded annually. We may credit interest at a higher rate. The amount of any increase will be determined by Us.

**Payments.** The first payment under Options 1, 2 and 3 will be made when the claim for settlement has been approved. Payments after the first will be made according to the manner of payment chosen. Interest under Option 4 will be credited from the date of death and paid or added to the proceeds as provided in the Payment Contract.

**Availability of Options.** If the proposed payee is not a natural person, payment options may be chosen only with Our consent.

If this policy is assigned, We will have the right to pay the assignee in one sum the amount to

which the assignee is entitled. Any balance will be applied according to the option chosen.

The amount to be applied under any one option must be at least $2,000. The payment elected under any one option must be at least $20. If the total policy proceeds are less than $2,000 payment will be made in one lump sum.

**Evidence That Payee is Alive.** Before making any payment under a Payment Option, We may ask for proof that the payee is alive. If proof is requested, no payment will be made or considered due until We receive proof.

**Death of a Payee.** If a payee dies, any unpaid balance will be paid as stated in the Payment Contract. If there is no surviving payee named in the Payment Contract, We will pay the estate of the payee:

1.  Under Options 1 and 3: The value of the remaining payments for the specified period as of the date We receive Written notification of death, discounted at the rate of interest used in determining the amount of the monthly payment.

2.  Under Options 2 and 4, the balance of any proceeds remaining unpaid with accrued interest, if any.

**Withdrawal of Proceeds Under Options 1 or 2.** If provided in the Payment Contract, a payee will have the right to withdraw the entire unpaid balance under Options 1 or 2. Under Option 1, the amount will be the value of the remaining payments for the specified period discounted at the rate of interest used in determining monthly income. Under Option 2, the amount will be the entire unpaid balance.

**Withdrawal of Proceeds Under Option 4.** A payee will have the right to withdraw proceeds left under Option 4 subject to the following rules:

1.  The amount to be withdrawn must be $500 or more;

04337

**Page 17**

## PAYMENT OPTIONS (Cont'd)

2.   A partial withdrawal must leave a balance on deposit of $1,000 or more.

**Withdrawals May Be Deferred.** We may defer payment of any withdrawal for up to 6 months from the date We receive a withdrawal request.

**Assignment.** Payment Contracts may not be assigned.

**Change in Payment.** The right to make any change in payment is available only if the Payment Contract provides for a change in payment.

**Claims of Creditors.** To the extent permitted by law, proceeds will not be subject to any claims of a Beneficiary's creditors.

## GENERAL PROVISIONS

**Assigning Your Policy.** During the lifetime of the Insured, You may assign this policy as security for an obligation. We will not be bound by an assignment unless it is received in Writing at Our Home Office. Two copies of the assignment must be submitted. We will retain one copy and return the other. We will not be responsible for the validity of any assignment.

**Incontestability.** We rely on the statements made in the application for the policy and applications for any reinstatements or increases in Specified Amount. These statements, in the absence of fraud, are considered representations and not warranties. No statement may be used in defense of a claim under the policy unless it is in such applications.

**Except** as stated below, We cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the Date of Issue.

**Exceptions:** We cannot contest any claim related to an increase in Specified Amount after such increase has been in effect during the Insured's lifetime for 2 years.

If this policy is reinstated, We cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the date of reinstatement.

We can contest a reinstatement or an increase in Specified Amount only on the basis of the information furnished in the application for such reinstatement or increase.

This 2-year limitation does not apply to benefits provided by any Disability or Accidental Death Benefit rider, or to the nonpayment of premium.

**Suicide Exclusion.** If the Insured takes his or her own life, while sane or insane, within 2 years from the Date of Issue, We will limit the Death Benefit Proceeds to the premiums paid less any policy loans and less any partial cash surrenders paid.

If there are any increases in the Specified Amount (See the section entitled "Changing Your Insurance Policy") a new 2-year period shall apply to each increase beginning on the date of each increase. The Death Benefit Proceeds will be the costs of insurance associated with each increase.

When the laws of the state in which this policy is delivered require less than this 2-year period, the period will be as stated in such laws.

**Age or Gender Incorrectly Stated (Age Incorrectly Stated if Issued on a Gender Neutral Basis).** If the: (1) age or gender of the Insured (if this policy was issued on a Sex Distinct basis); or (2) age of the Insured (if this policy was issued on a Gender Neutral basis) has been misstated to Us, We will adjust the excess of the Death Benefit Amount over the Accumulation Value on the date of death to that which would have been purchased by the Monthly Deduction for the policy month of death at the correct cost of insurance rate. By age, We mean age nearest birthday as of the Date of Issue.

04337                          Page 18

## GENERAL PROVISIONS (Cont'd)

**Statutory Basis of Policy Values.** The Cash Values of the policy are not less than the minimum values required by the law of the state where this policy is delivered. The calculation of the Cash Values includes interest at the guaranteed annual interest rate shown on the Policy Schedule and a charge for the cost of insurance, as shown in the Table of Guaranteed Monthly Cost of Insurance Rates.

The calculation of minimum Cash Values, nonforfeiture benefits and Guaranteed Cost of Insurance rates are based on the Mortality Table shown on the Policy Schedule for the appropriate gender (if this policy was issued on a Sex Distinct basis) and age nearest birthday.

A detailed statement of the method of computing values has been filed with the state insurance department where required.

**No Dividends.** This policy will not pay dividends. It will not participate in any of Our surplus or earnings.

**Annual Report.** We will send You at least once a year, without charge, an annual report which shows the following:

1. Premiums paid;

2. Expense charges deducted;

3. Interest credited to Your Accumulation Value;

4. The cost of insurance deducted;

5. Partial surrender benefits paid to You;

6. The amount of any outstanding policy loan;

7. The current Cash Surrender and Accumulation Values.

**Illustrative Report.** At any time while this policy is in force, the Owner may request from Us an illustration of contract values for the future. The values will be based on both guaranteed and then current assumptions. A reasonable fee, not to exceed $50.00, may be charged for additional reports requested in a policy year.

**When This Policy Terminates.** This policy will terminate if:

1. You request that this policy be terminated;

2. The Insured dies;

3. The policy matures;

4. The Grace Period ends; and

    a. There is not sufficient Cash Surrender Value to cover a Monthly Deduction; and

    b. The necessary Monthly Guarantee Premiums to keep the policy in force have not been paid; and

    c. The CG Account value is less than zero.

**Reinstatement.** "Reinstating" means placing Your policy in force after it has terminated at the end of the grace period. We will reinstate this policy if We receive:

1. Your Written request within five years after the end of the Grace Period and before the Maturity Date; and

2. Evidence of insurability satisfactory to Us; and

04337

Page 19

## GENERAL PROVISIONS (Cont'd)

3. Payment of enough premium to keep the policy in force for two months or, if less, an amount equal to all past due Monthly Guarantee Premiums; and

4. Payment or reinstatement of any indebtedness.

The reinstated policy will be in force from the Monthly Deduction Day on or following the date We approve the reinstatement application.

The original surrender charge schedule will apply to a reinstated policy. The Accumulation Value at the time of reinstatement will be:

1. The Surrender Charge deducted at the time of lapse (such charge not being greater than the Accumulation Value at the time of lapse before the Surrender Charge was applied); plus

2. The Net Premium paid at reinstatement; plus

3. Any loan repaid or reinstated; less

4. The Monthly Deduction for one month.

If a person other than the Insured is covered by an attached rider, coverage will be reinstated according to that rider.

Reinstatement of the Continuation Guarantee Account. The policy will only be eligible for reinstatement with the CG Account if:

1. The policy and the CG Account were in force until the date of lapse; and

2. The policy was not surrendered for its Cash Surrender Value; and

3. We receive application for reinstatement within 90 days following termination of the policy.

Rights Reserved By Us. Upon notice to You, this policy may be modified by Us, but only if such modification is necessary to make any changes as required by the Internal Revenue Code or by any other applicable law, regulation or interpretation in order to continue treatment of this policy as life insurance.

