# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

33 Washington Street, Newark, NJ 07102-3017
Tel: 973.624.0800   Fax: 973.624.0808

*Albany ●Baltimore ●Boston ●Chicago ●Dallas ●Garden City ●Houston ●Las Vegas ●London ●Los Angeles ●McLean*
*Miami ●Newark ●New York ●Orlando ●Philadelphia ●San Diego ●San Francisco ●Stamford ●Washington, DC ●White Plains*
*Limited Liability Partnership of NY*
*Affiliates:  Berlin ●Cologne ●Frankfurt ●Mexico City ●Munich ●Paris*

| | | | |
|---|---|---|---|
| JAMES CRAWFORD ORR | MATTHEW S. MAHONEY | JOANNA PIOREK | MATHEW BRODERICK |
| WILLIAM J. RIINA | KEVIN C. DONOVAN | KURT H. DZUGAY | BRUCE W. MCCOY, JR. |
| THOMAS F. QUINN | JAMES S. REHBERGER | GINA CALABRIA | MICHAEL L. SOLOMON |
| BARBARA HOPKINSON KELLY | JOSEPH T. HANLON | JOHN W. WILLIAMS | RENEE D. PACCIONE |
| CAROLYN F. O'CONNOR | ROBERT LESKO | SHAUN S. McGREGOR | DANIEL E. ZEMSKY |
| KENNETH M. BROWN | RENEE J. SHERMAN | KIM M. CONNOR | C. TY NGUYEN |
| DANIEL F. FLORES | ROBERT T. GUNNING | ADAM S. PICINICH | JESSICA BRENNAN |
| WILLIAM P. KRAUSS | GREGG S. KAHN | JOHN J. SHOTTER | TIMOTHY WISS |
| MICHAEL J. NAUGHTON | ADAM J. KIPNIS | PETER A. SWIFT | KATHERINE POTTER |
| MARTIN J. SULLIVAN | | ERIC T. EVANS | MELISSA D. LANDAU |
| JOSEPH A. GALLO | ——— | GREGORY T. FOOTE | KAREN D.VARINA |
| ROBERT A. BERNS | OF COUNSEL: | JULIE VON BEVERN | JOHN W. ROESER |
| KURT W. KRAUSS | ROBERT C. NEFF, JR. | MICHAEL L. TRUCILLO | |
| KELLY A. WATERS | JOHN P. O'TOOLE | | |
| COLIN P. HACKETT | SUNA LEE | | |
| BRIAN J. WHITEMAN | CHRISTOPHER W. McCLANAHAN | | |
| SUSAN KARLOVICH | LINDA K. SMITH | | |

——————————
KEITH G. VON GLAHN (1952-2007)

www.wilsonelser.com

May 5, 2010

<u>Via ECF</u>
George A. Yanthis, U.S.M.J.
United States District Court
Southern District of New York
300 Quarropas St.
White Plains, New York 10601-4150

> **Re:**   ***American General Life Insurance Company v. Diana Spira 2005 Irrevocable***
> ***Life Insurance Trust, et al.***
> **Civil Action No.: 7:08-cv-06843-KMK**
> **Our File No.: 07478.0461**

Dear Magistrate Judge Yanthis:

As Your Honor is aware, this firm represents American General Life Insurance Company ("American General") in connection with the above referenced matter.  We write in response to Mr. Lipsius' correspondence dated April 19, 2010 and April 20, 2010 on behalf of defendants' request for judicial intervention pursuant to Local Rule 37.2.  The relief requested is both premature and inappropriate.  First, defendants did not meet and confer in good faith in an effort to resolve or narrow the dispute prior to seeking court intervention.  As more fully set forth below, if defendants had done that, Your Honor would have much less to consider.  Second, all of the defendants –Simon Spira, and the Trust defendants – continue to be in violation of their own discovery obligations, including Your Honor's direct orders.

