# SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
## ATTORNEYS AT LAW
14 PENN PLAZA, SUITE 500
NEW YORK, N.Y. 10122

NEW JERSEY OFFICE

IRA S. LIPSIUS
Extension 202
E-mail ilipsius@sfl-legal.com

(212) 563-1710
FACSIMILE (212) 695-6602
WEBSITE: www.sfl-legal.com

4 CORNWALL DRIVE, SUITE 101
EAST BRUNSWICK, N.J. 08816
(732) 390-0166

FACSIMILE (732) 432-7706

June 24, 2010

**VIA ECF**

Hon. George A. Yanthis
U.S. Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:   American General v. Diana Spira 2005 Irrevocable Life Insurance Trust et al
      Docket No. 7:08 cv 6843
      Our File No.:  4227.0001

Dear Judge Yanthis:

In accordance with your Honor's instructions, we submit this letter on the narrow issue of whether American General Life Insurance Company should be compelled to produce redacted copies of other policies that evidence its past behavior concerning risks similar to the one at issue in this case. The policies at issue here were issued insuring Diane Spira in the amount of $5 million each. Ms. Spira was 83 years old when these policies were issued in 2005. The Trust requested that American General produce applications for other elderly, high-value policies.

American General seeks to rescind the policy and not pay the death benefit because it claims the insured misrepresented her financial condition on the application. The Trust maintains that the financial condition of an insured is not used by American General to calculate the insured's life expectancy. It is further asserted that it was American General's practice to issue elderly high-value policies regardless of an insured's financial condition.

As we explained in our earlier letter, American General sought to write high value policies to elderly individuals because of the extremely high premiums and high lapse rate associated with such policies. As a result, American General underwriters, and indeed many insurers' underwriters, ignored the analysis of their own actuaries and underwriting guidelines and wrote high value policies even if such policies were actuarially deficient. This was especially true with regard to the underwriting guideline's stance on financials as an insured that did not meet the guidelines would live just as long and have even less ability to keep paying high premiums. Below is a chart of the elderly policies issued in the last two decades:

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. George A. Yanthis
June 24, 2010
Page 2



(Source: Wall Street Journal)

  Beginning in 2001, insurers and investment institutions looked upon the elderly market as a great opportunity for growth. Insurers were well aware that the number of millionaires capable of paying hundreds of thousands of dollars in annual premium did not increase 100 fold in ten years. Insurers, while maintaining certain underwriting guidelines totally ignored the financial position of insureds. Therefore, AIG, the leading insurer of seniors as well as the leading investor (through Coventry First, LLC) of such policies, ignored its own guidelines. Applications were processed which omitted financial statements and financial information was not verified.

  Investment institutions saw this phenomenon as a significant opportunity for expansion. AIG, American General's parent company, funded a company called Coventry First, LLC, the largest investor in the elderly market, which purchased these actuarially deficient elderly policies in volume and continued to pay premiums until the death benefits became due. Since these policies were written with the lapse rate in mind, and the policies were no longer lapsing, the investors saw tremendous profits while the life insurers began to suffer financially.

  American General, counting on many of these high premium policies to lapse, was now forced to keep-up its end of the contract. As a result, at the end of 2006 and beginning of 2007 American General began to aggressively litigate the elderly policies and hoped that post-issuance judicial underwriting would offset the failures of its pre-issuance insurance underwriting. Even though American General was not concerned about the net worth of the insured when the policy was written, as that information does not at all increase or decrease the likelihood of death, American General began using the financial information contained in applications as a pretext to

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. George A. Yanthis
June 24, 2010
Page 3

rescind policies. Sometimes, like here, the policy benefits become due earlier than American General predicted and American General uses the financial representations as a pretext to not pay a claim.

It is exactly with this kind of situation in mind that the New York legislature enacted N.Y. Ins. Law § 3105(c). The law is clear in New York that "[i]n determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to the acceptance or rejection of similar risks shall be admissible." N.Y. Ins. Law § 3105(c). Therefore, other policies of insurance issued by American General in the same time frame insuring the same age group for the same amount as Spira are admissible and certainly discoverable.

Although underwriting guidelines may be of some relevance, underwriting guidelines alone do not prove materiality if the guidelines were regularly ignored or if an underwriter possessed authority to vary from the guidelines. Only the applications will reveal whether the financial information was actually material to the issuance of the policies.

