**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Robert P. Lesko (RPL 1553)
33 Washington Street
Newark, New Jersey 07102-3017
(973) 624-0800 ph.
(973) 624-0799 fx.
Attorneys for plaintiff,
American General Life Insurance Company

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | : UNITED STATES DISTRICT COURT<br>: FOR THE SOUTHERN DISTRICT OF NEW YORK |
| Plaintiff, | : Civil Action No: 7:08-CV-06843 |
| vs. | : |
| DIANA SPIRA 2005 IRREVOCABLE LIFE INSURANCE TRUST, AARON AZRYLEWITZ, as Trustee, and SIMON SPIRA | : |
| Defendants. | : |

**AMERICAN GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF OTHER POLICY APPLICATIONS**

i

1017108.2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

LEGAL ARGUMENT .............................................................................................................. 2

I. THE DISCOVERY SOUGHT BY DEFENDANTS IS IRRELEVANT ............................... 2

   A. Discovery of Other Policies Does Not Meet the Rule 26 Relevance Threshold ........... 2

   B. The Discovery Sought by Defendants Will Not Prove or Disprove the Materiality
      Of Financial Background Information in American General's Underwriting ............... 5

II. DISCOVERY OF OTHER POLICIES WOULD RESULT IN A DISPROPORTIONATE
    BURDEN ON AMERICAN GENERAL AND A WASTE OF JUDICIAL RESOURCES ..... 7

III. DEFENDANTS' LIKELY MOTIVATION FOR SEEKING DISCOVERY OF OTHER
     POLICIES IS ITS PERCEIVED *IN TERROREM* SETTLEMENT VALUE ..................... 9

IV. DEFENDANTS HAVE FAILED TO ESTABLISH THE RELEVANCE OF
     DISCOVERY OF OTHER POLICIES ............................................................................ 11

   A. N.Y. Ins. Law § 3105(c) Does Not Support Defendants' Discovery Requests .......... 11

   B. Neither American General Nor United States Life Has Been Compelled to
      Produce the Discovery that Defendants Seek Here ..................................................... 13

   C. Case Law Relied on by Defendants is Inapposite ....................................................... 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Albany Insurance Co. v. Horak, 1993 U.S. Dist. LEXIS 9500 (E.D.N.Y. 1993) ..........................5

Amron v. Morgan Stanley Investment Advisors, Inc., 464 F.3d 338 (2d Cir. 2006) ..................10

Brown v. Van Camp Co., Division of Ralston Purina Co., 1991 U.S. Dist. LEXIS 13136 (S.D.N.Y. 1991) ..........................................................................................................................8

Chicago Insurance Co. v. Kreitzer & Vogelman, 265 F. Supp. 2d 335 (S.D.N.Y. 2003) ..............5

Cohen v. Mutual Ben. Life Insurance Co., 638 F. Supp. 695 (E.D.N.Y. 1986) ..........................11

Collens v. City of New York, 222 F.R.D. 249 (S.D.N.Y. 2004) .............................................3, 4

Compudyne Corp. v. Shane, 244 F.R.D. 282 (S.D.N.Y. 2007) ....................................................3

Council Tower Association v. Axis Specialty Insurance Co., 2009 U.S. Dist. LEXIS 36510 (E.D. Mo. Apr. 30, 2009) .......................................................................................................8

Decker v. Massey-Ferguson, Ltd., 681 F.2d 111 (2d Cir. 1982) ................................................10

Dolgow v. Anderson, 53 F.R.D. 661 (E.D.N.Y. 1971) ................................................................8

EEOC v. Nichols Gas & Oil, Inc., 256 F.R.D. 114 (W.D.N.Y. 2009) .........................................8

Edita's Bar & Restaurant, Inc., 2009 U.S. Dist. LEXIS 21239 (E.D.N.Y. 2009) .......................10

Evans v. Calise, 1994 U.S. Dist. LEXIS 6187 (S.D.N.Y. 1994) ..................................................3

Federal Insurance Co. v. Southwestern Wire Cloth, Inc., 1996 U.S. Dist. LEXIS 22001 (N.D. Okla. Dec. 9, 1996) .......................................................................................................8

Flores v. Amigon, 233 F. Supp. 2d 462 (E.D.N.Y. 2002) ..........................................................10

