# EXHIBIT C



**LIPSIUS –BENHAIM**
**LAW, LLP**

14 Penn Plaza, Suite 500
New York, New York 10122
212.981.8440
Facsimile 212.695.6602
www.lipsiuslaw.com

David BenHaim
Direct Line: 212-981-8446
Email: dbenhaim@lipsiuslaw.com

September 22, 2011

**VIA FEDERAL EXPRESS**

Honorable George A. Yanthis
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: American General Life Insurance Company v. Spira
Docket No. 7:08-cv-06843
Our File No. 4227.0001

Dear Magistrate Judge Yanthis:

We represent the defendants and write in response to the letter dated September 15, 2011 by counsel for plaintiff, American General Life Insurance Company ("AIG"). Defendants' discovery requests concerning other elderly high-value policies and applications, and plaintiff's verification of financial representations, is material and necessary and may lead to admissible proof at trial. Such policies, applications, and verification practices would demonstrate AIG's past behavior in issuing or declining insurance coverage based on an applicant's financial representations.

While AIG has produced other material that may also be of probative value to a trier of fact, namely, applications for policies that were rejected based on financial justification, the material sought by defendants will be weighed and given its own probative value in determining whether AIG would have issued or rejected the Spira policy notwithstanding the insured's financial condition. AIG has made similar productions in the recent past and the production was

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 22, 2011
Page 2

not burdensome, let alone unduly burdensome. Since the request will lead to admissible evidence and is not unduly burdensome, AIG must be compelled to produce.

**A.    Background**

AIG issued two policies of insurance on the life of Dina Spira, each with a face value of $5 million. After Ms. Spira passed away, AIG commenced this lawsuit to seek rescission of the policies alleging that Ms. Spira misrepresented her net worth and income in the application and that had AIG been aware of the insured's true financial condition, it would not have issued the policy.

It is undisputed that the underwriting charts used by AIG at the time these policies were issued do not factor an insured's financial condition in setting the premiums to be charged. Said differently, Diana Spira's financial condition did not materially affect the risk assumed by AIG – how long Diana Spira was going to live. It is precisely the type of information on an application that can be ignored in a thirst by an insurer to issue high premium generating policies such as the ones here.

**B.    Argument**

During discovery in this and other similarly situated lawsuits, it has been revealed that AIG's two insurance arms, U.S. Life and American General, routinely ignored conflicting financial information – bypassing red flags in order to place elderly high value policies on the books. In an insatiable hunger for the enormous premiums generated by these policies, AIG underwriters would skip required steps and look the other way when presented with information that violated their own underwriting guidelines, especially when it would not affect the bottom

line and the risk assumed. Financial information in an application was thus ripe for such underwriting malfeasance.

For example, in this case, during underwriting, AIG conducted a telephone interview of Simon Spira, the insured's husband, who admitted that their total income was $19,200 annually and that the Spiras' total net worth was just over $1 million. The application, received by AIG before the telephone interview, however, stated that the Spiras' net worth was $13 million and that their annual income was $600,000. This contradictory information was never probed by AIG at any point. Moreover, the credit report obtained showed dozens of accounts in collection and a poor credit history. Like the interview, this red flag was also completely ignored during underwriting by AIG in its zeal to issue these policies.

AIG's argument with respect to the burden of proof in proving materiality is irrelevant to this discovery dispute. AIG claims that New York law does not require the Trust to prove that knowledge of the actual facts would have led AIG to issue the policies but rather the burden is upon AIG to prove that it has been induced to accept an application which it would otherwise have refused. For the purposes of discovery, it makes no difference.

