# EXHIBIT D

**LIPSIUS –BENHAIM**
**LAW, LLP**

14 Penn Plaza, Suite 500
New York, New York 10122
212.981.8440
Facsimile 212.695.6602
www.lipsiuslaw.com

DAVID BENHAIM
Direct Line: 212-981-8446
Email: dbenhaim@lipsiuslaw.com

September 26, 2011

**VIA FEDERAL EXPRESS**

Honorable George A. Yanthis
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

    Re: **American General Life Insurance Co. v. Spira**
       **Docket No. 7:08-cv-06843**
       **Our File No. 4227.0001**

Dear Magistrate Judge Yanthis:

  We write with respect to a significant failing in American General's discovery responses. American General has not produced a single email in connection with this action despite a request for such records. When we conferred with American General's counsel concerning this shortcoming, we were advised that American General has not even conducted a search for responsive emails and will not be producing emails because (1) we are far along in the litigation and (2) information from emails are sometimes entered by the note keeper into American General's note keeping system ("AWD"), and since notes were produced, emails need not be produced. American General's position is unsupported by the rules governing discovery and is yet another example of American General flaunting its contempt for the discovery process. It is respectfully submitted that American General be compelled to produce relevant unprivileged emails within 14 days.

**The Request**

  In the Request for Documents served by the Trust on October 27, 2009, the Trust requested:

    2. All Documents Concerning the 2005 Spira Policy.

    5. All Documents Concerning Simon Spira or Diana Spira, including, without limitation to, (i) Documents Concerning or relating to any policy of insurance issued by AIG insuring the life of Diana Spira; (ii) Documents Communicated between AIG and Simon Spira; and (iii) Documents Communicated between AIG and Simon Spira; and

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 2

      6. Copies of any correspondence, or any Documents Communicated, between AIG and any other Person (including, without limitation to, agents, reinsurers, and brokers) Concerning Simon Spira, Diana Spira or the 2005 Spira Policy.

The following definitions were used in the request:

"Communicated". This term means transmitted orally, **electronically** or in writing (in the form of facts, ideas, inquiries or otherwise) between any Person as defined below.

"Document". This term shall have its customary broad meaning and shall include, without limitation, the following items, whether printed, recorded or reproduced by any other mechanical process, or written or produced by hand, whether on microfiche, **computer memory**, disk or tapes...

Emails concerning the insured and the policies at issue here are clearly within the bounds of the requests. American General's reply, served three months later on January 29, 2010, responded to each of the above demands, and indeed, to almost all of the requests, in boilerplate fashion[1] as follows:

---

[1] American General responded in this exact fashion, calling the requests "interrogatories," to 13 of the Trust's 47 demands. The rest of American General's responses are almost identical.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 3

American General objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this interrogatory on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this interrogatory on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

We first alerted American General of its failure to respond to the requests in a series of communications which resulted in a letter to the Court dated May 17, 2010. In its hearing of August 27, 2010, this Court did not address these concerns and suggested that for the remaining discovery disputes not addressed in the hearing, the parties meet and confer. On August 2, 2011, the Court entered an order memorializing the August 27, 2010 order. On Thursday, September 22, 2011, counsel for both parties exchanged emails concerning unproduced emails. Counsel for American General's final response was as follows:

> Thanks for your explanation. I think I understand your position. There are two problems with your request. First, it is a little late in the game to be asking for it now. Second, and more important, the request seeks to impose a substantial burden without reasonable justification. That is, the burden of the search would outweigh the probative value of the documents, if any, that are likely to be revealed by the search.
>
> You do have an obligation to demonstrate that the probative value of what you seek outweighs the burden imposed upon American General in obtaining it for you. What you are asking for is a guaranty that there are no emails that mention Spira to or from anyone at American General other those contained in the policy files already produced. That would require a broad search of American General's electronic database, which as I am sure you can appreciate is very large. Such a search would be burdensome and costly. We believe the burden is not justified because there has been no indication that any emails relevant to the Spira policies were generated by American General but not saved into AWD or otherwise inserted into the appropriate file. There is always that *possibility*, but that is not enough to justify the burden. In fact, on the contrary, there is good reason to expect that all emails relevant to the Spira matter were saved into AWD in the ordinary course of business. This further militates against imposing this broad burden upon American General.
>
> I gather that your understanding of American General's procedure concerning saving emails in AWD is based upon testimony from specific underwriters in other cases. I also suspect that those underwriters also testified that it is company policy to save all relevant emails in the appropriate file. It is also company policy and procedure to maintain all documentation relevant to a specific policy in the file correlating to that specific policy. Therefore, the presumption is that all documents relevant to the underwriting of the Spira policies are contained in the Spira underwriting file maintained in the ordinary course of American General's business. The same is true for other aspects of business pertaining to a specific policy, such as policyholder services and claims. For this reason, we can and should reasonably assume that all documents relevant to the

policies have been produced within the relevant policy files. If you wish to impose the burden of proving beyond doubt that no documents exist outside the policy files because of some deviation from procedure, it is incumbent upon you to demonstrate that such a deviation occurred or otherwise demonstrate a substantial need for such conclusive proof. If you have reason to believe that the company policy and procedure regarding preservation of emails was not followed in connection with the Spira policies, then there might be a need for the search and justification of the burden.

In any event, even if there is a need for the discovery sufficient to justify the burden, it is also incumbent upon you to limit the scope of the request so as to contain the burden.

For these reasons, we request that you please articulate any reason why you believe emails relevant to the Spira policies were actually not preserved in AWD or otherwise inserted in the relevant policy files. We also ask that you confer with us regarding the scope of the additional search that you now request in order to limit and curtail the burden upon American General.

**Legal Analysis**

The District Court for the Southern District of New York has led the nation in recognizing the importance of e-discovery in modern litigation and paving the way for its production. See, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg LLC*, 230 F.R.D. 290 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003).

As the Honorable George A. Yanthis recognized in 2007, "e-mails sent or received by Defendants relating to the issues herein could constitute important relevant evidence and are reasonably calculated to lead to admissible evidence. It has not been demonstrated that said information is reasonably available from any other easily accessed source. The discovery requests are specific. The resources of the parties are not an issue. Accordingly, the Court directs that the Defendant restore the backup tapes for the time period from August 2004 through March 2005 to produce the requested non-privileged documents." *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 23926 (S.D.N.Y. Mar. 30, 2007). Statistically, "the use of email by professionals has increased 78 percent over the past five years. Nearly 83 percent surveyed use email as a primary communication tool for business." How We Work: Communication Trends of Business Professionals (2010) (http://www.accountingweb-cgi.com/whitepapers/How-We-Work.pdf). Indeed, a litigant that refuses to produce emails is essentially refusing the production of an overwhelming majority of its communications concerning an issue.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 6

      Here, American General claims that "it is a little late in the game to be asking for it now." American General's position is patently offensive. The documents were requested on October 27, 2009, almost two years ago. In fact, the emails should have been produced as part of American General's Rule 26 production – which contains an ongoing obligation to supplement responses as they become available throughout litigation. The only reason emails have not been produced is because American General chose to play "hide the ball – catch me of you can" discovery and failed to comply with its obligations. Moreover, in May 2010 these demands were the subject of a request made to this Court - which the court addressed in an order entered August 2, 2011. In any event, discovery is still ongoing and American General has failed to produce a single witness noticed for deposition. In fact, American General only responded to certain discovery responses on September 23, 2011. The emails should have been produced two years ago and American General's cry concerning timeliness "is reminded of the old saw about the child who murders his parents and then asks for mercy because he is an orphan." *Fog Cutter Capital Group v. SEC*, 474 F.3d 822, 826 (D.C. Cir. 2007).