When required by law, We will obtain Your approval of changes and We will gain approval from any appropriate regulatory authority.

Rates on Policy Anniversary Nearest Insured's 18th Birthday (For Insured's age 17 or Less on Date of Issue). If the Insured's age, nearest birthday, is 17 or less on the Date of Issue of this policy, Tobacco rates will be used starting on the policy anniversary nearest the Insured's 18th birthday, except as follows. Prior to the anniversary nearest the Insured's 18th birthday, a Written statement, signed by the Insured, may be submitted to the Company requesting that Non-Tobacco rates be made effective. The statement must include the date the Insured last used tobacco, or state that the Insured has never used tobacco, whichever applies. If the request is approved, Non-Tobacco rates will be made effective on the policy anniversary nearest the Insured's 18th birthday. Otherwise, Tobacco rates will apply. We will send a notice to the Owner at least 30 days prior to the policy anniversary nearest the Insured's 18th birthday that a request for Non-Tobacco rates may be submitted.

Option to Extend Coverage. You may elect to extend the Maturity Date stated on the Schedule Page (Maturity Date), as follows:

If the Insured is living on the Maturity Date, coverage will be continued until the date of death of the Insured.

To elect this option, You must submit a Written request to the Company on a form acceptable to Us, at least 30 days prior to the original Maturity Date.

04337

**Page 20**

## TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
### PER $1,000 OF NET AMOUNT AT RISK

| ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE | ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE |
|---|---|---|---|---|---|
| 18 | $0.13 | $0.08 | 60 | $ 1.06 | $ 0.71 |
| 19 | .14 | .08 | 61 | 1.17 | .76 |
| 20 | .14 | .08 | 62 | 1.29 | .83 |
| 21 | .13 | .08 | 63 | 1.43 | .92 |
| 22 | .13 | .08 | 64 | 1.60 | 1.02 |
| 23 | .13 | .08 | | | |
| 24 | .13 | .09 | 65 | 1.78 | 1.13 |
| | | | 66 | 1.97 | 1.25 |
| 25 | .12 | .09 | 67 | 2.18 | 1.37 |
| 26 | .12 | .09 | 68 | 2.41 | 1.50 |
| 27 | .12 | .09 | 69 | 2.66 | 1.63 |
| 28 | .12 | .09 | | | |
| 29 | .12 | .10 | 70 | 2.94 | 1.78 |
| | | | 71 | 3.31 | 1.96 |
| 30 | .12 | .10 | 72 | 3.63 | 2.19 |
| 31 | .12 | .10 | 73 | 4.05 | 2.47 |
| 32 | .12 | .10 | 74 | 4.54 | 2.80 |
| 33 | .12 | .11 | | | |
| 34 | .13 | .11 | 75 | 5.06 | 3.17 |
| | | | 76 | 5.62 | 3.58 |
| 35 | .14 | .12 | 77 | 6.21 | 4.02 |
| 36 | .14 | .13 | 78 | 6.83 | 4.50 |
| 37 | .15 | .13 | 79 | 7.49 | 5.03 |
| 38 | .16 | .14 | | | |
| 39 | .17 | .16 | 80 | 8.22 | 5.62 |
| | | | 81 | 9.05 | 6.31 |
| 40 | .19 | .17 | 82 | 9.99 | 7.11 |
| 41 | .20 | .18 | 83 | 11.07 | 8.05 |
| 42 | .22 | .20 | 84 | 12.26 | 9.10 |
| 43 | .23 | .21 | | | |
| 44 | .25 | .23 | 85 | 13.55 | 10.26 |
| | | | 86 | 14.91 | 11.53 |
| 45 | .27 | .24 | 87 | 16.34 | 12.91 |
| 46 | .29 | .26 | 88 | 17.80 | 14.39 |
| 47 | .32 | .28 | 89 | 19.33 | 16.00 |
| 48 | .34 | .30 | | | |
| 49 | .37 | .32 | 90 | 20.94 | 17.75 |
| | | | 91 | 22.66 | 19.68 |
| 50 | .41 | .34 | 92 | 24.57 | 21.86 |
| 51 | .44 | .37 | 93 | 26.76 | 24.42 |
| 52 | .48 | .40 | 94 | 29.63 | 27.67 |
| 53 | .53 | .43 | | | |
| 54 | .59 | .47 | 95 | 33.93 | 32.32 |
| | | | 96 | 41.27 | 40.04 |
| 55 | .65 | .51 | 97 | 56.03 | 55.15 |
| 56 | .72 | .55 | 98 | 83.33 | 83.33 |
| 57 | .79 | .58 | 99 | 83.33 | 83.33 |
| 58 | .87 | .62 | | | |
| 59 | .96 | .66 | | | |

The rates shown above represent the guaranteed (maximum) monthly cost of insurance for each $1,000 of net amount at risk. If this policy has been issued in a special (rated) premium class, the guaranteed monthly cost will be calculated as shown on the Policy Schedule.

Starting on the original Maturity Date:

1.  The Death Benefit Amount for the base policy will be equal to the base policy Death Benefit Amount in effect on the day prior to the Maturity Date, and if based all, or in part, on the Accumulation Value, will be adjusted by future changes in the Accumulation Value. The Death Benefit Amount will never be less than the Accumulation Value;

2.  Unless otherwise stated in a rider attached to this policy, coverage under any riders attached to this policy will not be extended;

3.  No Monthly Deductions will be made;

4.  New premium payments will not be accepted;

5.  Interest on policy loans will continue to accrue in the same manner as stated in the Policy Loans provisions and You may repay all or part of a loan at any time as stated in the Policy Loans provisions; and

6.  The Accumulation Value will continue to be determined as stated in this policy, subject to item 3 above.

After this option is selected, it may not be revoked.

This policy may be subject to tax consequences when continued beyond the Maturity Date. It may not qualify as "life insurance" under the Internal Revenue Code after age 100. You should consult Your tax advisor.

# TABLE OF SURRENDER CHARGES PER $1,000 OF BASE COVERAGE

The following charges apply to each $1,000 of initial Base Coverage surrendered during the Surrender Charge Period. The charges also apply to each $1,000 of increase in Base Coverage surrendered during the Surrender Charge Period of each increase. The word "surrender" as used in this provision means Full Surrender, or a reduction in Base Coverage at the request of the Owner, or due to a partial surrender of all or any portion of the initial Base Coverage will be equal to the rate shown below for the age at issue and the year of surrender, multiplied by the number of thousands of initial Base Coverage being surrendered. The charges for the age and year of surrender of all or any portion of any increase in Base Coverage will be equal to the rates shown below for the age at issue of such increase and partial surrender as described in the Partial Surrender provision. In addition, there will be a charge for