Putting aside the prematurity of defendants' submission and defendants' own delinquency as to discovery obligations, defendants' discovery requests relating to other insurance applications are inappropriate.  Having finally been presented with the bases for defendants' discovery demands concerning other applications, which we first received by copy of counsel's April 19 letter, we maintain that such discovery is inappropriate because: the information sought is irrelevant and unduly burdensome; production of such information would necessarily lead to innumerable protracted mini-trials concerning each application submitted and

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 2

each policy issued in order to demonstrate its lack of relevance to the claims at issue here and
avoid the undue prejudice that would result if presented to the ultimate trier of fact.

### Defendants' Request for Judicial Intervention is Premature

Defendants' request for judicial intervention is premature because defendants have not
first attempted to resolve the purported deficiencies with American General prior to involving
the Court.  Defense counsel's statement that "we spoke with counsel for American General
regarding the discovery deficiencies and counsel let it be known that his client will not produce
anything further" is disingenuous, at best.  Mr. Lipsius has made passing comments regarding
purported deficiencies in American General's responses to discovery; these comments were
typically made during telephone calls in which we were demanding defendants' compliance with
discovery.  Those passing comments were limited to discovery concerning other insureds'
information and applications.  On each occasion, we requested that defense counsel articulate
defendants' specific demands and provide support so that we could consider it.  For example,
defense counsel purported to have orders in other cases requiring such production, and we
requested copies of the court orders.  However, counsel failed to produce the alleged orders, and
also failed to provide any other authority supporting defendants' demands.

Importantly, at no time prior to receipt of Mr. Lipsius' April 19 letter has counsel for
defendants objected to or requested supplemental responses or information concerning any other
interrogatory or document request.  Candidly, having read and considered Mr. Lipsius' April 19
letter, we are prepared to make supplemental production with respect to certain of the discovery
requests itemized by Mr. Lipsius without the need for court intervention.  Had Mr. Lipsius
conferred with us first, the discovery issues presented to Your Honor presently would be
significantly narrower.  We have prepared correspondence to defendants' counsel setting forth
supplemental responses.

### Defendants Themselves are in Default of Discovery Obligations

Meanwhile, defendants are themselves delinquent with respect to their own discovery
obligations despite our substantial and repeated efforts to secure their compliance.  As your
Honor is aware, American General was previously forced to seek Court intervention to (1)
enforce our subpoena directed to Kollel Emes V'Emunah Viznitz, Inc. ("KEVV"), seeking
documents and deposition testimony, (2) require the Trustee to appear for deposition in
compliance with duly issued notice for same, and; (3) compelling defendant Simon Spira's
compliance with discovery obligations (both written discovery and deposition) in accordance
with Your Honor's Order dated February 8, 2010.

As a preliminary matter, legal representation of Simon Spira has been particularly
confusing and problematic.  Defendants' counsel has suggested that they no longer represent Mr.
Spira.  However, to date we have seen no substitution or withdrawal of counsel.  On the contrary,
despite counsel's representation that Mr. Spira had no desire to participate in this litigation and
his demonstrated lack of cooperation, defendants' counsel has purported to act on his behalf

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 3

resulting in undue delay and confusion.  For example, during the March 29, 2010 conference call with Your Honor, Mr. Lipsius confirmed that his firm answered American General's Requests for Admission directed to Mr. Spira on behalf of Mr. Spira.  Subsequently, during his long-awaited, court-ordered deposition on April 20, 2010, Mr. Spira confirmed that he never even saw the requests for admission and did not provide any answers to them.  Consequently, American General is considering a motion to vacate the responses to the requests for admission directed to Simon Spira, which we will discuss further with defendants' counsel before seeking court intervention.

Despite Mr. Spira's appearance for his court-ordered deposition on April 20 under threat of further sanctions for contempt, defendants remain in substantial violation of Your Honor's March 29, 2010 order.  Specifically, Mr. Spira has still failed to provide discovery responses to American General's Interrogatories or Requests for Production of documents by April 12, 2010 as ordered by Your Honor.[1]  The Trust defendants are also in direct violation of the March 29th order.  Mr. Azrylewitz did not appear for deposition on or before April 30 as ordered.  On at least two separate occasions (March 30, April 13), we offered a choice of several dates prior to April 30 for the deposition.  We also apprised defendants' counsel that the undersigned would be traveling on other matters from April 26 through April 30.  We did not even get a response to our inquiries until after 7:00 pm on April 26, 2010, when defendants' counsel offered to produce Mr. Azrylewitz on an unspecified date during the week of May 3, 2010, after the deadline set forth in Your Honor's order.  Mr. Azrylewitz's deposition has been tentatively scheduled for May 24, 2010, subject to Your Honors' approval, which is the first mutually convenient date for Mr. Azrylewitz's deposition.  Defendants are also delinquent with respect to providing authorizations for IRS records and an authorization for financial records to be executed by Mr. Spira and the Trust, which we sent to Mr. Lipsius on February 23, 2010.