In two recent New York cases, American General's sister insurance company U.S. Life was ordered to make a similar production. In one case[1], U.S. Life produced copies of policies over $5 million in a 3 year window surrounding the policy issuance issued to individuals over 80 years old. Over 80% of the policies issued violated the financial guidelines. In another[2], U.S. Life was compelled to produce copies of policies between $2 million and $5 million in a two and a half year window on elderly individuals. The result: 40% of the policies violated the financial guidelines.

New York courts have repeatedly held that an insurer attempting to void a policy for material misrepresentations must produce other similar policies containing similar representations: *Rodolitz, v. Beneficial National Life Insurance Company*, 52 A.D.2d 817, 384 N.Y.S.2d 986 (1st Dept. 1976) ("We construe the order appealed from, consonant with our prior determination…**requiring the production of policies issued after disclosure in insurance applications** of any one or more of the following illnesses: hypotension and hypertension, cerebral-vascular disease and cerebro-vascular insufficiency, prostates, arteriosclerotic disease, cere-bro-vascular spasm and systolic heart murmur."); *Merchants Indemnity Corp. of N. Y. v. Wallack*, 14 A.D.2d 777, 219 N.Y.S.2d 1014 (2nd Dept. 1961) ("Section 149 of the Insurance Law provides: (1) that no misrepresentation shall avoid any contract of insurance or defeat recovery unless such misrepresentation was material; and (2) that in determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to similar risks shall be admissible. **Applications for similar policies and the action of plaintiff thereon at the time of the issuance of the policy in suit are therefore admissible**. In our opinion, the learned Special Term acted within its discretion in permitting a discovery (under

---

[1] *U.S. Life v. Grunhut*, Supreme Court, New York County, Index Number 600550/07.
[2] *U.S. Life v. Deutsch*, Supreme Court, New York County, Index Number 111657/07.

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. George A. Yanthis
June 24, 2010
Page 4

Item [b]) of such policies during the period of one year preceding the issuance of the policy ... The hardship imposed on plaintiff by the requirement that the policies issued during the year preceding the issuance of the policies be made available for inspection may be alleviated by the referee who is to supervise the discovery; he may determine when and where and the manner in which the discovery shall proceed (see Rules of Civil Practice, rule 142."); *see also, Hill v. Troy Sav. Bank*, 585 N.Y.S.2d 636, 637, 185 A.D.2d 423, 424 (3rd Dept. 1992) (prior policies discoverable but claims files associated with those policies not discoverable.); *Di Pippo v. Prudential Ins. Co*., 88 A.D.2d 631, 450 N.Y.S.2d 237 (2nd Dept. 1981) (portions of underwriting manual not enough to prove materiality.) *Peterson v. New England Mutual Life Insurance Company*, 33 A.D.2d 547, 304 N.Y.S.2d 846 (1st Dept. 1969) (insurer ordered to support claim of material misrepresentation by producing copies of other policies); *Orenstein v. Metropolitan Life Ins. Co*., 18 A.D.2d 1016, 239 N.Y.S.2d 42 (2nd Dept. 1963) ("Under its defense of material misrepresentation, the defendant was entitled to make an evidentiary showing of its practices with respect to the acceptance or rejection of risks similar to the one in issue."); *Lenhard v. Genesee Patrons Co-Op. Ins. Co*., 18 Misc.3d 1134(A), 859 N.Y.S.2d 895 (Table), (N.Y.Supp. 2005) (insurer, despite providing underwriting guidelines, was unable to prove materiality of misrepresentations because insurer's "affidavit **does not identify any specific applicants** who were denied coverage under similar circumstances.")

*Rodolitz* directly addresses the issue before this Court. In *Rodolitz,* the insurer refused to disclose past policies insuring similar risks and ordered the "production of policies issued after disclosure in insurance applications of any one or more of the following illnesses: hypotension and hypertension, cerebral-vascular disease and cerebro-vascular insufficiency, prostates, arteriosclerotic disease, cere-bro-vascular spasm and systolic heart murmur." The appellate court, upholding the trial court's ruling, found that the statute obligated the insurer to disclose past policies involving the same alleged misrepresentation at issue in the case.