In re Fontaine, 402 F. Supp. 1219 (E.D.N.Y. 1975) ..................................................................12

Ford Motor Credit Co. v. Meehan, 2008 U.S. Dist. LEXIS 53192 (E.D.N.Y. 2008) ...................3

Galindo v. John Hancock Variable Life Insurance Co., 2000 U.S. Dist. LEXIS 5108 (E.D.N.C. Mar. 9, 2000) ...............................................................................................................7

Gillette Co. v. Philips Oral Healthcare, Inc., 2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. 2001) ............................................................................................................................................7

John Hancock Life Insurance Co. v. Perchikov, 553 F. Supp. 2d 229 (E.D.N.Y. 2008) .............5, 7

Messier v. Southbury Training School, No. 3:94-CV-1706, 1998 WL. 136170 (D.Conn. Jan. 30, 1998) ........................................................................................................................3

Mutual Ben. Life Insurance Co. v. JMR Electronics Corp., 848 F.2d 30 (2d Cir. 1988) ................5

New England Life Insurance Co. v. Taverna, 2002 WL. 718755 (E.D.N.Y. Mar. 1, 2002) ...........5

Nationwide Insurance Co. v. Dorch, 1996 U.S. Dist. LEXIS 22730 (S.D.N.Y. 1996) ...................5

In re Noboa, 1995 U.S. Dist. LEXIS 14402 (S.D.N.Y. 1995) ........................................................8

Pinette v. Assurance Co. of America, 52 F.3d 407 (2d Cir. 1995) .................................................6

Renaissance Nutrition, Inc. v. Jarrett, 2008 U.S. Dist. LEXIS 33517 (W.D.N.Y. 2008) ................8

Rowe Entertainment v. William Morris Agency, Inc., 2002 U.S. Dist. LEXIS 8308 (S.D.N.Y. 2002) ................................................................................................................................7

Spina v. Our Lady of Mercy Medical Ctr., 2001 U.S. Dist. LEXIS 7338 (S.D.N.Y. 2001) ...........3

Tottenham v. Trans World Gaming Corp., 2002 U.S. Dist. LEXIS 11313 (S.D.N.Y. June 21, 2002) ........................................................................................................................3

Variety Homes, Inc. v. Postal Life Insurance Co., 287 F.2d 320 (2d Cir. 1961) ...........................6

Warnock v. Davis, 104 U.S. 774 (1881) ........................................................................................7

Wood v. New York Life Insurance Co., 758 F.2d 1459 (11th Cir. Ga. 1985) ................................7

Wuliger v. Manufacturers Life Insurance Co., 567 F.3d 787 (6th Cir. 2009) ................................7

### STATE CASES

Fowler v. The New York Indemnity Co., 26 N.Y. 422 (1863) .......................................................7

Gilbert-Frank Corp. v. Guardsman Life Insurance Co., 433 N.Y.S.2d 124 (1st Dept. 1980) .......12

Jackson v. North Atlantic Life Insurance Co. of America, 563 N.Y.S.2d 659 (2d Dept. 1990) ........................................................................................................................12

Merchants Indemnity Corp. v. Wallack, 14 A.D.2d 777 (N.Y. App. Div. 2d Dep't 1961) .....14, 15

Case 7:08-cv-06843-KMK-GAY    Document 23    Filed 07/08/10    Page 5 of 20

Naghavi v. New York Life Insurance Co., 260 A.D.2d 252, 688 N.Y.S.2d 530 (1st Dept. 1999) ..................................................................................................................................11

Parmar v. Hermitage Ins. Co., 21 A.D.3d 538 (N.Y. App. Div. 2005) ...................................11

Rodolitz v. Beneficial National Life Insurance Co., 52 A.D.2d 817 (N.Y. App. Div. 1st Dep't 1976)..................................................................................................................................14

## DOCKETED CASES

U.S. Life v. Deutsch, Supreme Court, New York County, Index No. 111657/07 .....................13

United States Life Insurance Co. in the City of NY v Grunhut, N.Y. Sup. Ct., Index No. 600550/07 ..................................................................................................................................13

## FEDERAL RULES

*Fed. R. Civ. P.* 26 ..........................................................................................................................2

*Fed. R. Civ. P.* 26(b)(1)................................................................................................................3

*Fed. R. Civ. P.* 26(c) ....................................................................................................................7