A factfinder trying to determine whether AIG would have issued the Spira policies had it known the true facts or attempting to decipher whether misrepresented facts induced AIG into issuing policies it would have otherwise rejected, would need to learn what AIG's actual financial underwriting practices were at the time of issuance for elderly high-value policies - not what AIG's reinsurer hoped AIG's underwriting practices ought to be.[1] Faced with the two examples where AIG rejected a policy for financial reasons but dozens upon dozens of instances

---

[1] AIG's financial underwriting guidelines are imposed by its reinsurer. AIG, itself, has no such guidelines.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 22, 2011
Page 4

where AIG issued policies in clear violation of its financial underwriting guidelines, a factfinder can easily find that AIG was not concerned with the net worth and income when issuing elderly high value policies and misrepresentations notwithstanding, AIG was not induced into issuing a policy it otherwise would not have issued.

New York Insurance Law § 3105 provides:

> No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract. In determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to the acceptance or rejection of similar risks shall be admissible.

(Emphasis supplied.)

AIG has not produced evidence of its actual "practice" of accepting or rejecting other elderly high value policies and applications similar to that of Ms. Spira. "Black's Law Dictionary defines 'practice' as 'repeated or customary action . . . a succession of acts of similar kind; custom; usage.' Black's Law Dictionary 1172 (6th ed. 1990)." *Kelly v. City of New York*, 2000 WL 1154062, 19 (S.D.N.Y. 2000). The American Heritage Dictionary of the English Language, Houghton Mifflin Co. (2006) 1378 defines "practice" as "[t]o do or perform habitually or customarily . . . [t]o carry out in action . . . [t]he act or process of doing something." Webster's Third New International Dictionary defines "practice" to mean "[p]erformance or application habitually engaged in ... [or] repeated or customary action."

Even if AIG's underwriting guidelines indicate what AIG *should have done*, it does not show what AIG *actually did* in "practice." Defendants are therefore entitled to such discovery. The scope of discovery is governed by F.R.C.P. 26 (b) which mandates "discovery regarding any

nonpriveleged matter that is relevant to any party's claim or defense." In addition, it is firmly established that "the discovery rules are to be given a broad and liberal construction to effectuate their purpose of ensuring that civil trials are not conducted in the dark. See *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15, 85 S.Ct. 234, 240-41, 13 L.Ed.2d 152 (1964); see also *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). *Degulis v. LCR Biotechnology, Inc.*, 176 F.R.D. 123, 125 (S.D.N.Y 1997).

Moreover, the documentation or information sought by way of discovery requests need not be themselves relevant or admissible. Thus, "the concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility, but rather is broad enough to afford parties liberal access to evidence in advance of trial." *Id.* (citing *Quaker Chair Corp. v. Litton Business Sys., Inc.*, 71 F.R.D. 527, 530-31 (S.D.N.Y.1976)).

As held by the United States Supreme Court, parties are to have free access to discovery and all information relevant to the subject matters of litigation. See *Hickman v. Taylor*, 329 U.S. 495, 507 67 S. Ct. 385, 91 L. Ed. 451 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.")

If the applications rejected for financial justification are relevant, then so are applications issued. Here, the documents sought are not only relevant but also admissible. New York

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 22, 2011
Page 6

Insurance Law § 3105. AIG's action with regard to other applications for similar risks is material and necessary to challenge AIG's assertion of material misrepresentation.

New York law is clear. An insurer that attempts to void a policy for material misrepresentations must produce other similar policies containing similar representations. *Rodolitz, v. Beneficial National Life Insurance Company*, 52 A.D.2d 817, 384 N.Y.S.2d 986 (1st Dept. 1976). *Rodolitz* directly addresses the issue before this Court. In *Rodolitz*, the insurer refused to disclose past policies. The First Department, upholding the trial court's ruling, found that the statute obligated the insurer to disclose past policies involving the same alleged misrepresentation at issue in the case. The court held that "the order appealed from [is] consonant with our prior determination…**requiring the production of policies issued after disclosure in insurance applications** of any one or more of the following illnesses." (Emphasis supplied.)