      American General's claim that production of the AWD notes excuses its failure to produce emails is unsupported by the facts or the law. Firstly, the AWD notes do not contain emails. Instead, users can elect to save information from emails, save portions of emails, or not enter any information concerning emails into AWD. A sample of an AWD note referencing an email:

```
Begin Date:       2006-05-19              Flags:
Begin Time:       16:05:12                DTM Job Name:
User Id:          M05PI17                 DTM Return Code:
Workstation Id:                           DTM Task Name:
Business Area:                            DTM Next Task:
Type:                                     End Date:      2006-05-19
Status:                                   End Time:      16:05:12
Queue:
User Name:        Wood, Pat
DTM Description:
Comments:         I emailed dfeller@bchlife.com - o/sing req's needed by 5/28/06 or we will nto
                  the file.
```

      Apparently, Pat Wood, an underwriter at American General, sent an email to dfeller@bchlife.com and referenced the email in the AWD notes. But the note itself does not contain the actual email but rather Pat Wood's code words and shorthand describing a request made in an email. Without the actual email, it is impossible to tell what the request was, what the response, if any, was, to whom the email was sent and the sum and substance of the conversation. All we have is Pat Wood's cryptic code concerning some email that was sent. Had Pat Wood not chosen to enter these "comments" we would not even have that. In fact, Ms. Wood, or any other American General employee, could have simply not entered any notes concerning an email. It is entirely up to the discretion of the end user to choose what to enter into AWD and how to enter it. Evidence of the fact that most emails do not even result in a note entry in the AWD system is the fact that there are very few notes referencing an email sent or received.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 7

In any event, even if all emails resulted in notes entered, AWD notes are not emails, the communications that defendants requested and are entitled to.

American General's general claim that the discovery would be burdensome and costly as "American General" is "very large" must also fail. Here, American General has not even made a plea to shift the cost but simply refuses to conduct the search and further refuses, other than in general terms, to specify what the burden might be. Moreover, even if an electronic search of the entire company may be burdensome or costly, which American General has not shown, at the very least, American General should have searched the records of those individuals involved in the Spira matter. Instead, it simply did nothing.

American General has attempted this manipulation in the past. In *U.S. Life v. Grunhut*, Index No.: 600550/2007 (N.Y. Sup. 2007), American General refused to produce emails, making the same lame excuse. On March 19, 2011, Judge Edmead ordered American General to produce all emails using the name of the insured and the policy numbers as search terms. Exhibit A. See, also, American General Life Inc. Co. v. Sussex 130 LLP, 2:09-cv-05097-FSH -PS (Document 104 Filed 12/20/10) (Court ordered emails to be searched and sanctioned American General for opposing the search). Exhibit B.

The court's analysis in *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D.350 (W.D.N.Y. 2011) is persuasive. There, the court was presented with "[t]he latest dispute in this case relates to U.S. Telesis's claim that Global Crossing has withheld relevant internal emails from the 2004 period regarding the Concurrence Agreement." It was admitted that "Global Crossing did not search for archived electronically stored information in responding to Plaintiffs' discovery demands because of the effort and expense of doing so." Global Crossing also claimed that the request for emails, made after the close of discovery and after motions for summary judgment were filed, was untimely. The court noted that "Despite the frequency and scope of those disputes, plaintiffs never raised any issue of the adequacy of Global Crossing's production of internal emails or other electronically stored information." In sanctioning Global Crossing for its failure to produce the emails, the court noted that the emails were not even requested but should have been produced as part of a party's ongoing Rule 26 obligation ruling "Global Crossing must supplement its production under Rule 26(e) by searching its archived databases for internal email communications from 2004 relating to the Concurrence Agreement and producing any such emails to U.S. Telesis. I find no justification on the record before this Court to shift all or part of the cost to U.S. Telesis." See, also, *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 23926 (S.D.N.Y. Mar. 30, 2007) which Judge Yanthis refused to consider fee shifting without a detailed explanation of:

1. The extent to which the request is specifically tailored to discover relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

Honorable George A. Yanthis
September 26, 2011
Page 8

4. The total cost of production, compared to the resources available to each party;

5. The relative ability of each party to control costs and its incentive to do so;

6. The importance of the issues at stake in the litigation; and

7. The relative benefits to the parties of obtaining the information.

Here, American General has not presented any explanation concerning any of these factors. It is respectfully submitted that a search of the policy numbers and insured last name will not be burdensome or costly. Accordingly, American General should be required to produce all relevant emails within 14 days.