**Policy Years**

| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 12.00 | 11.00 | 9.00 | 7.00 | 7.00 | 7.00 | 6.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 19 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 12.00 | 11.00 | 9.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 20 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 12.00 | 11.00 | 10.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 21 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 12.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 22 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 12.00 | 10.00 | 8.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 23 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 24 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 13.00 | 12.00 | 11.00 | 8.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 25 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 13.00 | 11.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 26 | 15.00 | 16.00 | 15.00 | 16.00 | 15.00 | 14.00 | 13.00 | 13.00 | 11.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 27 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 13.00 | 13.00 | 11.00 | 9.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 28 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 14.00 | 13.00 | 11.00 | 9.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 29 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 15.00 | 14.00 | 13.00 | 11.00 | 9.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 30 | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 31 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 15.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 32 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 16.00 | 14.00 | 13.00 | 12.00 | 10.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 33 | 17.00 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 14.00 | 13.00 | 12.00 | 10.00 | 10.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 34 | 18.00 | 18.00 | 18.00 | 18.00 | 17.00 | 18.00 | 15.00 | 13.00 | 12.00 | 10.00 | 10.00 | 9.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 35 | 18.00 | 18.00 | 18.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 15.00 | 14.00 | 12.00 | 11.00 | 9.00 | 8.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 36 | 19.00 | 19.00 | 19.00 | 19.00 | 18.00 | 16.00 | 16.00 | 14.00 | 16.00 | 15.00 | 13.00 | 12.00 | 10.00 | 8.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 37 | 19.00 | 19.00 | 19.00 | 19.00 | 18.00 | 17.00 | 16.00 | 14.00 | 16.00 | 15.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 38 | 20.00 | 20.00 | 20.00 | 20.00 | 19.00 | 17.00 | 16.00 | 14.00 | 17.00 | 16.00 | 14.00 | 13.00 | 11.00 | 8.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 39 | 20.00 | 20.00 | 20.00 | 20.00 | 19.00 | 18.00 | 17.00 | 15.00 | 18.00 | 16.00 | 15.00 | 13.00 | 11.00 | 9.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 40 | 21.00 | 21.00 | 21.00 | 21.00 | 20.00 | 19.00 | 18.00 | 16.00 | 18.00 | 17.00 | 16.00 | 14.00 | 12.00 | 10.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 41 | 22.00 | 22.00 | 22.00 | 22.00 | 21.00 | 20.00 | 18.00 | 17.00 | 19.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 7.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 42 | 23.00 | 23.00 | 23.00 | 22.00 | 21.00 | 20.00 | 19.00 | 18.00 | 20.00 | 18.00 | 17.00 | 15.00 | 13.00 | 11.00 | 7.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 43 | 23.00 | 23.00 | 23.00 | 23.00 | 22.00 | 21.00 | 20.00 | 18.00 | 20.00 | 18.00 | 17.00 | 16.00 | 14.00 | 11.00 | 8.00 | 5.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 44 | 24.00 | 24.00 | 24.00 | 24.00 | 22.00 | 21.00 | 20.00 | 19.00 | 21.00 | 19.00 | 18.00 | 16.00 | 14.00 | 12.00 | 8.00 | 5.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 45 | 25.00 | 25.00 | 25.00 | 24.00 | 23.00 | 22.00 | 21.00 | 18.00 | 18.00 | 17.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 5.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 46 | 26.00 | 26.00 | 25.00 | 25.00 | 24.00 | 23.00 | 22.00 | 19.00 | 19.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 8.00 | 5.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 47 | 27.00 | 27.00 | 26.00 | 26.00 | 25.00 | 23.00 | 23.00 | 19.00 | 20.00 | 18.00 | 17.00 | 16.00 | 14.00 | 11.00 | 9.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 48 | 28.00 | 27.00 | 27.00 | 26.00 | 25.00 | 24.00 | 24.00 | 20.00 | 20.00 | 18.00 | 17.00 | 16.00 | 15.00 | 12.00 | 9.00 | 6.00 | 5.00 | 2.00 | 1.00 | 0.00 |
| 49 | 28.00 | 28.00 | 28.00 | 27.00 | 26.00 | 25.00 | 24.00 | 21.00 | 21.00 | 19.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 7.00 | 5.00 | 2.00 | 1.00 | 0.00 |