In light of defendants' own failure to discharge their discovery obligations despite numerous informal requests and court orders requiring compliance, defendants should not be heard to complain about American General's purported delinquency.  Moreover, American General is in substantial (if not complete) compliance with its obligations.

### American General Timely Responded to Defendants' Discovery Requests and Did Not Waive its Objections

American General's responses to all of defendants' discovery requests were in substantial compliance with the rules, court order and agreement between the parties.  Unlike defendants, American General currently has no outstanding discovery obligations.  American General served its initial disclosures on June 8, 2009.[2]  Documents produced by American General consist of

---

[1] American General's discovery requests were served nearly a year ago on June 8, 2009.

[2] Documents pursuant to Rule 26(a)(1)(B) were identified in the initial disclosures, and our office unilaterally offered to copy the documents and provide them to defendants' counsel for their convenience, rather than requiring on-site inspection.  Due to an oversight, we neglected to transmit the copy to defendants' counsel at that time.  Notably, however, defendants' counsel did not follow up with American General for the copies for a full seven months.  When defendants finally did request the documents, American General produced them immediately on

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 4

more than 1,000 pages, not nine pages, as suggested in Mr. Lipsius' April 19 letter.  Additionally the documents were, in fact, produced with a privilege log, despite defendants' contention to the contrary.

Following receipt of defendants' discovery requests, this office requested from defendants' counsel, and defendants' counsel granted, several unconditional extensions of time to provide responses.  Each time we sought an extension of time in which to respond to defendants' discovery requests, we did so conscientiously and in good faith.  Defendants' counsel's consent to extend time was a routine professional courtesy; the same sort of courtesy that we have extended on innumerable occasions to defendants' counsel.  Thus, we were shocked by the gamesmanship underlying Mr. Lipsius' suggestion that the extensions were conditioned upon waiver of objections.  To be clear, American General most certainly did not waive any objections to defendants' discovery demands, and there was absolutely no understanding or condition imposed by defendants' counsel that any of the extensions obtained by American General would be conditioned upon waiver of any objection.

As Mr. Lipsius acknowledges in his April 19th correspondence, counsel agreed to a deadline of January 27, 2010 for service of discovery responses.  American General's discovery responses were in fact ready to be served on January 27, 2010; however, American General was awaiting execution of the responses by an authorized representative.  Two days later, on January 29, 2010 American General served its discovery responses on the Trust.  A delay of two days could hardly be considered "severe" enough to waive all objections.  *Contra Textil RV LtdA v. Italuomo, Inc*., 1994 U.S. Dist. LEXIS 1542 (D.N.Y. 1994)(harsh Rule 37 sanctions were appropriate where defendant had delayed providing discovery responses for **over a year,** and the record showed repeated demands for discovery, judicial conferences, oral orders, promises to comply, written orders, and warnings that sanctions would be imposed)(emphasis added).

New York courts have consistently declined to impose punishment for delayed discovery responses in the absence of serious circumstances.  For example, in *Tomlinson v. St. Paul Reinsurance Mgmt. Corp*., 1997 U.S. Dist. LEXIS 4369 (D.N.Y. 1997), defendants sought to preclude plaintiff from relying on any documents at trial which were not produced in a timely manner.  The court commented:

> We expect counsel and parties to comply with the time limits established by the governing rules, and there may be appropriate sanctions if a party inordinately delays in providing discovery responses. Where, however, the **delay is not longstanding** and **has not caused any demonstrable prejudice,** preclusion from use at trial is simply too blunt an instrument for redressing the matter.