*Merchants Indemnity Corp. of N. Y. v. Wallack*, 14 A.D.2d 777, 219 N.Y.S.2d 1014 (2nd Dept. 1961) also pertains to the very discovery issue before this court. There the court, citing the statute, held that "[a]pplications for similar policies and the action of plaintiff thereon at the time of the issuance of the policy in suit are therefore admissible. In our opinion, the learned Special Term acted within its discretion in permitting a discovery (under Item [b]) of such policies during the period of one year preceding the issuance of the policy ... The hardship imposed on plaintiff by the requirement that the policies issued during the year preceding the issuance of the policies be made available for inspection may be alleviated by the referee who is to supervise the discovery."

The cases cited by American General are wholly inapposite. Neither *John Hancock Life Ins. Co. v. Perchikov*, 553 F.Supp.2d 229 (E.D.N.Y. 2008) nor *New England Life Ins. Co. v. Taverna*, 2002 WL 718755 (E.D.N.Y.) address discovery issues or other policies insuring similar risks. The statute at issue in this case, New York Insurance Law §§ 3105(c) is not cited or discussed in either case. Neither case involved the surge of elderly high value policies that swept

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. George A. Yanthis
June 24, 2010
Page 5

the insurance industry between 2003 and 2006 and have now become the center of this and many similar litigations.

In *John Hancock* the insurer was awarded summary judgment after presenting evidence that its underwriters would not have approved the policy had the insured not misrepresented material facts in the application concerning other insurance in force. No evidence was presented and discovery was not sought concerning the insurer's past behavior with regard to similar risks. After finding that the insured materially misrepresented whether she had other insurance in force at the time of the application, the court never reached the issue of the insured's financial representations, ruling:

> Because John Hancock has established the materiality of Ms. Vasserman's misrepresentations regarding the existence of other insurance, *i.e.*, that John Hancock did not know of Ms. Vasserman's other insurance and would not have issued her the policy if it had known, John Hancock has established that it is entitled to judgment as a matter of law on its rescission claim. Accordingly, the court need not address Ms. Vasserman's misrepresentations with regard to income and occupation. *Id* at 240.

*Taverna*, too does not address the discoverability of other policies. There, the insured "DelPrete failed to disclose any of his prior medical problems, including his bout with kidney stones and chest and gastric pains, his numerous visits to doctors for pain management treatment resulting from a previous back injury, his being advised to undergo elective back surgery, and his dependency on his narcotic pain medication." Id at * 12. The insurer presented evidence that had it known of these medical ailments it would not have issued the policy. No evidence was presented to the contrary and no discovery was sought to establish the insurer's practice with respect to similar risks. The court awarded the insurer summary judgment.

Here, the Trust is entitled to discover whether American General, like so many other insurers, participated in the feeding frenzy of elderly high value policies that each generated millions of dollars in premiums. There is no evidence that the defendants in *Taverna* or *John Hancock* even sought the same discovery that the Trust seeks here. Those decision are completely inapplicable to this matter.

The Trust maintains that New York law applies to this case. It is clear that under New York law the Trust would be entitled to present the fact finder with the policies it seeks as proof that the financial condition of an insured was not material to the issuance of the Spira policy and that even if the application reflected less income or net worth the policy would have been issued anyway. The discovery sought lies at the heart of the Trust's defense and American General should be ordered to produce.

The Spira policies were issued in December of 2005 to an 83 year old, each in the amount of $5 million. The trust defined similar risks as policies issued to insureds over 80 years old with

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. George A. Yanthis
June 24, 2010
Page 6

a face value of $5 million or more. The time frame was 2002 to the present. American General does not claim nor can it show a substantial hardship from such a production as it has made similar productions in the past. In the event, American General claims a hardship, this court is vested with full discretion to narrow the demand. At the hearing before this Court, I advised that the Trusts are prepared to narrow the demand to:

1. Applications attached to the policy for insurance where American General issued the policy.
2. Policies greater than $5 million.
3. Policies issued in the period two years before and one year after the Spira policies.

American General asserted that the production of these applications would require a mini trial of each policy. That assertion is false. Even if true, the issue of the length of trial and the issues at trial can be addressed after the completion of discovery. It is impossible to depose the underwriter and other corporate designees until this discovery is completed.

It is respectfully submitted that American General be compelled to disclose the discovery sought by the Trust.

Very truly yours,

SCHINDEL, FARMAN, LIPSIUS,
GARDNER & RABINOVICH LLP

Ira S. Lipsius

ISL:bl

cc.   Robert P. Lesko, Esq.