*Fed. R. Civ. P.* 30(b)(6)..............................................................................................................12

## STATE STATUTES

N.Y. Ins. Law § 149....................................................................................................................14

N.Y. Ins. Law § 3105(c) ....................................................................................................... Passim

## OTHER AUTHORITIES

R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2015, at 210 (2d ed. 1994) ....................................................................................................3

## INTRODUCTION

Defendants' demand for production of information relating to other, unrelated insurance applications and policies should be denied because the information sought is irrelevant. Moreover, its production would be disproportionately time-consuming for the Court and the parties and unduly burdensome and vexations for American General. Defendants' motivation for seeking the discovery appears to be a perceived *in terrorem* increment in settlement value. Therefore, whatever conceivable probative value the discovery might hold is far outweighed by the burden of production.

Defendants suggest that the discovery will demonstrate that the information concerning net worth and income of the insured, which defendants undisputedly misrepresented in their application for the life insurance policy at issue, was immaterial to American General's decision to issue the policy. Defendants hypothesize that American General has issued other policies without ever obtaining such information from other insureds. However, defendants have not presented any reliable basis in fact for their hypothesis; it is based solely upon conjecture, unsupported accusation and multiple mischaracterizations of facts. In fact, contrary to defendants' claims, limited production in other cases by an affiliated insurer has revealed that the company obtained the information in all cases in which it issued a policy.

Even if American General had issued policies without obtaining income and net worth information, the probative value of such occurrences would be limited or nonexistent. The test of materiality of misrepresentations in an application for life insurance is whether the insurer has been induced to accept an application which it *might* otherwise have refused. American General's financial underwriting guidelines and the fact that American General requested the information in the application at issue presumptively establish that American General would

1

have – and at the very least *might* have - declined the policy if the truth had been revealed in this case, regardless of what might have occurred in other cases. Therefore the information is necessarily material.

The requested discovery is disproportionate and burdensome because production of the information would likely result in innumerable mini-trials concerning each application submitted and each policy issued in order to demonstrate its lack of relevance to the claims at issue here. If the discovery is ordered here, the Court would need to assess the underwriting of each other application produced in order to assess whether financial information was obtained in the application or otherwise, whether a policy was issued, and if so, whether its issuance was in compliance with financial underwriting guidelines.

Finally, to the extent that defendants' pursuit of the discovery is motivated by what they perceive to be an *in terrorem* increment in the settlement value if American General is compelled to make the production, the Court should be particularly vigilant in exercising its discretion to limit discovery. In light of the lack of potential probative value of the discover, the potential for significant time and expense to the parties and the Court, the unlikelihood that the discovery will produce the "fruit" that defendants purportedly seek, and defendants' potentially improper motive for seeking the discovery to begin with, defendants' request should be denied.

## LEGAL ARGUMENT

### I. THE DISCOVERY SOUGHT BY DEFENDANTS IS IRRELEVANT

#### A. Discovery of Other Policies Does Not Meet the Rule 26 Relevance Threshold.

As a preliminary matter, the discovery sought by defendants does not meet the basic relevance threshold as set forth by Fed. R. Civ. P. 26. Pursuant to Rule 26, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.

*Fed. R. Civ. P.* 26(b)(1); *Ford Motor Credit Co. v. Meehan,* 2008 U.S. Dist. LEXIS 53192 (E.D.N.Y. 2008); *see also Compudyne Corp. v. Shane,* 244 F.R.D. 282 (S.D.N.Y. 2007) ("the touchstone of Fed. R. Civ. P. 26(b)(1) is relevance").

Despite the potentially broad scope of the rule, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004). As the court explained in *Evans v. Calise,* 1994 U.S. Dist. LEXIS 6187 (S.D.N.Y. 1994):

> While no general rules have been developed for determining relevance in the context of Rule 26(b)(1), courts in the Second Circuit have denied discovery requests when the information requested has no conceivable bearing on the case. Rule 26(b)(1) does not allow a party to roam in shadow zones of relevancy and to explore matter that does not appear germane on the theory that it might conceivably become so. The party seeking the discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition. Where a plaintiff fails to produce any specific facts whatsoever to support an allegation, a district court may, in its discretion, refuse to permit discovery.