See also *Merchants Indemnity Corp. of N. Y. v. Wallack*, 14 A.D.2d 777, 219 N.Y.S.2d 1014 (2nd Dept. 1961) ("[New York] Insurance Law provides: (1) that no misrepresentation shall avoid any contract of insurance or defeat recovery unless such misrepresentation was material; and (2) that in determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to similar risks shall be admissible. **Applications for similar policies and the action of plaintiff thereon at the time of the issuance of the policy in suit are therefore admissible**. In our opinion, the learned Special Term acted within its discretion in permitting a discovery . . . of such policies"). (Emphasis supplied.)

In *Peterson v. New England Mut. Life Ins. Co.*, 33 AD2d 547, 304 NYS2d 846 (1st Dept. 1969), the court directed the production of "any documentary proof . . . in the nature of . . . , to

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 22, 2011
Page 7

buttress the **references to past experiences involving the same or diseases similar to the one at issue** conclusion that if defendant had known the medical history of the insured the policy would not have been accepted." (Emphasis supplied.)

See also *Hill v. Troy Sav. Bank*, 585 N.Y.S.2d 636, 637, 185 A.D.2d 423, 424 (3rd Dept. 1992) (prior policies applications would be discoverable); *Alaz Sportswear v. Public Service Mut. Ins. Co.*, 195 A.D.2d 357, 358, 600 N.Y.S.2d 63, 65 (1st Dept. 1993) ("Proof of defendant's underwriting <u>practices</u> with respect to **applicants with similar histories is required**" to entitle insurer to "summary judgment as a matter of law") (emphasis supplied); *Orenstein v. Metropolitan Life Ins. Co.*, 18 A.D.2d 1016, 239 N.Y.S.2d 42 (2nd Dept. 1963) ("Under its defense of material misrepresentation, the defendant was entitled to make an evidentiary showing of its <u>practices</u> with respect to the acceptance or rejection of risks similar to the one in issue.") (Emphasis supplied.)

Thus, under New York Insurance Statute and case law, AIG is required to produce past policies and applications in order to demonstrate whether there is any truth to AIG's claim that Ms. Spira's alleged misrepresentations were material and that AIG would never have issued the Policy had it known the true net worth of Ms. Spira. AIG cannot pick and choose to disclose applications that help its case and not those that harm it.

AIG's cry that the discovery would be burdensome has proven time and again to be completely unfounded.

AIG was ordered to make a similar production in a different case handled by this firm, *U.S. Life v. Grunhut*, Index No.: 600550/2007 (N.Y. Sup.). In the production made by AIG, over

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 22, 2011
Page 8

82% of the policies issued violated the underwriting guidelines purportedly in use at the time. Fewer than 100 policies and 500 pages were produced.

Other courts have also ordered the production of the exact discovery that plaintiff seeks here in *American General v. Altman*, Index No. 08cv0399 (D.N.J.) and *U.S. Life v. Deutsch*, Index No. 111657/2007 (N.Y. Sup.). This firm represented the insured in both cases. The discovery revealed that the insurance companies, apparently recognizing that the financial condition of an insured does not increase its risk, regularly ignored its guidelines and issued policies far in excess of the insured's net worth.

**B.    Recent Cases Requiring U.S. Life To Produce Other High-Value Policies**

**1) *U.S. Life v. Grunhut***

U.S. Life was ordered to make a similar production in *U.S. Life v. Grunhut*, Index No.: 600550/2007 (N.Y. Sup. 2007). On May 1, 2009, the Supreme Court (Edmead, J.) ordered U.S. Life to produce "Copies of all applications submitted to U.S. Life seeking life insurance coverage for a person over 80 years old and seeking coverage in excess of $5 million" (Document Request Nos. 15 and 69 herein) for the two years preceding and two years following the application at issue in that case. Copies of the May 1, 2009 hearing and order are annexed hereto as Exhibits A and B.