Very truly yours,

LIPSIUS-BENHAIM LAW, LLP

David BenHaim

DBH:bl
Enclosure

cc.:   Robert P. Lesko, Esq.

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **HON. CAROL EDMEAD**     PART _35_
               Justice

US Life Insur.

       -v-

Grunhut, Lazar

INDEX NO. _600550/07_
MOTION DATE _3/9/11_
MOTION SEQ. NO. _017_
MOTION CAL. NO. _____

The following papers, numbered 1 to ___ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion: ☐ Yes ☑ No

Upon the foregoing papers, it is ordered that this motion

Motion sequence 017 is resolved as follows, in accordance with the so-ordered transcript (Court Rptr. Laura L. Ludovico):

ORDERED that, within 45 days, plaintiff shall produce all emails related to the five policies of Piri Grunhut; using the search for her name and policy numbers. Plaintiff shall provide a list of all employees who have substantive contact with the five policies within 30 days; and it is further

ORDERED that, request to produce notes, memoranda and other documents related to tax returns is denied without prejudice to move to reargue, only if the substantial number of the individuals of effected group, identified in this court's previous order to produce applications, includes the individuals to whom the tax policy at issue directly applies; and it is further

ORDERED that defendants' request for policies was unwarranted and exceeding the court's directive at this juncture. However, the request for information related to whether the applications produced resulted in the issuance of policies is granted and the information shall be produced within 30 days ; and it is further

Dated: _3/9/11_            _____ J.S.C.

Check one: ☐ FINAL DISPOSITION    ☑ NON-FINAL DISPOSITION
Check if appropriate: ☐ DO NOT POST    ☐ REFERENCE
                   ☐ SUBMIT ORDER/ JUDG.    ☐ SETTLE ORDER/ JUDG.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____ FOR THE FOLLOWING REASON(S):

      ORDERED that, within 45 days, counsel for plaintiff shall provide a fact Affidavit from an employee that all responsive documents, requested or relied upon during underwriting, within possession, custody or control of plaintiff, have been produced; and it is further

      ORDERED that plaintiff shall produce Mr. Joe Townsend for deposition within 60 days. Request for deposition of Mr. Cicchi is premature at this juncture; and it is further

      ORDERED that the cut-off for discovery is lifted. No other cut-off dates without an order of this court.

      This constitutes the order of the court.

Dated 3/19/11        ENTER: _____, J.S.C.
                            **HON. CAROL EDMEAD**

Check one:   ☐ FINAL DISPOSITION        ☑ NON-FINAL DISPOSITION

Check if appropriate:   ☐ DO NOT POST        ☐ REFERENCE

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INS. CO.<br>Plaintiff | : | Civil Action No. 09-5097(FSH) |
| v. | : | ORDER ON INFORMAL<br>APPLICATIONS & SECOND AMENDED<br>PRETRIAL SCHEDULING ORDER |
| SUSSEX 130 LLP, et al. | : | |
| Defendants | : | |

This matter having come before the Court by way of submissions dated December 17, 2010 and December 18, 2010, regarding a request to extend the pretrial deadlines, the plaintiff's alleged failure to comply with certain prior orders, and for sanctions;

and the Court having considered the submissions, record of proceedings, and governing law;

and for the reasons set forth in the Opinion delivered on the record on December 19, 2010;