04337

M-NS

# TABLE OF SURRENDER CHARGES PER $1,000 OF BASE COVERAGE

|  | Policy Years | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 50 | 29.00 | 29.00 | 29.00 | 28.00 | 27.00 | 26.00 | 24.00 | 23.00 | 21.00 | 20.00 | 18.00 | 17.00 | 16.00 | 13.00 | 10.00 | 8.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 51 | 30.00 | 30.00 | 30.00 | 29.00 | 28.00 | 27.00 | 25.00 | 24.00 | 22.00 | 21.00 | 19.00 | 18.00 | 16.00 | 13.00 | 11.00 | 8.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 52 | 31.00 | 31.00 | 31.00 | 30.00 | 29.00 | 28.00 | 26.00 | 25.00 | 23.00 | 22.00 | 20.00 | 18.00 | 17.00 | 14.00 | 11.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 53 | 32.00 | 32.00 | 32.00 | 31.00 | 30.00 | 29.00 | 27.00 | 26.00 | 24.00 | 22.00 | 20.00 | 19.00 | 16.00 | 15.00 | 11.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 54 | 33.00 | 33.00 | 33.00 | 32.00 | 30.00 | 30.00 | 28.00 | 27.00 | 25.00 | 23.00 | 21.00 | 19.00 | 17.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 55 | 34.00 | 34.00 | 34.00 | 34.00 | 33.00 | 31.00 | 30.00 | 28.00 | 28.00 | 24.00 | 22.00 | 20.00 | 18.00 | 16.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 56 | 35.00 | 35.00 | 35.00 | 35.00 | 34.00 | 33.00 | 31.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 18.00 | 16.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 57 | 36.00 | 36.00 | 36.00 | 36.00 | 34.00 | 32.00 | 31.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 19.00 | 16.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 58 | 37.00 | 37.00 | 37.00 | 37.00 | 34.00 | 33.00 | 31.00 | 29.00 | 27.00 | 25.00 | 23.00 | 21.00 | 19.00 | 16.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 59 | 38.00 | 38.00 | 37.00 | 36.00 | 34.00 | 32.00 | 30.00 | 29.00 | 28.00 | 26.00 | 23.00 | 21.00 | 19.00 | 16.00 | 13.00 | 9.00 | 7.00 | 3.00 | 1.00 | 0.00 |
| 60 | 39.00 | 38.00 | 37.00 | 35.00 | 33.00 | 32.00 | 30.00 | 28.00 | 26.00 | 25.00 | 23.00 | 21.00 | 19.00 | 15.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 61 | 39.00 | 38.00 | 38.00 | 35.00 | 33.00 | 31.00 | 29.00 | 28.00 | 27.00 | 24.00 | 22.00 | 20.00 | 18.00 | 14.00 | 12.00 | 9.00 | 5.00 | 2.00 | 1.00 | 0.00 |
| 62 | 39.00 | 37.00 | 38.00 | 34.00 | 33.00 | 29.00 | 27.00 | 26.00 | 27.00 | 24.00 | 23.00 | 20.00 | 18.00 | 14.00 | 12.00 | 8.00 | 5.00 | 2.00 | 0.00 | 0.00 |
| 63 | 38.00 | 37.00 | 37.00 | 34.00 | 33.00 | 30.00 | 29.00 | 27.00 | 27.00 | 24.00 | 23.00 | 20.00 | 18.00 | 14.00 | 12.00 | 7.00 | 5.00 | 1.00 | 0.00 | 0.00 |
| 64 | 38.00 | 36.00 | 36.00 | 33.00 | 32.00 | 32.00 | 28.00 | 24.00 | 25.00 | 23.00 | 22.00 | 18.00 | 18.00 | 12.00 | 12.00 | 7.00 | 4.00 | 1.00 | 0.00 | 0.00 |
| 65 | 37.00 | 36.00 | 34.00 | 33.00 | 31.00 | 30.00 | 28.00 | 26.00 | 25.00 | 23.00 | 21.00 | 20.00 | 18.00 | 15.00 | 13.00 | 9.00 | 6.00 | 3.00 | 0.00 | 0.00 |
| 66 | 37.00 | 36.00 | 34.00 | 32.00 | 30.00 | 29.00 | 27.00 | 26.00 | 24.00 | 23.00 | 21.00 | 19.00 | 18.00 | 15.00 | 12.00 | 8.00 | 5.00 | 2.00 | 0.00 | 0.00 |
| 67 | 36.00 | 35.00 | 33.00 | 32.00 | 30.00 | 28.00 | 26.00 | 25.00 | 21.00 | 19.00 | 20.00 | 17.00 | 17.00 | 14.00 | 11.00 | 5.00 | 4.00 | 1.00 | 0.00 | 0.00 |
| 68 | 36.00 | 36.00 | 32.00 | 31.00 | 29.00 | 28.00 | 25.00 | 24.00 | 19.00 | 18.00 | 17.00 | 15.00 | 16.00 | 14.00 | 11.00 | 5.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 69 | 35.00 | 33.00 | 32.00 | 30.00 | 29.00 | 27.00 | 24.00 | 20.00 | 18.00 | 16.00 | 15.00 | 12.00 | 15.00 | 12.00 | 10.00 | 6.00 | 4.00 | 1.00 | 0.00 | 0.00 |
| 70 | 34.00 | 33.00 | 31.00 | 30.00 | 28.00 | 27.00 | 25.00 | 24.00 | 23.00 | 21.00 | 19.00 | 17.00 | 14.00 | 11.00 | 10.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 71 | 34.00 | 32.00 | 31.00 | 28.00 | 26.00 | 26.00 | 24.00 | 23.00 | 22.00 | 20.00 | 18.00 | 16.00 | 13.00 | 11.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 72 | 33.00 | 32.00 | 30.00 | 27.00 | 24.00 | 24.00 | 23.00 | 22.00 | 21.00 | 19.00 | 17.00 | 14.00 | 12.00 | 11.00 | 8.00 | 5.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 73 | 33.00 | 31.00 | 28.00 | 26.00 | 24.00 | 22.00 | 20.00 | 20.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 10.00 | 8.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 74 | 32.00 | 32.00 | 29.00 | 25.00 | 22.00 | 20.00 | 18.00 | 18.00 | 16.00 | 14.00 | 14.00 | 12.00 | 10.00 | 8.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 75 | 32.00 | 30.00 | 29.00 | 30.00 | 28.00 | 27.00 | 25.00 | 23.00 | 23.00 | 21.00 | 19.00 | 17.00 | 14.00 | 11.00 | 11.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 76 | 31.00 | 29.00 | 28.00 | 27.00 | 26.00 | 26.00 | 24.00 | 22.00 | 21.00 | 20.00 | 18.00 | 16.00 | 13.00 | 10.00 | 11.00 | 6.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 77 | 30.00 | 27.00 | 27.00 | 26.00 | 24.00 | 24.00 | 23.00 | 21.00 | 19.00 | 18.00 | 17.00 | 14.00 | 12.00 | 11.00 | 11.00 | 5.00 | 2.00 | 1.00 | 0.00 | 0.00 |
| 78 | 29.00 | 26.00 | 26.00 | 24.00 | 23.00 | 22.00 | 21.00 | 20.00 | 18.00 | 17.00 | 15.00 | 13.00 | 11.00 | 10.00 | 10.00 | 4.00 | 2.00 | 1.00 | 0.00 | 0.00 |
| 79 | 28.00 | 25.00 | 25.00 | 22.00 | 22.00 | 20.00 | 20.00 | 18.00 | 16.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 80 | 27.00 | 25.00 | 24.00 | 23.00 | 20.00 | 20.00 | 18.00 | 16.00 | 14.00 | 14.00 | 13.00 | 11.00 | 8.00 | 7.00 | 6.00 | 4.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 81 | 26.00 | 24.00 | 23.00 | 22.00 | 18.00 | 19.00 | 18.00 | 16.00 | 14.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 5.00 | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 82 | 24.00 | 23.00 | 21.00 | 20.00 | 18.00 | 17.00 | 17.00 | 15.00 | 14.00 | 14.00 | 10.00 | 9.00 | 7.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 83 | 23.00 | 22.00 | 20.00 | 19.00 | 17.00 | 16.00 | 16.00 | 14.00 | 14.00 | 11.00 | 9.00 | 8.00 | 6.00 | 4.00 | 3.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 84 | 21.00 | 19.00 | 18.00 | 17.00 | 16.00 | 15.00 | 15.00 | 14.00 | 13.00 | 11.00 | 8.00 | 6.00 | 6.00 | 3.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 85 | 20.00 | 19.00 | 18.00 | 17.00 | 16.00 | 16.00 | 13.00 | 13.00 | 12.00 | 11.00 | 8.00 | 8.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 86 | 20.00 | 19.00 | 18.00 | 16.00 | 16.00 | 15.00 | 13.00 | 12.00 | 11.00 | 11.00 | 8.00 | 6.00 | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 87 | 20.00 | 19.00 | 17.00 | 16.00 | 14.00 | 14.00 | 12.00 | 11.00 | 11.00 | 10.00 | 7.00 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 88 | 20.00 | 19.00 | 16.00 | 16.00 | 14.00 | 14.00 | 12.00 | 11.00 | 9.00 | 7.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 89 | 20.00 | 18.00 | 16.00 | 15.00 | 13.00 | 13.00 | 11.00 | 9.00 | 7.00 | 5.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 90 | 19.00 | 18.00 | 17.00 | 15.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

M4-NS

04337

```
3/29/06 4:47P
579797004428
```

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION      03/28/2006

AMERICAN GENERAL LIFE INS CO
2727-A ALLEN PARKWAY
HOUSTON, TEXAS  77019-2115

FOR ADDITIONAL INFORMATION
ABOUT THIS POLICY CONTACT:
DAVID GOTTDENGER
4540 CORPORATE DR STE 155
WEST DES MOINES IA 50266-5911

PREPARED FOR:    SIMON SPIRA
POLICY NUMBER:   UM0030846L
PLAN NAME:   ADJUSTABLE LIFE
INSURED: DIANA SPIRA
BASIS:   STANDARD NON-TOBACCO

AGE:    84 FEMALE

| POLICY YEAR | ANNUAL PREMIUM | ------CURRENT BASIS*------ | | | ------GUARANTEED BASIS------ | | |
|---|---|---|---|---|---|---|---|
| | | DEATH BENEFIT BEG OF YR | ACCUM VALUE | CASH VALUE | DEATH BENEFIT BEG OF YR | ACCUM VALUE | CASH VALUE |
| 1 | 380100 | 5000000 | 65652 | 0 | 5000000 | 0 | 0 |
| 2 | 380100 | 5000000 | 133939 | 8939 | 5000000 | 0 | 0 |
| 3 | 380100 | 5000000 | 207509 | 87509 | 5000000 | 0 | 0 |
| 4 | 380100 | 5000000 | 288847 | 178847 | 5000000 | 0 | 0 |
| 5 | 380100 | 5000000 | 372477 | 287477 | 5000000 | 0 | 0 |
| 6 | 380100 | 5000000 | 555295 | 465295 | 5000000 | 0 | 0 |
| 7 | 380100 | 5000000 | 738684 | 648584 | 5000000 | 0 | 0 |
| 8 | 380100 | 5000000 | 820148 | 835148 | 5000000 | 0 | 0 |
| 9 | 380100 | 5000000 | 1095329 | 1020329 | 5000000 | 0 | 0 |
| 10 | 380100 | 5000000 | 1223201 | 1153201 | 5000000 | 0 | 0 |
| 11 | 380100 | 5000000 | 1297448 | 1242448 | 5000000 | 0 | 0 |
| 12 | 380100 | 5000000 | 1332283 | 1292283 | 5000000 | 0 | 0 |
| 13 | 380100 | 5000000 | 1323500 | 1298800 | 5000000 | 0 | 0 |
| 14 | 380100 | 5000000 | 1271498 | 1261498 | 5000000 | 0 | 0 |
| 15 | 380100 | 5000000 | 1115510 | 1115510 | 5000000 | 0 | 0 |
| 16 | 380100 | 5000000 | 762150 | 762150 | 5000000 | 0 | 0 |
| 17 | ***0 | ***0 | ***0 | ***0 | ***0 | ***0 | ***0 |
| AGE 100 | 380100 | 5000000 | 762150 | 762150 | 5000000 | 0 | 0 |

THE COMPANY IS CURRENTLY DEDUCTING 8.50% FROM EACH PREMIUM PAYMENT
RECEIVED. THE PERCENTAGE TO BE DEDUCTED FROM FUTURE PREMIUM PAYMENTS MAY
VARY BUT WILL NEVER EXCEED 7.50%.