*Id*. at *5-*6; *see also Benitez v. Straley*, 2008 U.S. Dist. LEXIS 10927 (D.N.Y. 2008) (plaintiff's motion for Rule 37 sanctions for defendants' late discovery responses denied, where no specific

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 5

date for discovery responses had been set by the Court and defendants' discovery responses were not made in bad faith").

Defendants have not met – and cannot meet – their burden of establishing that American General's discovery responses are insufficient.  *See Peterson v. Union Pac. R.R. Co.*, 2008 U.S. Dist. LEXIS 57500 (C.D. Ill. July 25, 2008) (a party seeking to compel discovery must demonstrate "actual and substantial prejudice resulting from the denial of discovery").  The cases relied on by defendants to support their contention that American General has waived its objections due to it's purportedly late discovery responses are not applicable to the present case.  For instance, *Senat v. City of New York*, 255 F.R.D. 338 (E.D.N.Y. 2009) and *Russo-Lubrano v. Brooklyn Federal Sav. Bank*, No. CV-06-672, 2007 U.S. Dist. LEXIS 98154, 2007 WL 2126086, at *2 (E.D.N.Y. July 23, 2007) involved situations in which the parties waived objections to discovery request because they **altogether** failed to respond to discovery request.   The court in *Carr v. Queens-Long Island Med. Group. P.C.*, 2003 U.S. Dist. LEXIS 974 (S.D.N.Y. Jan. 24, 2003) held that objections were waived in the extreme situation where a party delayed producing complete responses until the day before a hearing concerning the failure to comply with ***court-ordered deadlines for production***.   None of those circumstances are present here.  Additionally, American General notes that District Courts across the country have been extremely hesitant to hold that late discovery responses constitute waivers of any type.  *See, e.g., Mason C. Day Excavating v. Lumbermens Mut. Cas. Co*., 143 F.R.D. 601 (M.D.N.C. 1992) ("the filing of inadequate discovery responses, standing alone, will generally not justify a finding that the privilege or work product protection has been waived.").

### Defendants' Discovery Requests Regarding Unrelated "High-Value Life Policies" Issued by American General and Insuring the Lives of Elderly Individuals is Irrelevant and Disproportionately Burdensome.

Defendants' request for discovery related to other high-value policies issued by American General on the lives of elderly individuals is wholly irrelevant because it has absolutely no bearing upon American General's decision to issue the Policies in dispute in the present case. "The test 'is not whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application which it might otherwise have refused.'"  *John Hancock Life Ins. Co. v. Perchikov*, 553 F.Supp.2d 229 (E.D.N.Y. 2008) (*citing New England Life Ins. Co. v. Taverna*, 2002 WL 718755 at *9 (E.D.N.Y. Mar. 1, 2002)).  Even if other insurance application would reveal another case in which American General overlooked financial underwriting requirements, such information would, at best, demonstrate only that American General *might* have overlooked it here, too.  However, such evidence would not contribute to resolve the question as to whether American General was induced to issue the Policy which it *might* otherwise have refused, if true information had been provided.

Nor could American General's disregarding of financial information in another case (even if it has occurred) preclude it (by waiver or otherwise) from relying on its financial underwriting guidelines in this case.  The circumstances relating to the underwriting and issuance

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 6

of every application are unique in each case. Thus, as a matter of law, even if American General "waived" considerations of financial information in the underwriting processes for unrelated policies, that would not equate to a waiver in the case at hand. A party to a contract enjoys the right to waive or otherwise forgo certain rights without a blanket waiver of such rights in all circumstances. *See, e.g.*, *Nat'l Steel Corp. v. NLRB*, 324 F.3d 928 (7th Cir. 2003) ("a party to collective bargaining waives its right to bargain over an issue only by clearly and unmistakably expressing its intent to do so. The failure to demand bargaining in the past, without more, does not amount to waiver if it does not unmistakably show that the union intended to permanently give up its right to bargain in the future"); *In re Parker*, 2004 Bankr. LEXIS 1128 (Bankr. S.D. Ala. Mar. 3, 2004)("a vendor's acceptance of one or more payments subsequent to the time specified in the agreement does not necessarily waive his right to object to the vendee's delinquency as to future payments, or preclude him from insisting on strict performance in the future"). Thus, "waiver" of financial underwriting in other cases would be irrelevant to this case.