*Id.* at *3-*4; *see also Spina v. Our Lady of Mercy Med. Ctr.,* 2001 U.S. Dist. LEXIS 7338 (S.D.N.Y. 2001) ("where a plaintiff fails to produce any specific facts whatsoever to support an allegation, a district court may, in its discretion, refuse to permit discovery."); *Tottenham v. Trans World Gaming Corp.,* 2002 U.S. Dist. LEXIS 11313, (S.D.N.Y. June 21, 2002) ("discovery ... is not intended to be a fishing expedition . . . [and] requests cannot be based on pure speculation or conjecture."); *Messier v. Southbury Training School,* No. 3:94-CV-1706, 1998 WL 136170, at *6 (D.Conn. Jan. 30, 1998) (discovery "fishing expedition[s]" are "disfavored by courts") (citations omitted); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2015, at 210 (2d ed. 1994) (courts faced with such requests should "assess the likelihood that the discovery actually will produce

3

admissible evidence; [and] unless there is reasonable basis to predict that it will, discovery may be refused on that ground").

The discovery sought by defendants here does not meet the Rule 26 relevance threshold because it is not relevant to any party's claim or defense. The issue in the present case is whether the misrepresentations made by these defendants were material to American General's decision to issue the subject Policies. Defendants' request for discovery concerning unrelated policies is nothing more than a fishing expedition "into actions or past wrongdoing not related to the alleged claims or defenses." *See Collens*, 222 F.R.D. 249, 253. As explained in the next section, the discovery would not tend to prove or disprove materiality of defendants' misrepresentation in the application for the policy at issue, even if the discovery were to reveal what defendants suggest it might.

Moreover, defendants' request for other policy applications is just the sort of "fishing expedition" based upon pure speculation that courts abhor. Defendants suggest that "the Trust is entitled to discovery whether American General, like so many other insurers, participated in the feeding frenzy of elderly high value policies…" (Defs.'s Br. at 5). Preliminarily, defendants have not offered any reliable support to establish the existence of what they refer to as a "feeding frenzy." It is mere unilateral speculation. Moreover, defendants' argument reveals that defendants don't actually know that American General was a part of the so-called "feeding frenzy," whatever it is. Therefore, defendants' discovery requests are nothing short of a fishing expedition into a non-descript "feeding frenzy," which is based on nothing but hyperbole. As a result, defendants' discovery request does not meet the relevance threshold of Rule 26 and should be denied.

4

1017108.2

### B. The Discovery Sought by Defendants Will Not Prove or Disprove the Materiality of Financial Background Information in American General's Underwriting.

"The test [for assessing materiality] 'is not whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application which it might otherwise have refused.'" *John Hancock Life Ins. Co. v. Perchikov*, 553 F.Supp.2d 229 (E.D.N.Y. 2008) (*citing New England Life Ins. Co. v. Taverna*, 2002 WL 718755 at *9 (E.D.N.Y. Mar. 1, 2002)). *See also Chicago Ins. Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335, 342-43 (S.D.N.Y. 2003) (holding that a misrepresentation is material if the misrepresentation induced the insurer "to accept an application that it might otherwise have refused."); *Albany Ins. Co. v. Horak*, 1993 U.S. Dist. LEXIS 9500 (E.D.N.Y. 1993) ("in the Second Circuit, the test for materiality is whether an undisclosed fact would have led the insurer not to issue the policy or to have done so but at a higher price"); *Nationwide Ins. Co. v. Dorch*, 1996 U.S. Dist. LEXIS 22730 (S.D.N.Y. 1996) ("the test of materiality is whether failure to furnish a true answer defeats or seriously interferes with the exercise of an insurance company's right to accept or reject the application. The major question is whether the company has been induced to accept an application which it might otherwise have refused"); *Mutual Ben. Life Ins. Co. v. JMR Electronics Corp.*, 848 F.2d 30 (2d Cir. 1988) ("the test of materiality is whether knowledge of the facts would have influenced the insurer in determining whether to accept the risk or in fixing the amount of premiums").

Therefore, even if the other insurance applications sought by defendants might reveal a case in which American General issued a policy without obtaining financial underwriting requirements, such information could, *at best*, demonstrate only that American General nevertheless *might* have *issued* the policy even if defendants answered truthfully in response to

5

1017108.2

financial questions in the present case. But that is not the appropriate question. The operative question is whether American General *might* have *refused* to issue the policies if the truth regarding the insured's financial background had been disclosed. If American General might have refused the application, then the misrepresentation is material.