Justice Edmead also ordered U.S. Life to produce all of the following documents regarding policies issued during a three period to applicants over 80 years old:

- All newsletters, bulletins, agent letters or agent (Document Request No. 6 herein);

- All newsletters, bulletins, agent letters or agent memos regarding Stranger Owned Life Insurance policies, Charity Owned Life Insurance policies, Investor Owned Life Insurance Policies or viatical settlements (Document Request No. 7 herein);

Honorable George A. Yanthis
September 22, 2011
Page 9

- All documents communicated between U.S. Life and its agents (Document Request No. 10 herein);

- All documents communicated by or to U.S. Life concerning the sale of such policies (Document Request No. 11 herein);

- All documents communicated between U.S. Life and its agents concerning the net worth of insureds or potential insureds of such policies (Document Request No. 12 herein); and

- All documents between U.S. Life and any reinsurer concerning such policies. (Document Requests No. 24 and No. 76 herein).

See Exhibits A and B annexed hereto.

In the production made by U.S. Life in that case, more than 80% of the policies issued violated U.S. Life's underwriting guidelines purportedly in use at the time. This information was used to show an issue of fact in that case.

2) *American General v. Altman*

The court also ordered AIG to produce the discovery that defendants seek here in *American General v. Altman*, Index No.: 08-cv-0399 (D.N.J. 2008). On August 21, 2009, that court ordered plaintiff "to produce copies of all applications submitted to American General Life Insurance Company seeking life insurance coverage for a person over seventy-five (75) years old and seeking coverage in excess of $5 million, but not exceeding $10 million, for the time period of January 2004 through December 2006, as well as the resulting policies." (ECF Document 55, Filed 08/21/09, copy annexed hereto as Exhibit C.)

3) *U.S. Life v. Deutsch*

In *U.S. Life v. Deutsch*, Index No. 111657/2007 (N.Y. Sup. 2007), U.S. Life submitted an affidavit detailing how "burdensome" it would be for U.S. Life to comply with these "outrageous" demands.

This firm represented the defendant in that case and is privy to its outcome. Justice Braun informed U.S. Life during oral argument that he was disposed to following Justice Edmead's decision in *Grunhut* and compel production of other policies and applications. Justice Braun therefore recommended that U.S. Life reach an agreement with defendants and produce other policies. U.S. Life did in fact produce such policies and, in stark contrast to U.S. Life's representation that there are "millions" of relevant policies requested, in fact *only thirty-three (33)* policies fit the parameters of the agreed-upon requests. U.S. Life is aware of this, and its submission of the same "burdensome" affidavit in this case is disingenuous and misleading to the Court.

In *Deutsch* the information gathered from these applications played a key role in the expert opinion of former insurance commissioner William Hager's opinion to the court that AIG did not consider financial information of the insured material to the issuance of that elderly policy. Exhibit D.

This firm represented the insured in *Grunhut*, *Altman* and *Deutsch*. In all three cases, the discovery was not burdensome to AIG but revealed that AIG, apparently recognizing that the financial condition of an insured does not increase its risk, regularly ignored its guidelines and issued policies far in excess of the insured's net worth.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 22, 2011
Page 11

If it can be shown in this case, as it was shown in prior cases, that AIG routinely ignored its own guidelines so that it can issue policies generating extremely high premiums, then AIG's claim of materiality and reliance on Ms. Spira's alleged misrepresentations would fail.

Accordingly, AIG should be required to produce other elderly high-value policies and applications, and discovery concerning AIG's ignoring financial information insurance policy applications.

Defendants are willing to concede, in accordance with the other court rulings, to limit AIG's production of other elderly high-value policies to policies issued and applications submitted during the period of two years preceding and one year following the application at issue in this case, for persons over 75 years old and seeking coverage of $5 million or more. This should narrow the policies to a manageable amount which would allow production and not unduly burden AIG.

Very truly yours,

LIPSIUS-BENHAIM LAW, LLP

David BenHaim

DBH:bl
Enclosures

cc:   Robert P. Lesko, Esq.