IT IS ON THIS 19th day of December, 2010

**ORDERED** that:

1. The request to extend the pretrial deadlines is granted as set forth herein;

2. The following depositions shall occur on the dates as set forth below and shall be deemed court-ordered:

| Date | Deponent(s) | Location |
|---|---|---|
| January 11-13, 2011 | Beth Newsom, Mary Warren, & Carolyn Randolph | Texas |
| January 25, 2011 | Jill Stephenson | Minnesota |
| January 16, 2011 | Edna Barber | Minnesota |
| February 1, 2011 | Liza Glass | New Jersey |
| February 4, 2011 | Scott Ulven | New Jersey |
| February 8, 2011 | Michael Strulowitz | New Jersey |
| February 10-11, 2011 | Caitlyn Irby (Rule 30(b)(1) & (b)(6)) | New Jersey |
| February 15-16, 2011 | Robert Cicchi (Rule 30(b)(6)) | New Jersey |
| February 28 and March 1, 2011 | Corbin Connell (Rule 30(b)(6)) | New Jersey |

March 15, 2011      Mary Paulette (Rule 30(b)(6))                    New Jersey

3. No later than **January 4, 2011**, the parties shall provide the date and location for the deposition of Ross Hansen and the names of other individuals who will serve as Rule 30(b)(6) witnesses to testify about remaining topics, including the topics set forth in the October 27, 2010 Order concerning Interrogatory Nos. 5 and 6 and the December 6, 2010 Order concerning Interrogatories Nos 1 and 2;

4. No later than **January 10, 2011**, the plaintiff shall complete its search for and production of documents that are responsive to the discovery demands, as modified by the Orders, in the following custodians electronic and paper files: Ross Hansen, Jason Croft, Wayne Arzberger, and Mark McGuire and, based upon the representation that the following are akin to "data processors, the files of the following custodians need not be searched: Ces Batuto, Hanna DeGuzman, Robert Paredes, Lara Serna, and Carmi Reloj;

5. No later than **January 3, 2011**, the plaintiff shall notify the defendants if they oppose searching the paper and electronic files for the production of documents that are responsive to the discovery demands, as modified by the Orders, in following custodians electronic and paper files: Royce Imhoff, Steven Dansker, Ray Sawicki, Chris Ayers, Terri Mills, Jon Kvello, Rachel Soluyo, Scott Brasington, Sarah Wickes, Charlotte Swanks/Charlotte Ford, Susan Umbehant, Tom Geiger, and certain members of the legal department. If there is an objection, the plaintiff shall provide the specific reason. If there is no objection, then the production of the documents shall be completed no later than **January 10, 2011**;

6. In accordance with the agreement of the parties, no later than **December 17, 2010**, plaintiff shall provide the list of October 27, 2010 court-ordered list of employees whose files were searched as a result of the directive in the October 27, 2010 Order and searched before the date of the October 27, 2010 Order;

7. The plaintiff shall produce Caitlyn Irby to testify as a Rule 30(b)(6) witness concerning plaintiff's search for documents reflecting annuities sold to or that American General proposed to sell to Canyon Funding Trust, including communications with representatives of Canyon Funding Trust and communications with AIG about the life insurance policies for Mr. Goldberg (other than communications with counsel concerning this litigation) and the results of the search. The plaintiff shall pay for two hours of the reasonable attorneys fees that defendants will expend to cover this topic at her deposition and for having to raise this issue in the December 17, 2010, submission;

8. No later than **January 10, 2011**, the plaintiff shall produce reflecting the annuities sold to, on behalf of Canyon Funding or via Canyon Funding for the individuals identified on Bates Nos. AG2340-2345;

9. The plaintiff shall produce Brad Gabel, Liza Glass, and Mark Childs as Rule 30(b)(6) witnesses to testify about the search for documents embodying communications with AIG about the policies offered to Mr. Goldberg. The plaintiff shall pay the reasonable attorney's fees and

costs for these depositions;

10. The Certification of Robert Lesko is struck pursuant to L. Civ. R. 7.2(a) and because it fails to be from a person with knowledge who can be examined by adverse counsel at a deposition. No later than **January 6, 2011**, the plaintiff shall produce a certification as required by the October 27, 2010 Order from a person with knowledge regarding the search for documents embodying communications with AIG about any life insurance policy insuring Mr. Goldberg and shall respond to the subjects identified on Page 16 at paragraph 2 of the December 17, 2010 joint submission and specifically state whether or not the plaintiff has possession custody or control over such documents;