MONTHLY DEDUCTIONS CURRENTLY INCLUDE A MONTHLY ADMINISTRATION FEE OF $5.00.
THE AMOUNT OF THE FEE MAY VARY BUT WILL NEVER EXCEED $7.00.

MONTHLY DEDUCTIONS WILL INCLUDE AN EXPENSE CHARGE OF  $8,627.30 DURING THE
FIRST FIVE POLICY YEARS. AN EXPENSE CHARGE WILL ALSO APPLY TO ANY INCREASE
IN BASE COVERAGE DURING THE FIRST FIVE POLICY YEARS OF SUCH INCREASE.

SURRENDER CHARGES FOR THE INITIAL BASE COVERAGE AMOUNT WILL APPLY IF SUCH
AMOUNT IS SURRENDERED OR REDUCED DURING THE SURRENDER CHARGE PERIOD.
SURRENDER CHARGES FOR ANY INCREASES TO THE BASE COVERAGE AMOUNT WILL APPLY
IF SUCH INCREASES ARE SURRENDERED OR REDUCED DURING THE SURRENDER CHARGE
PERIOD OF EACH INCREASE. THE SURRENDER CHARGE PERIOD WILL VARY ACCORDING TO
THE AGE AT ISSUE (OR ON THE DATE OF AN INCREASE). THE SURRENDER CHARGE RATES
PER $1000 OF BASE COVERAGE AND THE SURRENDER CHARGE PERIOD FOR ALL ISSUE
AGES ARE SHOWN IN THE TABLE OF SURRENDER CHARGES.

CONTINUED ON NEXT PAGE
PAGE 1 OF 2

04337

```
3/29/06 4:47P
579797004429
```

**STATEMENT OF POLICY COST AND BENEFIT INFORMATION**    03/28/2006

AMERICAN GENERAL LIFE INS CO
2727-A ALLEN PARKWAY
HOUSTON, TEXAS  77019-2115

FOR ADDITIONAL INFORMATION
ABOUT THIS POLICY CONTACT:
DAVID GOTTDENGER
4546 CORPORATE DR STE 155
WEST DES MOINES IA 50266-5911

PREPARED FOR:    SIMON SPIRA
POLICY NUMBER:   LM0030846L

| INTEREST ADJUSTED INDEXES(5.00%) | CURRENT BASIS* | | GUARANTEED BASIS | |
|---|---|---|---|---|
| BASIC POLICY ONLY | 10 YEAR | 20 YEAR | 10 YEAR | 20 YEAR |
| NET PAYMENT COST INDEX | 78.02 | N/A | 78.02 | N/A |
| SURRENDER COST INDEX | 58.56 | N/A | 78.02 | N/A |

AN EXPLANATION OF THE INTENDED USE OF THESE INDEXES IS GIVEN IN THE "LIFE INSURANCE BUYER'S GUIDE". THE ACTUAL COST MAY INCREASE OR DECREASE DEPENDING ON FUTURE CHARGES, INTEREST RATES AND TIME OF SURRENDER, BUT WILL NEVER BE MORE THAN THE GUARANTEED COST.

*** ILLUSTRATED PREMIUMS INSUFFICIENT TO PROVIDE THE PATTERN OF REQUESTED BENEFITS ON THE GUARANTEED BASIS.

UNDER CURRENT FEDERAL TAX LAW, THE BENEFITS AND ACCUMULATIONS IN THIS POLICY WILL BE TREATED AS LIFE INSURANCE BENEFITS AND ACCUMULATIONS FOR FEDERAL TAX PURPOSES ONLY IF THE SUM OF THE PREMIUMS PAID LESS WITHDRAWALS DOES NOT EXCEED FEDERAL GUIDELINES AT ANY TIME.

* CURRENT BASIS VALUES ASSUME THAT CURRENT INTEREST AND COST OF INSURANCE RATES REMAIN UNCHANGED. THE GUARANTEED INTEREST RATE IS 3.00%. THE CURRENT INTEREST RATE IS 4.40% AS OF MARCH 2006, AND THEREAFTER.

EXCEPT FOR PREFERRED LOANS, THE ANNUAL POLICY LOAN INTEREST RATE IS 4.76% PAYABLE IN ADVANCE. FOR PREFERRED LOANS, LOAN INTEREST WILL ACCRUE DAILY AT AN ANNUAL EFFECTIVE RATE OF NOT LESS THAN 3.85% NOR MORE THAN 4.08%. THE RATE OF INTEREST THAT WILL BE CREDITED TO POLICY VALUES OFFSET BY POLICY LOANS WILL BE AT AN ANNUAL EFFECTIVE RATE OF NOT LESS THAN 4.0% NOR MORE THAN 5.0%.

AFTER THE 5TH POLICY YEAR, THE POLICY WILL BE ELIGIBLE FOR A CURRENT INTEREST BONUS IF THE CURRENT INTEREST RATE IS GREATER THAN THE GUARANTEED RATE OF 3.00%. THE BONUS CREDITED EACH MONTH WILL INCREASE THE DECLARED ANNUAL INTEREST RATE APPLIED TO THE ACCUMULATION VALUE NOT OFFSET BY A POLICY LOAN BY .10%.

**IMPORTANT NOTICE**

THE PROJECTED RESULTS OF YOUR INSURANCE PROGRAM MAY CHANGE WITH VARIATIONS IN THE INTEREST RATES, COST OF INSURANCE, EXPENSE FACTORS, AND THE FREQUENCY, TIMING, AND AMOUNT OF YOUR PREMIUM PAYMENTS. YOU SHOULD READ AND STUDY YOUR POLICY AND POLICY SUMMARY VERY CAREFULLY.

NOTE:  THE TAX STATUS OF THIS POLICY AS IT APPLIES TO THE HOLDER OF THIS POLICY SHOULD BE REVIEWED EACH YEAR.

04337              **PAGE 2 OF 2**

# AIG | AMERICAN GENERAL

**Notice Regarding Replacement**
**New Jersey Version**

☐ American General Life Insurance Company
☐ American General Life and Accident Insurance Company
Member companies of American International Group, Inc.

**Please check the appropriate Company box**

## IMPORTANT NOTICE: REPLACEMENT OF LIFE INSURANCE OR ANNUITIES

**This document must be signed by the applicant and the producer, if there is one, and a copy left with the applicant.**

I do not want this notice read aloud to me. _____ (Applicants must initial only if they do not want the notice read aloud.)

You are contemplating the purchase of a life insurance policy or annuity contract. In some cases this purchase may involve discontinuing or changing an existing policy or contract. If so, a replacement is occurring. Financed purchases are also considered replacements.

A *replacement* occurs when a new policy or contract is purchased and, in connection with the sale, you discontinue making premium payments on the existing policy or contract, or an existing policy or contract is surrendered, forfeited, assigned to the replacing insurer, or otherwise terminated or used in a financed purchase.

A *financed purchase* occurs when the purchase of a new life insurance policy involves the use of funds obtained by the withdrawal or surrender of or by borrowing some or all of the policy values, including accumulated dividends, of an existing policy to pay all or part of any premium or payment due on the new policy. A financed purchase is a replacement.

You should carefully consider whether a replacement is in your best interest. You will pay acquisition costs and there may be surrender costs deducted from your policy or contract. You may be able to make changes to your existing policy or contract to meet your insurance needs at less cost. A financed purchase will reduce the value of your existing policy and may reduce the amount paid upon the death of the insured.