Moreover, defendants' discovery requests, as they are drafted, are disproportionately broad because they are not limited to those cases in which American General waived or disregarded financial information. They are far broader than that. They seek information concerning all cases in which the application did not contain financial information. The mere fact that financial questions in the application were not answered in a given case does not mean that the information was not otherwise obtained and considered by the underwriter. Nor does it mean that financial information was immaterial in that case, and it certainly does not mean that financial underwriting is immaterial in all cases. Thus, if American General is required to produce all applications where the financial information was left blank, this Court would have to preside over a mini-trial for each such application in order to ascertain the circumstances of the application and underwriting of each such policy including whether the information was otherwise obtained, and if not, why not. All this would lead back to the beginning; that is, even if American General is found to have waived financial underwriting in one or more unrelated cases, that does not mean American General waived it here. In fact, it quite clearly did not. American General obtained the financial information in the application and even went on to obtain an independent inspection report from an outside vendor.

Defendants' reliance on New York Ins. Law § 3105(c) in support of their request for information on unrelated policies is misplaced. In *Barkan v. New York Schools Ins. Reciprocal*, 2009 NY Slip Op 6494, 1 (N.Y. App. Div. 2009), the court commented on the requirements of N.Y. Ins. Law § 3105(c) as follows:

> To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application.

*Id.* at \*3; *see also Parmar v. Hermitage Ins. Co.*, 21 A.D.3d 538 (N.Y. App. Div. 2005) (same); *see also Cohen v. Mutual Ben. Life Ins. Co.*, 638 F. Supp. 695 (D.N.Y. 1986) ("a determination

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 7

of materiality as a matter of law may be based on evidence of the insurer's practice with respect to similar risks, as shown by such documents as the insurer's underwriting manuals or rules, and by *testimony of a qualified employee of the insurer* that the insurer would not have issued the particular contract it did had the facts been disclosed")(emphasis added); *Naghavi v. New York Life Ins. Co.* 260 A.D.2d 252, 688 N.Y.S.2d 530 (1st Dept. 1999) (holding uncontroverted affidavit of underwriter, accompanied by a page from the insurer's underwriting manual establishing that policy would not be issued established, as a matter of law, the materiality of the insured's misrepresentation in his policy application that his earned income for the prior and current years was and would be $100,000). American General has already produced underwriting guidelines to defendants in accordance with N.Y. Ins. Law § 3105(c). Furthermore, American General has responded to defendants' 30(b)(6) Deposition Notice and will produce a company employee to be deposed.

Courts in New York have refused to impose discovery obligations upon insurers of the sort that defendants seek here. For example, in *Gilbert-Frank Corp. v. Guardsman Life Ins. Co.,* 433 N.Y.S.2d 124 (1st Dept. 1980), the court refused to order discovery into other insureds' applications, reasoning that the production of underwriting personnel for deposition together with relevant portions of its underwriting manuals negate the need for information related to other insurance applications. *Id.* at 125-126.

Defendants have cited to a California automobile insurance case to support their argument that an insurer's actions with regard to other, unrelated policies are relevant to materiality. *See Clarendon Nat. Ins. Co. v. Ins. Co. of the West,* 442 F. Supp. 914 (E.D. Cal. 2006). First of all, California law is not applicable to the case at hand, which defendants readily acknowledge. New York law is to the contrary.

At a minimum, the Court should require defendants to first conduct the deposition of American General's 30(b)(6) witness relative to underwriting so that the Court will have a more complete record upon which to assess the need for the other insured information sought by defendants against the burden imposed upon American General and the Court as well as the privacy interests of the other insureds. *Jackson v. North Atlantic Life Ins. Co. of Am.*, 563 N.Y.S.2d 659, 660 (2d Dept. 1990); *Gilbert-Frank Corp. v. Guardsman Life Ins. Co.,* 433 N.Y.S.2d 124, 125-126 (1st Dept. 1980).