The evidence already adduced in this case demonstrates that American General *would not* have issued if the defendants had disclosed the truth about the insured's income and net worth. American General's application seeks financial information, and American General's financial underwriting guidelines instruct the underwriter to decline where the amount applied for are not supported by the insured's income and net worth. Therefore, the information is presumptively material. *Pinette v. Assurance Co. of Am.*, 52 F.3d 407 (2d Cir. 1995) ("an answer to a question on an insurance application is presumptively material"); *Variety Homes, Inc. v. Postal Life Ins. Co.*, 287 F.2d 320 (2d Cir. 1961) ("a misrepresentation on an insurance application is material where it substantially thwarts the purpose for which the information is demanded and induces action which the insurance company might otherwise not take."). The guidelines demonstrate that if the truth had been disclosed by defendants at the time of the application, American General either would have refused or – at the very least – might have refused to issue the policies.[1]

Moreover, even if one or more American General's underwriters has ignored these guidelines in other cases, that would not change the fact that American General at least *might* have followed its guidelines in this case and refused to issue here. That is enough to establish

---

[1] American General stands ready to produce the relevant guidelines for the Court's in camera review. They have not been attached to this filing because the documents are confidential, and as such, were produced pursuant to a Stipulated Confidentiality Order entered by Judge Yanthis on March 15, 2010. Document 17.

6

1017108.2

materiality. As such, defendants' discovery request is irrelevant, and it will not lead to admissible evidence.[2]

## II.   DISCOVERY OF OTHER POLICIES WOULD RESULT IN A DISPROPORTIONATE BURDEN ON AMERICAN GENERAL AND A WASTE OF JUDICIAL RESOURCES

A court may limit discovery under certain circumstances even if the information sought otherwise meets the Rule 26 relevance threshold. Fed. R. Civ. P. 26(c); *see also Gillette Co. v. Philips Oral Healthcare, Inc.*, 2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. 2001) ("the decision whether to limit the open and potentially far-reaching discovery permitted under the Federal Rules of Civil Procedure is left to the discretion of the trial court, in light of the facts and circumstances of a particular case"); *Rowe Entm't v. William Morris Agency, Inc.*, 2002 U.S. Dist. LEXIS 8308 (S.D.N.Y. 2002) (same). Rule 26 specifically permits a court to limit discovery in the interest of justice, "to protect a party or person from annoyance, embarrassment, oppression, or *undue burden or expense.*" *Renaissance Nutrition, Inc. v. Jarrett*, 2008 U.S. Dist.

---

[2] The financial background of a proposed insured can bear upon the risk assumed by a life insurer in several material ways. Overstating an insured's income and net worth can result in "over-insuring" the individual. Over-insurance can increase the risk of mortality. For instance, one concern posed by over-insurance is the increased risk of suicide and/or homicide of the insured, since the over-insured individual might perceive herself as "worth more dead than alive," or be perceived that way by others, including policy beneficiaries. *See e.g., Galindo v. John Hancock Variable Life Ins. Co.*, 2000 U.S. Dist. LEXIS 5108 (E.D.N.C. Mar. 9, 2000)( where insurer argued that it is its policy to avoid "overinsuring" applicants, as those who are "worth more dead than alive" are more likely to "suffer a premature death by foul play," motions for summary judgment in rescission action were denied because genuine issues of material fact existed as to misrepresentations regarding insured's existing coverage and annual income.); *Wood v. New York Life Ins. Co.*, 758 F.2d 1459, 1461 (11th Cir. Ga. 1985)(discussing a Georgia statutory requirement that an insured sign the application for a life policy or consent in writing to its issuance: "the rule is designed to keep an individual from unknowingly becoming worth more dead than alive to a potential beneficiary.") Over-insurance can also expose the insurer to so-called "negligent underwriting" lawsuits in the event that the insured commits suicide or is murdered by a beneficiary. *See, e.g., John Hancock Life Ins. Co. v. Perchikov*, 553 F.Supp.2d 229 (E.D.N.Y. 2008)(in action for rescission based on material misrepresentation in application for subject policy, defendant adminsitratrix of insured's estate counterclaimed that negligent issuance of the insurance policy was the proximate cause of homicide of insured). Over-insurance is also indicative of Stranger Originated Life Insurance (STOLI) schemes, which are contrary to public policy and against the law. *Fowler v. The New York Indem. Co.*, 26 N.Y. 422, 423-424 (1863) (lack of insurable interest renders a policy a mere wager policy and therefore void as a matter of statute as well as independently of the statute, at common law). *See also Warnock v. Davis*, 104 U.S. 774, 779 (1881) (same); *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 798 (6th Cir. 2009) (same); N.Y. Ins. § 3205(a)(1)(B) (prohibiting any person from procuring or causing to be procured insurance upon the life of another unless the proceeds are payable to a person having an insurable interest in the individual insured as of the time the contract is issued).