11. In accordance with the agreement of the parties, no later than **January 10, 2011**, the plaintiff shall provide a certification to its amended responses to the interrogatories and the parties shall re-review their respective privilege logs and produce logs that fully comply with L. Civ. R. 34.1 and Fed. R. Civ. P. 26(b)(5);

12. The request for sanctions is granted as follows: (1) plaintiffs shall pay the reasonable attorney's fees for the depositions as set forth above and (2) plaintiff shall pay one-half of the reasonable attorney's fees defendants expended for the submission of the December 17, 2010 letter concerning compliance with the October 27, 2010 Order that directed searches of custodians' files. Payment shall be made no later than **January 10, 2011**;

**IT IS FURTHER ORDERED that:**

## I. COURT DATES

1. There shall be telephone status conferences before the Undersigned on **TO BE SET IF REQUESTED**. Plaintiff shall initiate the telephone calls.

2. There will be a settlement conference before the Undersigned on **TO BE SET IF REQUESTED**. Trial Counsel and clients with full settlement authority must attend the conference. If the trial counsel and client with full settlement authority do not appear, the settlement conference may be cancelled or rescheduled and the noncompliant party and/or attorney may be sanctioned, which may include an assessment of the costs and expenses incurred by those parties who appeared as directed.

3. The final pretrial conference shall be conducted pursuant to Fed. R. Civ. P. 16(d) on **June 30, 2011 at 10:00 a.m.** The Final Pretrial Conference will occur even if there are dispositive motions pending. The Court will adjourn the Final Pretrial conference only if the requesting party makes a compelling showing that manifest injustice would otherwise result absent adjournment.

## II. DISCOVERY AND MOTION PRACTICE

4.    a. Fed. R. Civ. P. 26 disclosures are to be exchanged on or before **deadline passed.**

    b. No later than **deadline passed**, the parties shall submit a proposed discovery confidentiality order and certification as required by Local Civ. R. 5.3[1].

5.    Discovery necessary to engage in meaningful settlement discussions: none.

6.    The parties may serve interrogatories limited to 25 single questions including subparts and requests for production of documents on or before **deadline passed**, which shall be responded to no later than **deadline passed.**

7.    Absent agreement of counsel or order of the Court, the number of depositions to be taken by each side shall not exceed **20**. No objections to questions posed at depositions shall be made other than as to lack of foundation, form or privilege. See Fed. R. Civ. P. 32(d)(3)(A). No instruction not to answer shall be given unless a privilege is implicated. The depositions are to be completed no later than **March 31, 2011.**

8.    Fact discovery is to remain open through **March 31, 2011.** No discovery is to be issued or engaged in beyond that date, except upon application and for good cause shown.

9.    Counsel shall confer in a good faith attempt to informally resolve any and all discovery disputes before seeking the Court's intervention. Should such informal effort fail to resolve the dispute, the matter shall be brought to the Court's attention via a joint letter that sets forth: (a) the request, (b) the response; (c) efforts to resolve the dispute; (d) why the complaining party believes the information is relevant and why the responding party's response continues to be deficient; and (e) why the responding party believes the response is sufficient. No further submissions regarding the dispute may be submitted without leave of Court. If necessary, the Court will thereafter schedule a telephone conference to resolve the dispute.

    No discovery motion or motion for sanctions for failure to provide discovery shall be filed before utilizing the procedures set forth in these paragraphs without prior leave of Court.

    Any unresolved discovery disputes (other than those that arise during depositions) must be brought before the Court no later than **deadline passed.** The Court will not entertain applications concerning discovery matters, informally or otherwise, after this date. If an unresolved dispute arises at a deposition, then the parties shall contact the Chambers of the Undersigned for assistance during the deposition.