**Are You Replacing Coverage?** We want you to understand the effects of replacements before you make your purchase decision and ask that you answer the following questions and consider the questions on the back of this form.

1. Are you considering discontinuing making premium payments, surrendering, forfeiting, assigning to the insurer, or otherwise terminating your existing policy or contract? ___YES   ☒ NO

2. Are you considering using funds from your existing policies or contracts to pay premiums due on the new policy or contract? ___YES   ☒ NO

**Applicant's and Producer's Non-Replacement Certification.** Having answered "no" to questions 1 and 2, no replacement of coverage is occurring. We certify that the above two responses are, to the best of our knowledge, accurate.

X _____   Date 3/26/06

Applicant's Signature and Printed Name

X _____ DAvid Gottdenger   Date 3/26/06

Producer's Signature and Printed Name

**If signed above, do not complete the remainder of the form.**

If you answered "yes" to either question 1 or 2, complete the remainder of this form, as directed.

List each existing policy or contract you are contemplating replacing (include the name of the insurer, the insured or annuitant, and the policy or contract number if available) and whether each policy or contract will be replaced or used as a source of financing:

| INSURER NAME | CONTRACT OR POLICY # | INSURED OR ANNUITANT | REPLACED (R) OR FINANCING (F) |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |

Make sure you know the facts. Contact your existing company or its producer for information about the old policy or contract. If you request one, an in force illustration, policy summary or available disclosure documents must be sent to you by the existing insurer. Ask for and retain all sales material used by the producer in the sales presentation. Be sure that you are making an informed decision.



6/2/06 8:49AM

## Health Statement
### Policy Acceptance Acknowledgement
### American General Life Insurance Company

Insured(s):          **DIANA SPIRA**
Policy Number:     **UM0030846L**

I hereby acknowledge receipt and acceptance of the policy described above.

I represent, on behalf of myself and any dependent that may have been proposed for insurance, that to the best of my knowledge and belief:

1. There have been no changes since the date of the application in either health or in any other condition which would affect insurability; and

2. Neither I nor any other proposed insured has, since the date of the application:

   A. Consulted a doctor or other practitioner or received medical or surgical advice or treatment.
   B. Acquired any knowledge or belief that any statements made in the application are now inaccurate or incomplete.

I hereby represent that I have read, understand and verify the accuracy of the statements made above. I agree that this Acknowledgment will be made a part of the policy. I understand that if any statement above is not true, I should not sign this form. Instead, I should have the policy returned to the Company with full details for further underwriting consideration.

Dated this _____1_____ day of _____June_____, 20 06

_____        _____
Witness                                 Proposed Insured


_____        _____
Witness                                 Signature of Second Proposed Insured
                                        (if applicable)

                                        _____
                                        Owner (if other than Insured)

### Midwest Operations Center
PO Box 401 • Milwaukee, WI 53201-0401

MAGLNB045

# AIG | AMERICAN GENERAL

**Part A  Life Insurance Application**

☐ **American General Life Insurance Company, Houston, TX**
☐ **The United States Life Insurance Company in the City of New York, New York, NY**

Members of American International Group, Inc.
In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

**1. Primary Proposed Insured**

Name **DIANA SPIRA**    Social Security # **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**  Sex ☐M ☒F

Birthplace (state, country) **HUNGARY**    Date of Birth **7/13/1922**    Age ___

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☒ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. **NA**    State ___  U.S.Citizen ☒ yes ☐ no  If no, Date of Entry ___  Visa Type ___

Address **23 LENORE AV.**    City, State **Monsey N.Y.**    ZIP **10952**

Home Phone **(845) 356 0328** Work Phone ( )    E-mail Address _____

Employer **Retired**    Occupation _____    Length of Employment ___

Employer Address _____    City, State _____    ZIP ___

Duties **HOUSE WIFE, GRAND MOTHER**

Personal Income $ _____  Household Income $ **600 000**  Net Worth $ **13 000 000**

**2. Other Proposed Insured**

Name _____    Social Security # _____  Sex ☐M ☐F

Birthplace (state, country) _____    Date of Birth _____    Age ___

Relationship to Primary Proposed Insured _____

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. _____    State ___  U.S.Citizen ☐ yes ☐ no  If no, Date of Entry ___  Visa Type ___

Address _____    City, State _____    ZIP ___

Home Phone ( )    Work Phone ( )    E-mail Address _____

Employer _____    Occupation _____    Length of Employment ___

Employer Address _____    City, State _____    ZIP ___

Duties _____

Personal Income $ _____  Household Income $ _____  Net Worth $ _____

**3. Child Rider** (Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section. Remember to complete Part B, sections 3-7, for all proposed insured children.)

| Child Name | Sex | Birthplace (state, country) | Date of Birth |
|---|---|---|---|
| _____ | ☐M☐F | _____ | _____ |
| _____ | ☐M☐F | _____ | _____ |
| _____ | ☐M☐F | _____ | _____ |

AGLC100565-2003

Page 1 of 7    NJ

| Ownership |
|---|

**4. Owner** ☐ Primary Proposed Insured  ☐ Other Proposed Insured  ☐ Trust  ☒ Other than a Proposed Insured or Trust

A. Complete if the proposed insured is not the owner (if contingent owner is required, use Remarks section.)

Name Simon Spira  Social Security or Tax ID # 107 18 1100  Date of Birth 9/17/1921

Address 23 Lenore Av.  City, State Monsey N.Y.  ZIP 10952

Home Phone ( ) Same  Relationship to Primary Proposed Insured Spouse

B. Complete if owner is a trust (if trustee is premium payor, also complete section 14 D.)

Exact Name of Trust _____  Trust Tax ID # _____

Current Trustee(s) _____  Date of Trust _____

| Product Information |
|---|

**5.** Product Name (if variable, complete appropriate supplement.) Corlin UL

Amount Applied For: Base Coverage $ 5000,000  Supplemental Coverage (if applicable) $ _____

Death Benefit Compliance Test Used (if applicable): ☐ Guideline Premium  ☐ Cash Value Accumulation

Automatic Premium Loan (if applicable): ☐ Yes ☐ No

Premium Class Quoted _____

Reason for Insurance Estate

**6.** Dividend Options (For participating policy only.)

☐ Cash  ☐ Premium Reduction  ☐ Paid-up Additions  ☐ Deposit Earning Interest  ☐ Other (Explain) _____

**7.** Death Benefit Options (For UL & VUL only.) ☒ Option 1 – Level  ☐ Option 2 – Increasing  ☐ Option 3 – Level Plus Return of Premium

**8.** Riders ☐ Waiver of Premium  ☐ Waiver of Monthly Deduction  ☐ Waiver of Monthly Guarantee Premium

☐ Maturity Extension Rider – Accumulation Value  ☐ Maturity Extension Rider – Death Benefit  ☐ Terminal Illness Rider

☐ Accidental Death Benefit $ _____  ☐ Other Insured $ _____  ☐ Child $ _____

☐ Spouse $ _____ Plan _____  ☐ Other Rider(s) _____

| Beneficiary |
|---|

**9. Primary** Name All Children from Insurd  Relationship Children  % Share 100

Name _____  Relationship _____  % Share _____

**10. Contingent** Name _____  Relationship _____  % Share _____

Name _____  Relationship _____  % Share _____

**11. Trust Information** Exact Name of Trust _____  Trust Tax ID # _____

Current Trustee(s) _____  Date of Trust _____

**12. Rider Beneficiaries** Spouse Rider _____  Child Rider _____

| Business Coverage |
|---|

**13. Business Details** (Complete only if applying for business coverage.)

Does any proposed insured have an ownership interest in the business? ☐ yes ☐ no

If yes, what is the percentage of ownership for the: Primary Proposed Insured _____  Other Proposed Insured _____