Defendants have provided no support for their contention that the scope of N.Y. Ins. Law § 3105(c) extends to include the type of discovery demands they have made. Accordingly American General is already in compliance with N.Y. Ins. Law § 3105(c) and should not be required to comply with defendants' unreasonable request for unrelated life policies.

## **Several of Defendants' Remaining Discovery Requests Are Also Improper.**

As indicated above, American General is reconsidering its responses to several of the discovery requests presented by way of Mr. Lipsius' April 19 letter, and supplemental responses are being provided. However, still others are also objectionable and improper.

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 8

Interrogatory No. 1, which seeks an exhaustive list of all persons providing information necessary to complete interrogatories and the number of the interrogatory or part thereof for which he or she provide information., is improper and no additional response is necessary. American General is not required to identify *all* persons who contributed to answers to interrogatories. *See Pontillo v. Federated Department Stores, Inc.*, 1993 U.S. Dist. LEXIS 13533 (S.D.N.Y. Sept. 29, 1993), ("plaintiff is entitled to a listing of those individuals ***principally knowledgeable*** as to the information sought in the prior interrogatories")(emphasis added); *Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corp.*, 153 F. Supp. 240 (S.D.N.Y. 1956) ("defendants need not identify the persons who cooperated in preparation of the answers to these interrogatories….plaintiff is free to serve further interrogatories if it seeks additional information concerning persons with knowledge of the relevant facts"); *Hopkinson Theatre, Inc. v. RKO Radio Pictures, Inc*., 18 F.R.D. 379, 383 (D.N.Y. 1956) (the court stated that it saw "no justification for the question [names of persons who assisted in the preparation of the answers to the interrogatories]").

Interrogatory No. 2, which seeks every person "involved with" the investigation, pricing, approval, issuance or otherwise having any relation to the 2005 Policy, is improper, and no further response should be required.  Clearly, this interrogatory is extremely broad and ambiguous.  Furthermore, the identities of individuals sought by this interrogatory are beyond the scope of permissible discovery.  *See e.g., Cromer Fin. Ltd. v. Berger*, 2002 U.S. Dist. LEXIS 9371 (S.D.N.Y. 2002) (in connection with a motion to compel discovery, defendants' request that the named plaintiffs identify persons with knowledge of subject matter of action was denied on the grounds, *inter alia*, that defendant would not be entitled to take discovery from many persons who would be identified in response to these interrogatories, and the interrogatories sought to inquire into privileged communications).  Furthermore, it is appropriate to refer defendants to business records if they contain information sought by interrogatory, which is exactly how American General responded. *See Trueman v. N.Y. State Canal Corp*., 2010 U.S. Dist. LEXIS 16430 (D.N.Y. 2010) (a responding party can elect the option provided in Fed. R. Civ. P. 33(d) to substitute business records in lieu of a narrative answer to the interrogatory).

Interrogatory No. 5, which asks "How did AIG verify the information contained in any application submitted in connection with the 2005 Spira Policy?" and seeks the identity of "any natural person taking each such action," is improper and no further response should be required. This interrogatory is vague and confusing.  If it is referring to verification of representations made the in application for the 2005 Policy, then this interrogatory is irrelevant, an insurer has no duty to verify representations made in application for a policy. *See Quinn v. Federal Kemper Life Assurance Co.,* 1995 U.S. App. LEXIS 39923 (2d Cir. 1995) ("an insurer is entitled to reasonably rely on insured's statements in application and need not perform independent investigation of the truthfulness of the representations").  Moreover, any information related to American General's methods of verifying information contained in applications could reasonably be obtained from our underwriting file, which has already been produced to defendants.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

986876.2

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 9

### American General's Responses to the Trust's Notice to Produce Documents are Sufficient

American General produced over 1,000 pages to defendants consisting of the application files and claim files for the two subject policies of this action.  American General has also produced relevant underwriting guidelines.  Essentially, American General has produced all documents in its possession in connection with both the 2005 Policy and the 2006 Policy, but for those documents that have been withheld as privileged, as identified by the privilege log provided to defendants.  For that reason, and for the reasons set forth above concerning interrogatories, American General's responses to the Trust's Notice to Produce are sufficient.