7

1017108.2

LEXIS 33517 (W.D.N.Y. 2008) (emphasis added); *EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114 (W.D.N.Y. 2009); *In re Noboa*, 1995 U.S. Dist. LEXIS 14402 (S.D.N.Y. 1995); *Brown v. Van Camp Co., Div. of Ralston Purina Co.*, 1991 U.S. Dist. LEXIS 13136 (S.D.N.Y. 1991).

"[A] trial court has a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense." *Dolgow v. Anderson*, 53 F.R.D. 661 (E.D.N.Y. 1971). For instance, in *Federal Ins. Co. v. Southwestern Wire Cloth, Inc.*, 1996 U.S. Dist. LEXIS 22001 (N.D. Okla. Dec. 9, 1996), the court, in reliance on Rule 26, denied defendant's motion to compel discovery relating to the insurer's treatment and/or litigation of claims filed by other insureds. "While the requested information may be relevant, there are so many variables in connection with other policies and other claims that the probative value of the requested discovery is likely to be minimal." *Id.* at *40. Thus, for example, in *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 2009 U.S. Dist. LEXIS 36510 (E.D. Mo. Apr. 30, 2009), the court refused discovery regarding other policies reasoning that "[a] request for all bad faith claims, regardless of their disposition, is nothing more than a fishing expedition. The costs, including the potential extra discovery and satellite litigation that would accompany such an expedition, far outweigh any potential benefits." *Id.* at *2-*3.

Even if the Court finds the discovery requested by defendants to be potentially relevant, the request should still be denied because it will likely result in burden and expense for the parties and the Court that is disproportionate to the potential relevance. Defendants' discovery request, as drafted, is disproportionately broad. It is not even limited to those cases in which American General ignored or disregarded financial information. It is far broader than that. Defendants seek all policies greater than $5 million that were issued in a two year prior to and

one year after the subject Policies, as well as the applications for such policies. Even if such a production revealed applications where the financial information was left blank, that would not mean that the information was not otherwise obtained and considered by the underwriter during the pendency of the application. Nor does it mean that financial information was immaterial in that case, and it certainly does not mean that financial underwriting is immaterial in all cases. Thus, if American General is required comply with defendants' request for production, this Court would have to preside over a mini-trial for each applicable application in order to ascertain the circumstances of the application and underwriting of each case, including whether the information was otherwise obtained, and if not, why not. All this would lead back to the beginning; that is, even if American General is found to have forgone financial underwriting in one or more unrelated cases, that does not mean it was not material to American General in the Spira case. Therefore, even if the other insurance applications sought by defendants would reveal a case in which American General forwent financial underwriting requirements, this evidence still would not go to the materiality of the financial misrepresentations in the present case. The time and expense associated with producing and litigating the admissibility of such information therefore far outweighs its potential probative value.

### III. DEFENDANTS' LIKELY MOTIVATION FOR SEEKING DISCOVERY OF OTHER POLICIES IS ITS PERCEIVED *IN TERROREM* SETTLEMENT VALUE

Defendants' motivation for seeking the discovery further betrays its utter irrelevance. Specifically, defendants appear to be seeking discovery of other policies in the hope that American General would rather settle than comply with their discovery requests. This motivation is revealed, in part, by statements of counsel during the June 10, 2010 hearing before the Court where counsel stated:

9

> Look. I want to give two events that happened in the last six weeks. On Friday afternoon, I received a check from American General in settlement of a case for $1.7 million[3] as the result of the Court, a district court, ordering them to produce their applications.

Transcript at 51:16-20 (attached hereto as **Exhibit A**).