10.   Any motion to amend pleadings or join parties must be filed by **deadline passed.**

11.   All dispositive motions shall be discussed in advance of filing with the Undersigned

---

[1]If a party seeks to file under seal information submitted in connection with a request for non-discovery relief, then the party shall: (1) consult Local Civ. R. 5.3 and (2) contact the Chambers of the Undersigned for instructions regarding the format for presenting such a motion.

either in person or by teleconference. Unless the parties notify the Court that expert discovery is needed to file such motions, any and all dispositive motions must be filed no later than **May 27, 2011** and must be comply with Local Rule 7.1. No pretrial dispositive motions will be entertained after that date. Any responses shall be submitted no later than **June 6, 2011** and any replies shall be submitted no later than **June 13, 2011**. The return date shall be **June 20, 2011** before the Hon. Faith S. Hochberg. Her Honor's chambers will advise the parties if oral argument will be required.

### III. EXPERTS[2]

12. All affirmative expert reports shall be delivered by **April 5, 2011**.

13. All responding expert reports shall be delivered by **May 5, 2011**.

14. a. All expert reports are to be in the form and content as required by Fed. R. Civ. P. 26(a)(2)(B). No expert shall testify at trial as to any opinions or base those opinions on facts not substantially disclosed in the experts report.

   b. All expert depositions shall be completed by **May 20, 2011**.

   c. <u>Daubert</u> motions shall be filed no later than **May 27, 2011**.

### IV. FINAL PRETRIAL CONFERENCE

15. The final pretrial conference shall be conducted pursuant to Fed. R. Civ. P. 16(d) on **June 30, 2011 at 10:00 a.m.** The final pretrial conference will occur even if dispositive motions are pending. The Court will adjourn the Final Pretrial conference <u>only</u> if the requesting party makes a compelling showing that manifest injustice would otherwise result absent adjournment.

16. <u>Not later than **20 working days** before the pretrial conference, the parties shall exchange copies of all proposed trial exhibits. Each exhibit shall be pre-marked with an exhibit number conforming to the party's exhibit list.</u>

17. All counsel are directed to assemble at the office of Plaintiff's counsel not later than **ten (10) days** before the pretrial conference to prepare the proposed Joint Final Pretrial Order in the form and content required by the Court. Plaintiff's counsel shall prepare the Joint Pretrial Order and shall submit it to all other counsel for approval and execution.

18. With respect to non-jury trials, each party shall submit to the District Judge and to opposing counsel proposed Findings of Fact and Conclusions of Law, trial briefs and any hypothetical questions to be put to an expert witness on direct examination.

19. The original of the Final Pretrial Order shall be delivered to the CHAMBERS of the

---

[2] The parties shall provide the experts information on a rolling basis so that they can produce their expert reports by the deadlines set forth herein.

Undersigned no later than **June 21, 2011 at 3:00 p.m.** All counsel are responsible for the timely submission of the Pretrial Order.

20. The Court expects to engage in meaningful settlement discussions at the final pretrial conference. Therefore, trial counsel who actually has full settlement authority must attend the conference and clients or other persons with full settlement authority must be available by telephone.

## V. MISCELLANEOUS

21. The Court may from time to time schedule conferences as may be required, either <u>sua sponte</u> or at the request of a party.

22. Since all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even with consent of all counsel. Any request to extend any deadline or to adjourn a court event shall be made no later than three days before the scheduled date and shall reflect: (1) the good cause the requesting party believes supports the extension or adjournment and (2) whether or not all parties consent to the request. Absent unforeseen emergent circumstances, the Court will not entertain requests to extend deadlines that have passed as of the date of the request.

23. A copy of every pleading, document or written communication with the Court shall be served on all other parties to the action. Any such communication which does not recite or contain a certification of such service may be disregarded by the Court.

24. Absent permission from Chambers, communications to the Court by facsimile will not be accepted. All communications to the Court shall be in writing or by telephone conference.

25. **FAILURE TO COMPLY WITH THE TERMS OF THIS ORDER MAY RESULT IN SANCTIONS.**

<u>s/Patty Shwartz</u>
**UNITED STATES MAGISTRATE JUDGE**