If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no

Describe any special circumstances. _____

| Premium |
|---|

**14. Premium Payment** ☒ Modal $ 380,100  ☐ Single $ _____  ☐ Additional Initial $ _____

A. Frequency of modal premium: ☒ Annual  ☐ Semi-annual  ☐ Quarterly  ☐ Monthly (Bank draft)

B. Method: ☐ Direct Billing  ☐ Bank Draft (Complete Bank Draft Authorization.)  ☐ List Bill: Number _____

☐ Other (Please explain) _____

C. Amount submitted with application $ _____

D. Premium Payor (Complete if other than proposed insured.)

Name _____  Social Security or Tax ID # _____  Home Phone ( )

Address _____  City, State _____  ZIP _____

AGLC106695-2003

Page 2 of 7

---

**Existing Coverage**

15. **Other Life Insurance or Annuities**   *(Indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*
Does any proposed insured have any existing or pending annuity or life insurance contracts?
*(If yes, indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*   ☐ yes ☐ no
Type:   I = individual, b = business, g = group, p = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| DIANA SPIRA | | NYL | I | 1991 | 100,000 | ☐ yes | ☐ yes |
| DIANA SPIRA | | NYL | I | 1995 | 250,000 | ☐ yes | ☐ yes |
| DIANA SPIRA | | NYL | I | 1997 | 1,500,000 | ☐ yes | ☐ yes |
| DIANA SPIRA | | AIG | I | 2005 | 5,000,000 | ☐ yes | ☐ yes |

\* Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity.  If replacement may be involved, complete and submit replacement-related forms.  Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

---

**Limited Temporary Life Insurance Eligibility**

16. **Health and Age Questions**   *(If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*

   A. Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?   ☐ yes ☒ no

   B. Is any proposed insured age 71 or above?   ☒ yes ☐ no

---

**Nonmedical Questions**

17. **Background Information**   *(Complete questions A through F for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details specified after each question.)*

   A. Do any proposed insured intend to travel or reside outside of the United States or Canada within the next two years?   ☐ yes ☒ no
   *(If yes, list proposed insured's name, country, date, length of stay and purpose.)*

   B. In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?   ☐ yes ☒ no
   *(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*

   C. Have any proposed insureds:
   1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?   ☐ yes ☒ no
   *(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)*

   2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?   ☐ yes ☒ no
   *(If yes, list proposed insured's name, date and reason.)*

   D. Have any proposed insureds ever filed for bankruptcy?   *(If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)*   ☐ yes ☒ no

   E. In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?   *(If yes, list proposed insured's name, date, state, license no. and specific violation.)*   ☐ yes ☒ no

   F. Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charge pending against them?   *(If yes, list proposed insured name, date, state and felony.)*   ☐ yes ☒ no

---

**Remarks**

18. **Details and Explanations**

AGLC100565-2000

| Authorization and Signatures |
| --- |

**American General Life Insurance Company, Houston, TX**     **The United States Life Insurance Company in the City of New York, New York, NY**

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

**Authorization to Obtain and Disclose Information and Declaration**

I give my consent to all of the entities listed below to give to the Company, its legal representative, American General Life Companies (AGLC) (an affiliated service company), and affiliated insurers all information they have pertaining to: medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; or any other information for me, my spouse or my minor children. Other information could include items such as: personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records; or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report. ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement – If eligible, I have received and accepted the LTLIA. Such insurance is available only if: (1) the full first modal premium is submitted with this application; and (2) only "no" answers have been given by any proposed insured to the Health and Age Questions.

| Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien). |
| --- |

**Proposed Insured(s)/Owner Signature(s)**

Signed at (city, state)   NEWARK NJ     On (date)   3 26 06

X _____     X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)   Other Proposed Insured (if under age 15, signature of parent or guardian)

X _____
Owner (if other than proposed insured)

**Agent(s) Signature(s)**

I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

DAVID Gottdenger

Writing Agent Name (please print)     Writing Agent #

X _____     X _____
Writing Agent Signature     Countersigned (Licensed resident agent if state required)

| If the Company needs to contact the proposed insured(s), when would be the best time to call? | | | |
| --- | --- | --- | --- |
| Time | Day of the Week | Date | Phone # ( ) |

AGLC100885-2005     Page 4 of 7

**AIG** • **AMERICAN GENERAL**

**Part B  Life Insurance Application**
**New Jersey Version**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.
In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
| --- |

**1.** Primary Proposed Insured
Name _Diana Serra_          Date of Birth _07/13/22_    Social Security # _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_

**2.** Other Proposed Insured
Name _____    Date of Birth _____    Social Security # _____

**3.** Children *(Provide name and date of birth for all children.)*

| Medical History |
| --- |

**4.** Physician Information
Name and address of each proposed insured's personal physician(s).  *(Write None if proposed insured(s) do not have one.)*
Primary Proposed Insured _Dr. Israel  #59 Suffern, N.Y._
Other Proposed Insured _____
Child(ren) _____
Name of insured, date, reason, findings and treatment at last visit
_2005 - Routine checkup_
_none_

**5.** Height and Weight
Primary Proposed Insured _5_ ft. _3_ in. _127_ lbs.  Other Proposed Insured _____ ft. _____ in. _____ lbs.
Child Name _____ _____ ft. _____ in. _____ lbs.  If less than 1 yr. old, weight at birth _____
Child Name _____ _____ ft. _____ in. _____ lbs.  If less than 1 yr. old, weight at birth _____
Child Name _____ _____ ft. _____ in. _____ lbs.  If less than 1 yr. old, weight at birth _____
Has any proposed insured had any weight change in excess of 10 lbs. in the past year?  ☐ yes ☐ no  If yes, complete:
Name _____ Loss____ lbs. Gain____ lbs. Reason _____

**6.** Family History

| | Age if Living | Age at Death | Heart Disease? | Cancer History? |
| --- | --- | --- | --- | --- |
| Primary Proposed Insured | | | | |
| Father | ____ | ____ | ☑No ☐Yes, age of onset ____ | ☑No ☐Yes, age of onset ____ Type ____ |
| Mother | ____ | ____ | ☑No ☐Yes, age of onset ____ | ☑No ☐Yes, age of onset ____ Type ____ |
| Other Proposed Insured | | | | |
| Father | ____ | ____ | ☐No ☐Yes, age of onset ____ | ☐No ☐Yes, age of onset ____ Type ____ |
| Mother | ____ | ____ | ☐No ☐Yes, age of onset ____ | ☐No ☐Yes, age of onset ____ Type ____ |

AGLC 100568-NJ

Page 1 of 4

**7. Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**A.** Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?  ☐ yes ☑ no

2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?  ☐ yes ☑ no

3) cancer, tumors, masses, cysts or other such abnormalities?  ☐ yes ☑ no

4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?  ☐ yes ☑ no

5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?  ☑ yes ☐ no

6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?  ☐ yes ☑ no

7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?  ☐ yes ☑ no

8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?  ☐ yes ☑ no

9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?  ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|

A5. open cholecystectomy in 1990 for suspected cancer of the gall bladder. Pathology was found to be benign

**B.** Is any proposed insured currently taking any medication, treatment or therapy or under medical observation? *(If yes, explain.)*  ☑ yes ☐ no

| Name of Proposed Insured | Details |
|---|---|

Zantac 150mg

**C.** Has any proposed insured in the past three years had but not sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis?  ☐ yes ☑ no

2) any pain or discomfort in the chest or shortness of breath?  ☐ yes ☑ no

3) disorders of the stomach, intestines or rectum, or blood in the urine?  ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|

**Personal Health History (cont.)**

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D.** Has any proposed insured ever:

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?  ☐ yes ☑ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician?  ☐ yes ☑ no

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E.** Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)? *(If yes, explain.)*  ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**F.** In the past 10 years, has any proposed insured:

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?  ☐ yes ☑ no

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs?  ☐ yes ☑ no

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed?  ☐ yes ☑ no

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition?  ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**G.** Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above? *(If yes, explain.)*  ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## Statements and Signatures