### Defendants' Contentions Regarding American General's Purported Involvement With Investor Policies are Without Basis

Defendants' bold assertions that American General desired to be involved in the secondary life insurance market for financial gain are completely unsupported by any factual basis.  Moreover, the assertions are not in any way relevant to the fraud in the present case.  Defendants' claim that "American General was not concerned about the net worth of the insured when the policy was written" is overcome by American General's relevant underwriting guidelines, which it has already produced to defendants.   Even assuming that American General did participate to some extent in the in secondary life insurance market, such participation is irrelevant, as it is not probative of the materiality of the fraudulent misrepresentations made by defendants in the present case.

### American General Was Under No Obligation to Disclose the Recording Until After the Deposition of Simon Spira

An insurer is entitled to withhold surveillance materials pending the deposition of the surveilled party.  As the court in *Margeson v. Boston & Marine R.R.*, 16 F.R.D. 200 (D. Mass. 1954) reasoned:

> If every witness consistently told the truth…little possible harm and much good might come from maximum pre-trial disclosure. Experience indicates, however, that there are facile witnesses whose interest in 'knowing the truth before trial' is prompted primarily by a desire to find the most plausible way to defeat the truth.

*Id.* at 201.

A significant reason to withhold surveillance materials is to preserve their impeachment value.  *See, e.g., Snead v. American Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D. Pa. 1973) ("before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully….once his testimony is memorialized in deposition, any variation he

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 10

may make at trial to conform to the surveillance films can be used to impeach his credibility");
*Daniels v. National R.R. Passenger Corp.,* 110 F.R.D. 160 (S.D.N.Y. 1986)(holding that "to
protect the value of surveillance films to be used for impeachment of the plaintiff if he
exaggerates his disabilities, while still serving the policy of broad discovery, it may be
appropriate to require disclosure of such impeachment materials only after the depositions of the
plaintiff or other witnesses to be impeached); *Blunt v. Wake Elec. Membership Corp.*, 162 F.R.D.
102 (E.D.N.C. 1993)("in fact, most courts which have explored the discoverability of
surveillance films and the like have required disclosure of all such materials well in advance of
trial….however, the timing of the disclosure must be such that the impeachment value of the
evidence is preserved"); *Boyle v. CSX Transportation, Inc*., 142 F.R.D. 435 (S.D.W.Va.
1992)("[I]n cases pending in this division in which surveillance material and information are
sought in discovery, the surveilling party shall, after the passage of a sufficient time for deposing
the surveilled, make available for inspection and copying all films and tapes taken in connection
with the surveillance").

State courts have also supported the withholding of surveillance materials until after the
deposition of the surveilled party.  In *Jenkins v. Rannier*, 69 N.J. 50 (1976), a disability case in
which covert surveillance was taken of the claimant, the New Jersey court held that:

> As a general proposition, and always subject to the discretion of
> the trial court, any demand for surveillance motion pictures should
> be accompanied by a consent to be deposed after the movies have
> been taken and before the films must be presented for the
> adversary's examination. We recognize that there may be
> circumstances which would compel deviation from this general
> rule, but we are confident that a trial judge's discretion is a
> sufficient source of protection when the particular circumstances
> are protected.

*Id*. at 60.

Notably in *Jenkins,* unlike the present case, the defendant *completely* resisted the
disclosure of documents and information pertaining to covert surveillance of the plaintiff's
activities.   Here, not only has American General already produced the recording, but it also
produced as part of its initial disclosures the "Inspection Report," of the recorded conversation in
question.  Finally, Simon Spira was informed at the onset of the phone interview conducted by
LabOne that the phone call was to be recorded.  Despite knowledge of the recording, neither Mr.
Spira nor his attorneys follow up with a request for a copy of the records.  Therefore, American
General was under no obligation to disclose the recording prior to Mr. Spira's deposition.

## **Conclusion**

For all of the aforementioned reasons, American General respectfully submits that court

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

To: George A. Yanthis, U.S.M.J.
May 5, 2010
Page 11


intervention with its discovery responses is neither necessary nor appropriate at this time.

Respectfully,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


_____s/ Robert P. Lesko_____
Robert P. Lesko


RPL/rpl

CC:     Ira Lipsius, Esq. (via ECF)