Courts should be particularly vigilant in restricting the scope of discovery where the *in terrorem* effect of such discovery outweighs the need for disclosure. *See, e.g., Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982) ("because the '*in terrorem*' effect of such unfettered discovery would, to say the least, be substantial, it is important that the wheat in plaintiff's pleading be separated from the chaff"); *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 346 (2d Cir. 2006) (where plaintiff's claims inadequate to survive motion to dismiss, the court declined to permit the plaintiff, "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence.") (internal citations omitted); *Edita's Bar & Rest., Inc.*, 2009 U.S. Dist. LEXIS 21239 (E.D.N.Y. 2009) (court granted plaintiff's motion for reconsideration of a ruling permitting defendants to make certain inquiries during plaintiff's deposition, reasoning "even if the information sought were somehow relevant, the *in terrorem* effect of the questions defendants seek to press outweighs the need for disclosure"); *Flores v. Amigon*, 233 F. Supp. 2d 462 (E.D.N.Y. 2002) (request for discovery of certain documents denied where *in terrorem* effect to the production of the documents outweighed the need for disclosure).

---

[3] Despite best efforts, counsel for American General has been unable to verify this statement.

10

1017108.2

Defendants' *in terrorem* strategy is a further indication of the disproportionality of the vexatiousness of the requested discovery as compared to its potential probative value. Therefore, the defendants' demand should be denied.

## IV. DEFENDANTS HAVE FAILED TO ESTABLISH THE RELEVANCE OF DISCOVERY OF OTHER POLICIES

### A. N.Y. Ins. Law § 3105(c) Does Not Support Defendants' Discovery Requests.

Defendants' reliance on New York Ins. Law § 3105(c) in support of their request for information on unrelated policies is misplaced. In *Barkan v. New York Schools Ins. Reciprocal*, 2009 NY Slip Op 6494, 1 (N.Y. App. Div. 2009), the court commented on the requirements of N.Y. Ins. Law § 3105(c) as follows:

> To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application.

*Id.* at *3; *see also Parmar v. Hermitage Ins. Co.*, 21 A.D.3d 538 (N.Y. App. Div. 2005) (same); *see also Cohen v. Mutual Ben. Life Ins. Co.*, 638 F. Supp. 695 (E.D.N.Y. 1986) ("a determination of materiality as a matter of law may be based on evidence of the insurer's practice with respect to similar risks, as shown by such documents as the insurer's underwriting manuals or rules, and by testimony of a qualified employee of the insurer that the insurer would not have issued the particular contract it did had the facts been disclosed"); *Naghavi v. New York Life Ins. Co.* 260 A.D.2d 252, 688 N.Y.S.2d 530 (1st Dept. 1999) (holding uncontroverted affidavit of underwriter, accompanied by a page from the insurer's underwriting manual establishing that policy would not be issued established, as a matter of law, the materiality of the insured's

11

misrepresentation in his policy application that his earned income for the prior and current years was and would be $100,000).

American General has already produced underwriting guidelines to defendants in accordance with N.Y. Ins. Law § 3105(c). Furthermore, American General has responded to defendants' 30(b)(6) Deposition Notice and will present a witness for deposition on August 18, 2010 (the first date mutually convenient for all counsel).

Courts in New York have refused to impose discovery obligations upon insurers of the sort that defendants seek here. For example, in *Gilbert-Frank Corp. v. Guardsman Life Ins. Co.*, 433 N.Y.S.2d 124 (1st Dept. 1980), the court refused to order discovery into other insureds' applications, reasoning that the production of underwriting personnel for deposition together with relevant portions of its underwriting manuals negate the need for information related to other insurance applications. *Id.* at 125-126. *See also In re Fontaine*, 402 F. Supp. 1219 (E.D.N.Y. 1975) (district court reversed lower court's order permitting bankrupt defendant's discovery of the financial corporation's files for all loan applications, for both approved and disapproved loans, on the basis that the applications were irrelevant).

At a minimum, the Court should require defendants to first conduct the deposition of American General's 30(b)(6) witness relative to underwriting so that the Court will have a more complete record upon which to assess the need for the other insureds' information sought by defendants against the burden imposed upon American General and the Court as well as the privacy interests of the other insureds. *Jackson v. North Atlantic Life Ins. Co. of Am.*, 563 N.Y.S.2d 659, 660 (2d Dept. 1990); *Gilbert-Frank Corp. v. Guardsman Life Ins. Co.*, 433 N.Y.S.2d 124, 125-126 (1st Dept. 1980).