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Proposed Insured(s) Signature(s)**

Signed at *(city, state)* ___Brooklyn, NY___    On *(date)* ___12/1/05___

X ___Diam Afini___    X _____
Primary Proposed Insured *(if under age 15, signature of parent or guardian)*    Other Proposed Insured *(if under age 15, signature of parent or guardian)*

**Signature(s) of Interviewer(s)**

To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

Writing Agent Name *(please print)* _____    Writing Agent # _____

X _____    X _____
Writing Agent Signature    Countersigned *(Licensed resident agent if state required)*

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

Other Company Representative Name *(please print)* _____    Company _____

X _____
Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**

Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the ___1___ day of ___Dec___, 20 ___05___, at _____ ☐ am ☐ pm

Examiner's Address    **PORTAMEDIC**
METRO - NEW YORK 338-16
Examiner's Phone #    (    ) 917-577-1960

Examiner's Name ___Lita Shaffer___

Examiner's Signature X ___Lita Shaffer ms___

Paramed: Use company stamp below.

| Physical Measurements |
|---|

**1.** **Primary Proposed Insured**

**A.** Name _Diana Spira_

**B.** Build: Height *(in shoes)* __5__ ft. __3__ in.   Weight *(clothed)* _127_ lbs. *(Please weigh insured.)*

**C.** Blood Pressure *(Record all readings.)*

If blood pressure exceeds 140/90, please repeat determination at end of examination and record in space provided.

Treated ☐ yes ☐ no   Rx _____

|  | Initial Measurement | Repeat Measurement |
|---|---|---|
| Systolic BP | 40 |  |
| Diastolic 5th Phase BP | 62 |  |
| Pulse Rate | 04 |  |
| Irregularities Per Min. | 0 |  |

**D.** Other *(Males only)*: Chest *(Full Inspiration)* _____ Chest *(Forced Expiration)* _____ Abdomen *(at Umbilicus)* _____

**2.** **Other Proposed Insured**

**A.** Name _____

**B.** Build: Height *(in shoes)* _____ ft. _____ in.   Weight *(clothed)* _____ lbs. *(Please weigh insured.)*

**C.** Blood Pressure *(Record all readings.)*

If blood pressure exceeds 140/90, please repeat determination at end of examination and record in space provided.

Treated ☐ yes ☐ no   Rx _____

|  | Initial Measurement | Repeat Measurement |
|---|---|---|
| Systolic BP |  |  |
| Diastolic 5th Phase BP |  |  |
| Pulse Rate |  |  |
| Irregularities Per Min. |  |  |

**D.** Other *(Males only)*: Chest *(Full Inspiration)* _____ Chest *(Forced Expiration)* _____ Abdomen *(at Umbilicus)* _____

| Report By Examining Medical Doctor |
|---|

**Instructions to doctor:**

To be completed in private by doctor only. This report is confidential between the Company and the doctor. Examination of heart and lungs must be with stethoscope against bare skin.

1. Name of person examined _Diana Spira_

2. Did you weigh proposed insured?    ☑ yes ☐ no

3. Is appearance unhealthy or older than stated age?    ☐ yes ☑ no

4. Heart

    a. Is there any cyanosis, edema, or evidence of peripheral vascular disease, arteriosclerosis or other cardiovascular disorder?    ☐ yes ☑ no

    b. Is heart enlarged? *(If yes, describe.)* _____    ☐ yes ☑ no

    c. Is murmur present? *(If yes, complete 4d.)* _____    ☐ yes ☑ no

    d. Before exercise, murmur is:

      ☐ Constant   Transmitted to where? _____

      ☐ Inconstant   Localized at:   ☐ Apex   ☐ Base   ☐ Elsewhere

      ☐ Systolic *(Give details.)* _____

      ☐ Diastolic   Murmur grade:   1/6   2/6   3/6   4/6   5/6   6/6   *(please circle)*

    After valsalva, murmur is:

      ☐ Unchanged   ☐ Decreased   ☐ Increased   ☐ Absent

    Your impression: _____

AGLC 100885-NJ

Exam page 1

**Report by Examining Medical Doctor (continued)**

5. Has this examination revealed any abnormally of the following: (Circle applicable items if listed.)
   a) Eyes, ears, nose, mouth and throat? (If vision or hearing markedly impaired, indicate degree and correction.)  ☐yes ☑no
   b) Endocrine system (including thyroid)?  ☐yes ☑no
   c) Nervous system (including reflexes, gait, paralysis)?  ☐yes ☑no
   d) Respiratory system?  ☐yes ☑no
   e) Abdomen (including scars)?  ☐yes ☑no
   f) Genito-urinary system?  ☐yes ☑no
   g) Skin (including scars), lymph nodes, blood vessels (including varicose veins)?  ☑yes ☐no
   h) Musculoskeletal system (including spine, joints, amputations, deformities)?  ☐yes ☑no

6. Do you have any pertinent information not disclosed above? (If yes, describe in question 9.)  ☐yes ☑no

7. Have any of the following been completed in conjunction with this exam?  ☐yes ☑no
   ☐ Blood  ☐ Urine  ☐ EKG  ☐ Stress Test  ☐ Chest x-ray

8. Specimen kit
   Please indicate where and when specimen kit was sent    ☑CRL    ☐ Other _____    Date mailed _____

9. Details of yes answers to Questions 1–8

   9. Scar from cholecystectomy

10. Are you related to the proposed insured by blood or marriage or do you have any business or professional relationship with the proposed insured? (If yes, explain.)  ☐yes ☑no

---

**Signatures**

**Paramedical Examiner/Medical Doctor Signature**

I certify that this exam was conducted the ___1___ day of __Dec__, __2005__ at _____  ☐am ☐pm

Location of Exam    Brooklyn, NY.

Authorized By    Brokerage Clearing House

Examiner's Address

Examiner's Phone #    PORTAMEDIC
                      METRO - NEW YORK 338-15
                      3-17-377-1950

Examiner's Name

Examiner's Signature    X _____ MD

Paramed: Use company stamp below.

# AMERICAN GENERAL LIFE
**Insurance Company**
A Stock Company

This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY. Adjustable Death Benefit is payable upon the Insured's death prior to the Maturity Date and while this policy is in force. Premium payments are flexible and payable to the Maturity Date. ACCUMULATION VALUES and CASH VALUES are flexible and will be based on the amount and frequency of premiums paid, and the amount of interest credited. Policy contains a current interest bonus. NONPARTICIPATING - NOT ELIGIBLE FOR DIVIDENDS.

**For Information, Service or to make a Complaint**

Contact your Servicing Agent, or our Policyowner Service Department

**2727-A Allen Parkway
P.O. Box 1931
Houston, Texas 77251
1-800-231-3655**

04337

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Robert P. Lesko (RPL 1553)
33 Washington Street
Newark, New Jersey 07102-3017
(973) 624-0800 ph.
(973) 624-0799 fx.
Attorneys for plaintiff,
American General Life Insurance Company

---

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY : <br> : <br> Plaintiff, : <br> : <br> vs. : <br> : <br> DIANA SPIRA 2005 IRREVOCABLE LIFE INSURANCE TRUST, AARON AZRYLEWITZ, as Trustee, and SIMON SPIRA : <br> : <br> : <br> Defendants. : <br> : | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISRICT OF NEW YORK <br><br> Civil Action No: <br><br> **CERTIFICATE OF SERVICE** |

I hereby certify that on behalf of the defendant, I caused copies of the attached Summons, Complaint with Exhibits, Civil Cover Sheet and Corporate Disclosure Statement to be delivered on this date to the Clerk, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4150

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for plaintiff,
American General Life Insurance Company

By: _____
        Robert P. Lesko (RPL 1553)

Dated: July 28, 2008