Defendants have provided no support for their contention that the scope of N.Y. Ins. Law § 3105(c) extends to include the type of discovery demands they have made. Accordingly American General is already in compliance with N.Y. Ins. Law § 3105(c) and should not be required to comply with defendants' unreasonable request for unrelated life policies.

      **B.**    **Neither American General Nor United States Life Has Been Compelled to Produce the Discovery that Defendants Seek Here.**

Defendants' suggestion that American General and/or related corporations have been compelled to produce the documents sought here is inaccurate. Defendants claim that United States Life was "compelled" to produce copies of policies issued on the lives of elderly individuals between $2 million and $5 million in a two and a half year window in *U.S. Life v. Deutsch*, Supreme Court, New York County, Index No. 111657/07. That is simply not true, and American General implores the Court to require defendants to support their statement. In that case, counsel for United States Life consented to very limited production in response to defendants' demands.

Defendants also wrongly suggest that the documents produced in that case revealed that United States Life violated its underwriting guidelines in 40% of the cases. In fact, the documents produced reveal that United States Life underwriters obtained financial information in accordance with underwriting guidelines in every case (100%). In the rare instance that the information was not provided in the application, the underwriters obtained it through other channels before approving the policy for issuance, or the policy was not issued. Moreover, even if defendants' 40% claim was true, which it is not, it necessarily implies that United States Life did follow its underwriting guidelines 60% of the time.

Defendants make similar outrageous mischaracterizations with respect to *United States Life Ins. Co. in the City of NY v Grunhut*, N.Y. Sup. Ct., Index No. 600550/07. Defendants'

claim that United States Life produced documents revealing that 80% of the applications violated financial underwriting guidelines. Here again, the documents that United States Life produced revealed that its underwriters obtained information regarding income and net worth in 100% of the cases represented in the production before approving the policy for issuance.

### C.   Case Law Relied on by Defendants is Inapposite.

Defendants principally rely on *Rodolitz v. Beneficial Nat'l Life Ins. Co.*, 52 A.D.2d 817 (N.Y. App. Div. 1st Dep't 1976) and *Merchants Indem. Corp. v. Wallack*, 14 A.D.2d 777 (N.Y. App. Div. 2d Dep't 1961) in support of their discovery request. Both cases are inapplicable.

Defendants argue that *Rodolitz* "directly addresses the issue before this Court." This interpretation is misconstrued. In fact, the *Rodolitz* court affirmed the decision of the lower court to place strict *limitations* on plaintiff's broad demand for policies: "We cannot condone fishing expeditions into thousands of irrelevant files...in disregard of relevancy, materiality, and necessity, and the similarity of risks." *Rodolitz v. Beneficial Nat'l Life Ins. Co.*, 41 A.D.2d 707 (N.Y. App. Div. 1st Dep't 1973). The court refused to place "an unnecessary and unreasonable harassment and burden" on the defendant. *Id.* Moreover, *Rodolitz* was a case about health misrepresentations. Although the *Rodolitz* opinion does not include a detailed discussion on materiality, the court clearly set restrictions on plaintiff's discovery request in order to limit discovery to policies that may have a bearing on the materiality of the misrepresentations in question.

The reasoning employed by the court in *Merchants* to order disclosure is outdated and inapplicable as the statute upon which the decision is based (N.Y. Ins. Law § 149) is no longer in effect. American General has already demonstrated that N.Y. Ins. Law § 3105(c), the successor to N.Y. Ins. Law § 149, does not support defendants' discovery request. Moreover, *Merchants*

14

completely contradicts defendants' request for discovery on policies issued one year after the issuance of the subject policies: "However, policies issued upon applications made after that date do *not relate to the merits of the action*, are inadmissible." *See Id.* at 1016 (emphasis added). Therefore, *Merchants* also fails to support defendants' request for discovery.

## CONCLUSION

For all of the aforementioned reasons, American General respectfully submits that this Court deny defendants' request to compel American General's production of discovery on other policies.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


*/s/ Robert P. Lesko*
Robert P. Lesko

1017108.2